## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| FLUID MARKET INC., *et al.*,[1] | Case No. 24-12363 (___) |
| Debtors. | (Joint Administration Requested) |

### DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS: (I) AUTHORIZING, BUT NOT DIRECTING, THE PAYMENT OF CERTAIN TAXES AND FEES; AND (II) GRANTING RELATED RELIEF

Fluid Market, Inc. and its affiliated debtors and debtors in possession (each, a "Debtor" and collectively, the "Debtors") in the above-captioned chapter 11 cases, by and through their undersigned proposed counsel, hereby submit this motion (this "Motion") for entry of interim and final orders granting the relief described below.  In support hereof, the Debtors rely on the *Declaration of T. Scott Avila in Support of the Debtors' Chapter 11 Petitions and First Day Relief* (the "First Day Declaration")[2] filed concurrently herewith, and further represent as follows:

### Jurisdiction and Venue

1.      The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Fluid Market Inc. (1365) and Fluid Fleet Services, LLC (5994).  The Debtors' service address is 3827 Lafayette St., Suite #149, Denver, CO 80205.

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein are sections 105(a), 363(b), 507(a)(8), and 541 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6003, and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2002-1 and 9013-1.

### Background

4.      On the date hereof (the "Petition Date"), each Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrently with the filing of this Motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committee of unsecured creditors has been appointed in these chapter 11 cases.

5.      The Debtors, along with its non-debtor affiliates (collectively, the "Company"), operate a technology-based, peer-to-peer truck-sharing platform across the United States with a fleet of nearly 5,500 vehicles.  The Company leverages innovative technology to offer easy, efficient, sustainable truck sharing for businesses and individuals, and ensures its customers quick

and easy access to the right vehicle whenever they need it via its mobile app and website.  Faced with severely constrained liquidity, and after multiple failed efforts to raise additional capital or debt financing, the Debtors, in an exercise of their business judgment, commenced these Chapter 11 Cases to seek approval of the sale transaction contemplated by the Stalking Horse APA (or such other higher and better bid that may be obtained).

6. Additional factual background regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to the filing of these chapter 11 cases, is set forth in detail in the First Day Declaration, filed concurrently herewith and incorporated herein by reference.

## Taxes and Fees Overview

7. In the ordinary course of business, the Debtors incur local, state and federal income taxes, as well as other governmental taxes, fees, and assessments (collectively, the "Taxes and Fees").[3]  The Debtors pay or remit, as applicable, Taxes and Fees to various governmental authorities (each, an "Authority," and collectively, the "Authorities") on a periodic basis (monthly, quarterly, semi-annually, annually, and on an ad hoc basis depending on the Debtors' reporting calendar), based on the nature and incurrence of a particular Tax or Fee and as required by applicable laws and regulations.  A schedule identifying the Authorities is attached hereto as **Exhibit C**.[4]  The Debtors generally pay and remit Taxes and Fees through checks and electronic transfers that are processed through their banks and other financial institutions or service providers.

---

[3]   This Motion does not seek relief with respect to the Debtors' collection and remittance of employee-related taxes and withholdings, which are instead addressed in the *Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing, But Not Directing, the Debtors to (A) Pay Prepetition Employee Wages, Salaries, Other Compensation, and Reimbursable Employee Expenses and (B) Continue Employee Benefits Programs and (II) Granting Related Relief* filed contemporaneously herewith.

[4]   Although **Exhibit C** is intended to be comprehensive, the Debtors may have inadvertently omitted Authorities from **Exhibit C**.  The Debtors request relief with respect to Taxes and Fees payable to all Authorities, regardless of whether such Authority is specifically identified in **Exhibit C**.

DE:4871-2280-9582.6 28613.00001

From time to time, the Debtors may also receive tax credits for overpayments or refunds in respect of Taxes or Fees. The Debtors generally use these credits in the ordinary course of business to offset against future Taxes or Fees or have the amount of such credits refunded to the Debtors.

8.    Additionally, the Debtors are and may become subject to routine audit investigations on account of tax returns or tax obligations in respect of prior years ("Audits") during the chapter 11 cases. Audits may result in additional prepetition Taxes and Fees being assessed against the Debtors (such additional Taxes and Fees, "Assessments").[5] The Debtors seek authority to pay or remit tax obligations on account of the Audits as they arise in the ordinary course of the Debtors' business, including as a result of any resolutions of issues addressed in an Audit.

9.    The Debtors seek authority to pay and remit all prepetition and postpetition obligations on account of Taxes and Fees, including:  (a) where Taxes and Fees accrue or are incurred postpetition; (b) Taxes and Fees that have accrued or were incurred prepetition but were not paid prepetition, or were paid in an amount less than actually owed; (c) where payments made prepetition by the Debtors were lost or otherwise not received in full by any of the Authorities; and (d) Taxes and Fees incurred for prepetition periods that become due and payable after the commencement of the chapter 11 cases. In addition, for the avoidance of doubt, the Debtors seek authority to pay Taxes and Fees for so-called "straddle" periods.[6]

10.    Any failure by the Debtors to pay the Taxes and Fees could materially disrupt the Debtors' business operations in several ways, including (but not limited to):  (a) the Authorities

---

[5]    Nothing in this Motion, or any related order, constitutes or should be construed as an admission of liability by the Debtors with respect to any Audit or Assessment. The Debtors expressly reserve all rights with respect to any Audit and the right to contest any Assessments claimed to be due as a result of any Audit.

[6]    The Debtors reserve their rights with respect to the proper characterization of any "straddle" Taxes and Fees and to seek reimbursement of any portion of any payment made that ultimately is not entitled to administrative or priority treatment.

may initiate audits of the Debtors, which would unnecessarily divert the Debtors' attention from these chapter 11 cases; (b) the Authorities may attempt to suspend the Debtors' operations, file liens, seek to lift the automatic stay, or pursue other remedies that will harm the estates; and (c) in certain instances, the Debtors' directors and officers could be subject to claims of personal liability, which would likely distract those key individuals from their duties related to the Debtors' reorganization efforts.  Taxes and Fees not paid on the due date as required by law may result in fines and penalties, the accrual of interest, or both.  Accordingly, the Debtors seek authority to pay, in their reasonable discretion, the Taxes and Fees in the ordinary course as they become due.

### A.    Sales and Use Taxes

11.    Certain Debtors collect and remit sales and use taxes directly to the Authorities (the "Sales and Use Taxes") on a monthly, quarterly, or annual basis.  The Debtors pay these Taxes in connection with the rental costs of the Debtors' fleet vehicles and the sale taxes due upon the sale of used vehicles.  As of the Petition Date, the Debtors estimate that approximately $1,200,000 in Sales and Use Taxes and other charges will have accrued and remain unpaid to the relevant Authorities, $130,000 of which will become payable during the first thirty days following the Petition Date.

12.    Prior to the Petition Date, the Debtors entered into settlements with the State of Oregon ("Oregon") and the City of Denver ("Denver") regarding overdue Sales and Use Taxes. The prepetition Sales and Use Tax liability of the Debtors include prepetition settlement agreements with two Authorities for the payment of overdue Sales and Use Taxes.  The Debtors and Oregon have entered into a settlement of Sales and Use Taxes owed due the sale of fleet vehicles that require the payment of approximately $29,000 per month to Oregon for a three-year period.  The Debtors' settlement with Denver regarding Sales and Use Taxes owed due to the

DE:4871-2280-9582.6 28613.00001

rental of fleet vehicles requires payment of approximately $44,000 per month through January 2025.  The Debtors request authority to continue to make settlement payments to Oregon and Denver, including those settlement payments due prior to the Petition Date.

13.     Prior to the Petition Date, the Debtors commenced a comprehensive internal review of outstanding Sales and Use Taxes that may be due and owing to certain of the Authorities.  As of the Petition Date, this review remains incomplete, but the Debtors believe substantial potential liabilities may exist related to the Sales and Use Taxes in addition to the amounts requested to be paid pursuant to this Motion.  In addition, starting about July 2024, the Debtors segregated approximately $685,000 to satisfy Sales and Use Taxes accrued but not yet remitted to the Authorities.  Upon completion of the Debtors' review, the Debtors may seek to increase the requested authority to pay the Sales and Use Taxes via either a final order on this existing Motion and/or a supplemental motion to be filed at a later date.

14.     The Debtors request authority, but not direction, to satisfy any amounts owed on account of such Sales and Use Taxes, including any Sales and Use Taxes that are due and owing as of the Petition Date, and to satisfy any Sales and Use Taxes that may become due and owing in the ordinary course of business during their chapter 11 cases.

### B.      Franchise and Business Privilege Taxes

13.     The Debtors are required to pay franchise and business privilege taxes (the "Franchise Taxes") to certain Authorities to operate their businesses in the applicable taxing jurisdictions.  Certain states may refuse to qualify a company to do business in a state or recognize a name change, merger, or other activity if franchise taxes have not been paid.  Most jurisdictions assess franchise taxes on an annual basis, in arrears.  As of the Petition Date, the Debtors estimate that the aggregate amount of accrued and unremitted Franchise Taxes is approximately $5,000.

The Debtors do not believe any accrued Franchise Taxes will become due during the interim period but request authority to pay such accrued but unremitted Franchise Taxes in the ordinary course as they become due.

### C.      Business Taxes and Fees, and Other Fees

14.      The Debtors are required to pay various taxes and fees for business licenses, regulatory fees, annual reports, and other similar types of taxes and fees (the "Business Fees") in order to continue conducting their business pursuant to federal, state, and local laws.  The Debtors remit the required amounts for the Business Fees on a monthly, quarterly, or annual basis, depending on the requirements of the particular Authority.  As of the Petition Date, the Debtors estimate that the aggregate amount of accrued and unremitted Business Fees is approximately $5,000.  The Debtors do not believe any accrued Business Fees will become due during the interim period but request authority to pay such accrued but unremitted Business Fees in the ordinary course as they become due.

### Relief Requested

15.      The above-captioned debtors and debtors in possession (the "Debtors" or the "Company") respectfully state as follows in support of this motion (the "Motion") for entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order"):  (a) authorizing, but not directing, the Debtors to remit and pay (or use tax credits to offset) Taxes and Fees (as defined herein) in the ordinary course of business that are payable or become payable during these chapter 11 cases (including any obligations subsequently determined upon audit or otherwise to be owed for periods

prior to the Petition Date) [7]; and (b) granting related relief. [8]  In addition, the Debtors request that the Court schedule a final hearing within approximately thirty (30) days of the commencement of these chapter 11 cases to consider approval of this motion on a final basis.

16.     The Debtors also request that all banks and other financial institutions on which checks to third parties are drawn or electronic payments are made pursuant to this Motion be authorized to receive, process, honor, and pay any and all such checks (whether issued or presented prior to or after the Petition Date) and electronic payments, and to rely on the representations of the Debtors as to which checks are authorized to be paid. [9]

## **Basis for Relief**

17.     The Court should grant the relief requested herein because:  (a)  the Authorities or the parties who ordinarily collect the Taxes and Fees may file liens, initiate audits, or otherwise proceed against the Debtors for unpaid Taxes and Fees, and such actions will result in unnecessary expense and distraction from the Debtors' efforts to maximize the value of their estates; (b) portions of the Taxes and Fees are entitled to priority status pursuant to section 507(a)(8) of the Bankruptcy Code; (c) failure to pay Business Fees may adversely affect current operations; and (d) section 105(a) of the Bankruptcy Code and the Court's general equitable powers permit the Court to grant such relief.  In addition, the Debtors collect and hold certain outstanding tax liabilities in trust for the benefit of the applicable Authorities, and these funds may not constitute

---

[7]     The Debtors request authority to reissue any amounts paid by check prepetition that have not cleared as of the Petition Date and are dishonored.

[8]     Nothing in this Motion shall be deemed to constitute an admission to any asserted liability or obligation with respect to any tax.  The Debtors reserve any and all rights to contest any tax asserted against them by any Authority.

[9]     Contemporaneously herewith, the Debtors have filed the *Debtors' Motion for Entry of Interim and Final Orders Authorizing the Debtors to (A) Continue Operating Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Granting Related Relief* (the "Cash Management Motion").  Details regarding accounts used by the Debtors to pay all obligations in the ordinary course, including taxes, are described in the Cash Management Motion.

property of the Debtors' estates; as such, there is a strong legal basis for allowing the Debtors to remit these funds to the applicable Authorities on a postpetition basis. Moreover, unpaid Taxes and Fees may result in penalties, the accrual of interest, or both.

### A.    Payment of the Taxes and Fees Will Avoid Unnecessary Distractions

18.     Any regulatory dispute or delinquency that impacts the Debtors' ability to conduct business in a particular jurisdiction could have a wide-ranging and adverse effect on the Debtors' operations. Specifically, the Debtors' failure to remit the Taxes and Fees could adversely affect the Debtors' remaining operations because, among other things: (a) the Authorities could initiate audits of the Debtors or prevent the Debtors from continuing their business and administering their estates, which, even if unsuccessful, would unnecessarily divert the Debtors' attention from the process of maximizing the value of their estates; (b) the Authorities could attempt to suspend the Debtors' operations, file liens, seek to lift the automatic stay, and pursue other remedies that will harm the Debtors' estates; and (c) certain directors, officers, and persons might be subject to personal liability—even if such a failure to remit such Taxes and Fees was not a result of malfeasance on their part—which would undoubtedly distract these key employees from their duties related to the Debtors' operations. In fact, the Authorities may take such actions regardless of these chapter 11 filings. *See, e.g.*, 11 U.S.C. § 362(b)(9) (permitting tax audits and assessments); 11 U.S.C. § 362(b)(18) (allowing the creation or perfection of liens for property taxes).

19.     Accordingly, the Debtors respectfully request the authority to remit the Taxes and Fees as they become due to ensure that the Debtors remain focused on their reorganization efforts.

### B.    Certain of the Taxes and Fees May Constitute Priority Claims

20.     The Debtors submit that authorizing the payment of the Taxes and Fees is in the best interest of the Debtors' creditors and estates because certain of the Taxes and Fees constitute

9

priority claims that would be paid in full in these chapter 11 cases in any event. Moreover, to the extent that such claims are entitled to priority treatment under section 507(a)(8)(B) of the Bankruptcy Code, the respective Authorities may attempt to assess interest and penalties. *See* 11 U.S.C. § 507(a)(8)(G) (granting eighth priority status to "a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss"). In addition, claims entitled to priority status pursuant to section 507(a)(8) of the Bankruptcy Code must be paid in full under a confirmable plan pursuant to section 1129(a)(9)(C) of the Bankruptcy Code. Therefore, payment of certain of the Taxes and Fees at this time only affects the timing of the payment for the amounts at issue and will not unduly prejudice the rights and recoveries of junior creditors.

21.     Further, the failure to pay certain of the Taxes and Fees may adversely affect the Debtors' ability to maintain their good standing to operate in the jurisdictions in which they do business, to conduct business in those jurisdictions, and to administer their estates for the benefit of their creditors.

22.     In sum, payment of the Taxes and Fees is in the best interest of the Debtors and their estates, will not harm unsecured creditors and other parties in interest, and will reduce harm and administrative expense to the Debtors' estates.

23.     Similar relief is routinely granted by courts in this district and elsewhere. *See, e.g.*, *In re GigaMonster Networks, LLC*, No. 23-10051 (JKS) (Bankr. D. Del. Jan. 18, 2023) (authorizing the debtors to pay prepetition taxes and fees in the ordinary course of business); *In re Medly Health LLC*, No. 22-11257 (KBO) (Bankr. D. Del. Dec. 13, 2022) (same); *In re Mariner Health Central, Inc.*, No. 22-10877 (LSS) (Bankr. D. Del. Sept. 21, 2022) (same); *In re Carestream Health, Inc.*, No. 22-10778 (JKS) (Bankr. D. Del. Sept. 22, 2022); *In re RTI Holding*

DE:4871-2280-9582.6 28613.00001

*Co., LLC*, No. 20-12456 (JTD) (Bankr. D. Del. Nov. 17, 2020) (same); *In re Blackhawk Mining LLC*, No. 19-11595 (LSS) (Bankr. D. Del. Aug. 9, 2019) (same); *In re Z Gallerie, LLC*, No. 19-10488 (LSS) (Bankr. D. Del. Apr. 9, 2019) (same).

## C.      Certain of the Taxes and Fees May Not Be Property of the Estate

24.      Many of the Taxes and Fees are collected or withheld by the Debtors on behalf of the applicable Authorities and are held in trust by the Debtors.  See, e.g., I.R.C. § 7501 (stating that certain taxes and fees are held in trust).  As such, these Taxes and Fees are not property of the Debtors' estates under section 541 of the Bankruptcy Code.  *See, e.g.*, *Begier v. Internal Revenue Serv.*, 496 U.S. 53, 57–60 (1990) (holding that any prepetition payment of trust fund taxes is not a transfer subject to avoidance because such funds are not the debtor's property); *In re First Pay, Inc.*, 773 F.3d 583, 590 (4th Cir. 2014) (same); *DuCharmes & Co. v. Mich. (In re DuCharmes & Co.)*, 852 F.2d 194 (6th Cir. 1988) (per curiam) (same); *In re Shank*, 792 F.2d 829, 833 (9th Cir. 1986) (sales tax required by state law to be collected by sellers from their customers is a "trust fund" tax and not released by bankruptcy discharge); *DeChiaro v. N.Y. State Tax Comm'n*, 760 F.2d 432, 435–36 (2d Cir. 1985) (same); *Rosenow v. Ill. Dept. of Revenue (In re Rosenow)*, 715 F.2d 277, 279–82 (7th Cir. 1983) (same); *W. Surety Co. v. Waite (In re Waite)*, 698 F.2d 1177, 1179 (11th Cir. 1983) (same).  The Debtors, therefore, generally do not have an equitable interest in such funds, and they should be permitted to pay those funds to the Authorities as they become due.[10]

---

[10] For the avoidance of doubt, the Debtors hereby request authority to pay the Taxes and Fees as provided herein regardless of whether such Taxes and Fees constitute trust fund obligations.

DE:4871-2280-9582.6 28613.00001

D.    **Payment of the Taxes and Fees is Warranted Under the Doctrine of Necessity**

25.     Courts generally acknowledge that, under appropriate circumstances, they may authorize a debtor to pay or provide special treatment for certain prepetition obligations. *See, e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (Bankr. D. Del. 1999) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to the continued operation of the debtor's business); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (granting the debtor the authority to pay prepetition wages); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (Bankr. S.D.N.Y. 1983) (granting the debtor the authority to pay prepetition claims of suppliers who were potential lien claimants).  When authorizing payments of certain prepetition obligations, courts have relied upon several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code.

26.     Consistent with a debtor's fiduciary duties, where there is a sound business purpose for the payment of prepetition obligations, and where the debtor is able to "articulate some business justification, other than the mere appeasement of major creditors," courts have authorized debtors to make such payments under section 363(b) of the Bankruptcy Code. *See, e.g.*, *Ionosphere Clubs*, 98 B.R. at 175 (finding that a sound business justification existed to pay prepetition wages); *James A. Phillips, Inc.*, 29 B.R. at 397 (relying upon section 363 of the Bankruptcy Code as a basis to allow a contractor to pay the prepetition claims of suppliers who were potential lien claimants).

27.     Courts have also authorized payment of prepetition claims in appropriate circumstances pursuant to section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court and empowers it to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Under section 105(a) of the Bankruptcy Code, courts may permit payments of prepetition obligations

DE:4871-2280-9582.6 28613.00001

when such payments are essential to the continued operation of the debtor's business, and in particular where nonpayment of a prepetition obligation would trigger a withholding of goods or services essential to the debtor's business reorganization plan. *See In re UNR Indus.*, 143 B.R. 506, 520 (Bankr. N.D. Ill. 1992) (permitting the debtor to pay prepetition claims of suppliers or employees whose continued cooperation is essential to the debtors' successful reorganization); *Ionosphere Clubs*, 98 B.R. at 177 (finding that section 105 of the Bankruptcy Code empowers bankruptcy courts to authorize payments of prepetition debts when such payments are needed to facilitate the rehabilitation of the debtor).

28.     In addition to the authority granted to a debtor in possession under sections 105(a) and 363(b) of the Bankruptcy Code, courts have developed the "doctrine of necessity" or the "necessity of payment" rule, which originated in the landmark case of *Miltenberger v. Logansport, C. & S.W.R. Co.*, 106 U.S. 286 (1882). Since *Miltenberger*, courts have expanded their application of the doctrine of necessity to cover instances of a debtor's reorganization. *See Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (holding, in a hotel reorganization matter, that the court was not "helpless" to apply the rule to supply creditors where the alternative was the cessation of operations). The Third Circuit recognized the doctrine in *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981).

29.     In *Lehigh*, the Third Circuit held that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor. *See id.* (stating that a court may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding that the necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will

13

not supply services or material essential to the conduct of the business until their pre-reorganization claims have been paid"); *Just for Feet*, 242 B.R. at 824–25 (noting that debtors may pay prepetition claims that are essential to the continued operation of their business); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (same).

30.     The necessity of payment doctrine is designed to foster the rehabilitation of a debtor in reorganization cases, which courts have recognized is "the paramount policy and goal of Chapter 11." *Ionosphere Clubs*, 98 B.R. at 176; *see also Just for Feet*, 242 B.R. at 826 (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) (noting that "payment by a debtor-in-possession of pre-petition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code," but also observing that "[a] general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment"); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition unsecured claims of toolmakers as "necessary to avert a serious threat to the Chapter 11 process"); *Burchinal v. Cent. Wash. Bank (In re Adams Apple, Inc.)*, 829 F.2d 1484, 1490 (9th Cir. 1987) (finding that it is appropriate to provide for the "unequal treatment of pre-petition debts when [such treatment is] necessary for rehabilitation"); 3 Collier on Bankruptcy ¶ 105.04[5][a] (15th ed. rev. 2004) (discussing cases in which courts have relied upon the "doctrine of necessity" or the "necessity of payment" rule to pay prepetition claims immediately).

31.     Here, the Debtors' payment of the Taxes and Fees is an exercise of sound business judgment and is necessary to maximize the value of the Debtors' estates for the benefit of their

14

creditors.  If the Debtors do not continue paying the Taxes and Fees when they come due on a timely basis, it is possible that Authorities or those parties who ordinarily collect the Taxes and Fees may seek to interfere with the Debtors' business and the efficient administration of the Debtors' estates.

> ### E.  Paying the Taxes and Fees Is a Sound Exercise of the Debtors' Business Judgment

32.     Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate.  *See, e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 825–26 (D. Del. 1999); *see also In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175–76 (Bankr. S.D.N.Y. 1989); *Armstrong World Indus., Inc. v. James A. Phillips, Inc.*, 29 B.R. 391, 398 (S.D.N.Y. 1983).  In doing so, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims.

33.     Section 363(b) of the Bankruptcy Code permits a bankruptcy court, after notice and a hearing, to authorize a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Under this section, a court may authorize a debtor to pay certain prepetition claims.  *See In re Ionosphere Clubs, Inc.*, 98 B.R. at 175 (affirming lower court order authorizing payment of prepetition wages pursuant to section 363(b) of the Bankruptcy Code); *see also In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (recognizing the doctrine of necessity and authorizing the debtor to pay prepetition claims if such payment was essential to the continued operation of the debtor); *In re Orion Refining Corp.*, 372 B.R. 688, 703 (Bankr. D. Del. 2007) (authorizing payment of prepetition claim of critical vendor pursuant to section 363(b) of the Bankruptcy Code).  To do so under section 363(b) of the Bankruptcy Code, courts require only that the debtor "show that a sound business purpose"

justifies the proposed use of property.  *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *see also In re Phx. Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987); *see also Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070–71 (2d Cir. 1983) (requiring the debtor to show a "good business reason" to approve a sale pursuant to section 363(b)).  Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").  Thus, if a transaction satisfies the business judgment rule, it should be approved under section 363(b) of the Bankruptcy Code**.**

34.    Furthermore, section 105(a) of the Bankruptcy Code provides that a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code, pursuant to the "doctrine of necessity."  11 U.S.C. § 105(a).  The "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein.  *See Lehigh*, 657 F.2d at 581  (holding that a court may authorize payment of prepetition claims if such payment is essential to the debtor's continued operation); *see also Just for Feet*, 242 B.R. 821 at 824–25 (holding that section 105(a) of the Bankruptcy Code "provides a statutory basis for payment of pre-petition claims" under the doctrine of necessity); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (explaining that the doctrine of necessity is the standard in the Third

16

Circuit for enabling a court to authorize the payment of prepetition claims prior to confirmation of a reorganization plan).

35.     Moreover, the doctrine of necessity is designed to foster a debtor's rehabilitation, which courts have recognized is "the paramount policy and goal of Chapter 11." *See Ionosphere Clubs*, 98 B.R. at 176; *see also In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("[P]ayment by a debtor-in-possession of pre-petition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code," but "[a] general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition unsecured claims of toolmakers as "necessary to avert a serious threat to the Chapter 11 process"); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285–86 (S.D.N.Y. 1987) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).

36.     Furthermore, the Debtors' liability to pay the Taxes and Fees may ultimately result in increased tax liability for the Debtors if interest and penalties accrue on the claims for Taxes and Fees, which amounts may also be entitled to priority treatment.  Such a result would be contrary to the best interests of the Debtors' estates and all stakeholders.  As noted above, many of the Taxes and Fees may be entitled to priority status pursuant to section 507(a)(8)(C) of the Bankruptcy Code.  As priority claims, these obligations must be paid in full before any general unsecured obligations of the Debtors may be satisfied.  To the extent that the Debtors are not able to timely pay the prepetition Taxes and Fees, they may ultimately be required to pay those amounts with additional interest and penalties.  The Debtors' failure to pay the prepetition Taxes and Fees

DE:4871-2280-9582.6 28613.00001

as they come due may, thus, ultimately increase the amount of priority claims held by the Authorities against the Debtors' estates, to the detriment of the Debtors' general unsecured creditors and other non-priority creditors.  See 11 U.S.C. §§ 507(a)(8)(C) and 507(a)(8)(G). Accordingly, the Court should grant the Debtors authority to pay the prepetition Taxes and Fees as provided herein.

37.     Courts in this jurisdiction have often authorized payment of prepetition taxes under sections 105(a) and 363(b) of the Bankruptcy Code.  *See, e.g.*, *In re Yellow Corporation*, No. 23-11069 (CTG) (Bankr. D. Del. Sept. 15, 2023) (authorizing debtors to pay prepetition taxes and fees in the ordinary course of business); *In re PGX Holdings, Inc.*, No. 2310718 (CTG) (Bankr. D. Del. July 19, 2023) (same); *In re Lannett Company, Inc.*, No. 23-10559 (JKS) (Bankr. D. Del. June 5, 2023) (same); *In re SIO2 Medical Products, Inc.*, No. 23-10366 (JTD) (Bankr. D. Del. Apr. 24, 2023) (same); *In re Carestream Health, Inc.*, No. 22-10778 (JKS) (Bankr. D. Del. Sept. 22, 2022) (same).

### F.     Cause Exists to Authorize the Debtors' Financial Institutions to Honor Checks and Electronic Fund Transfers

38.     In connection with the payment of the Taxes and Fees, the Debtors also request that all applicable banks and other financial institutions be authorized to receive, process, honor, and pay all checks presented for payment and to honor all electronic payment requests made by the Debtors related to the prepetition obligations described herein, whether such checks were presented or electronic requests were submitted prior to or after the Petition Date.  The Debtors further request that all such banks and financial institutions be authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved pursuant to this Motion.  The Debtors intend to pay all tax and regulatory obligations in a timely manner in

accordance with their ordinary business practices and as authorized by the Order approving this Motion.

39.     The Debtors have made or will make arrangements to identify checks or wire transfer requests as relating to an authorized payment in respect of the Taxes and Fees. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently, and the Court should authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested herein.

**Satisfaction of Bankruptcy Rule 6003**

40.     Pursuant to Bankruptcy Rule 6003, "a motion to pay all or part of a claim that arose before the filing of the petition" shall not be granted by the Court within 21 days of the petition date "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm . . . ." Fed. R. Bankr. P. 6003(b).  For the reasons described herein and as supported by the First Day Declaration, the Debtors submit that the requirements of Bankruptcy Rule 6003 have been met and that the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates.  The Debtors believe that an immediate and orderly transition into chapter 11 is critical to the viability of their reorganization efforts, and the failure to receive the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' efforts at this important juncture.  The requested relief is necessary for the Debtors to operate their business in the ordinary course and maximize the value of their estates for the benefit of all stakeholders.  Specifically, if the Taxes and Fees are not paid, the Debtors will be at risk for the business disruptions that would result from, among other things: (a) the administrative disruption of unnecessary local audits; and (b) any operational disruptions or challenges to the

Debtors' right to operate within certain jurisdictions where the Taxes and Fees are not paid. Addressing any potential subsequent action taken by those Authorities or those parties who ordinarily collect the Taxes and Fees would be costly, would place an administrative burden on management, and would divert management's attention from the chapter 11 process. The Debtors have demonstrated that the requested relief is "necessary to avoid immediate and irreparable harm," as contemplated by Bankruptcy Rule 6003, and the Court should grant the requested relief.

### **Reservation of Rights**

41.     Nothing contained in this Motion or any order granting the relief requested in this motion, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be:  (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this motion or any order granting the relief requested by this motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) other than with respect to the liens in favor of the Prepetition Agents an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should

20

not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

42.     To implement the relief sought in this Motion, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).  As set forth in the Motion, the payments proposed herein are essential to prevent immediate and irreparable harm to the Debtors' business operations.  Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

### Notice

43.     The Debtors will provide notice of this Motion to:  (a) United States Trustee for the District of Delaware; (b) the United States Attorney's Office for the District of Delaware; (c) the state attorneys general for all states in which the Debtors conduct business; (d) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (e) counsel to the prepetition lender; (f) counsel to the postpetition lender; (g) the Authorities; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002.  As this Motion is seeking "first day" relief, within two business days of the hearing on the Motion, the Debtors will serve copies of the Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m).

### No Prior Request

44.     No prior request for the relief sought in this Motion has been made to this Court or any other court.

*[Remainder of page intentionally left blank]*

DE:4871-2280-9582.6 28613.00001

WHEREFORE, the Debtors respectfully request entry of the Interim Order and Final Order, substantially in the forms attached hereto respectively as **Exhibit A** and **Exhibit B**: (a) authorizing, but not directing, the Debtors to remit and pay (or use tax credits to offset) Taxes and Fees in the ordinary course of business that are payable or become payable during the chapter 11 cases (including any obligations subsequently determined upon audit or otherwise to be owed for periods prior to the Petition Date); (b) granting related relief; (c) scheduling a final hearing; and (d) granting such other relief as is just and proper.

Dated:  October 16, 2024

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Timothy P. Cairns (DE Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:  302-652-4100
Facsimile:  302-652-4400
email:  ljones@pszjlaw.com
         dbertenthal@pszjlaw.com
         tcairns@pszjlaw.com

*Proposed Counsel for Debtors and Debtors in Possession*

DE:4871-2280-9582.6 28613.00001