**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FLUID MARKET INC., *et al.*,[1] | ) | Case No. 24-12363 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) APPROVING THE DEBTORS' PROPOSED FORM OF
ADEQUATE ASSURANCE OF PAYMENT TO UTILITY COMPANIES;
(II) ESTABLISHING PROCEDURES FOR RESOLVING OBJECTIONS TO
ADEQUATE ASSURANCE BY UTILITY COMPANIES; (III) PROHIBITING
UTILITY COMPANIES FROM ALTERING, REFUSING, OR
DISCONTINUING SERVICES; AND (IV) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion:[2]

**Relief Requested**

1. By this motion, the Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and the "Final Order"): (i) approving the Debtors' proposed form of adequate assurance of payment to the Utility Companies (as defined herein); (ii) establishing procedures for resolving objections by Utility Companies relating to the adequacy of the proposed adequate assurance provided by the Debtors; (iii) prohibiting the Utility Companies from altering, refusing, or discontinuing service to, or discriminating against, the Debtors on the basis of the commencement of these chapter 11 cases or any outstanding prepetition debts; and (iv) granting related relief.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Fluid Market, Inc. (1365); and Fluid Fleet Services, LLC (5994). The Debtors' service address is 3827 Lafayette St., Suite #149, Denver, CO 80205.

[2] The facts and circumstances supporting this motion are set forth in the *Declaration of T. Scott Avila in Support of the Debtors' Chapter 11 Petitions and First Day Relief* (the "First Day Declaration"), filed contemporaneously with this motion and incorporated by reference herein. Capitalized terms used but not immediately defined shall have the meanings ascribed to them elsewhere in this motion or in the First Day Declaration, as applicable.

4858-8973-8473.2 28613.00001

**Jurisdiction and Venue**

2. The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory bases for the relief requested herein are sections 105(a) and 366 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6003, and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2002-1 and 9013-1.

**Background**

5. On the date hereof (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the chapter 11 cases, and no committees have been appointed or designated.

6. The Debtors operate and manage a technology-based, peer-to-peer truck-sharing platform across the United States with a fleet of nearly 5,500 vehicles owned by their non-Debtor affiliates or third-party owners who have elected to put their vehicles on the Debtors' platform, https://www.fluidtruck.com/. Customers have quick and easy access to the right vehicle whenever they need it via the Debtors' mobile app and website. Faced with severely constrained liquidity, and after multiple failed efforts to raise additional capital or debt financing, the Debtors, in an exercise of their business judgment, commenced these chapter 11 cases with the intention of pursuing a prompt sale of their assets to preserve their business as a going concern and maximize value for all their stakeholders.

**Utility Services**

**A.    The Debtors' Utility Companies And Utility Services**

7. In the ordinary course of business, the Debtors obtain various essential utility services (collectively, the "Utility Services"), including electricity, gas, water, telephone, and internet, from a number of utility companies (collectively, the "Utility Companies"). A nonexclusive list of the Utility Companies is attached hereto as **Exhibit C** (the "Utility Services List").[3]

8. The Debtors rely on the Utility Companies to provide Utility Services at their headquarters in Denver, Colorado and their offices in Portland, Salt Lake City, Seattle, San Antonio, and Buenos Aires. The Debtors also rent certain units in which they store their telematics inventory.

---

[3] The inclusion of any entity on, or the omission of any entity from, the Utility Services List is not an admission by the Debtors that such entity is, or is not, a utility within the meaning of section 366 of the Bankruptcy Code, and the Debtors reserve all rights with respect to any such determination.

9. In locations with Utility Services, the Debtors rely on the Utility Companies to provide necessary support to their employees, vendors, and customers. Preserving the Utility Services on an uninterrupted basis is essential to the Debtors' ongoing operations, and even a brief alteration or discontinuation of service would likely cause severe disruption to the Debtors' business and would jeopardize the Debtors' ability to operate and manage their reorganization efforts.

10. The Debtors have a good historical payment record with the Utility Companies. To the best of the Debtors' knowledge, there are no defaults or arrearages for the Debtors' undisputed invoices for prepetition Utility Services. Based on historical averages for Utility Services for the 12-month period prior to the Petition Date, the Debtors estimate that their cost of Utility Services for the next thirty days will be approximately $52,000.

B. **Proposed Adequate Assurance Of Payment**

11. The Debtors intend to pay all postpetition obligations owed to the Utility Companies in the ordinary course of business and in a timely manner. To provide the Utility Companies with adequate assurance pursuant to section 366 of the Bankruptcy Code, the Debtors propose to deposit cash in an amount equal to approximately one-half of one month's cost of Utility Services, calculated using the historical average for such payments for the 12-month period prior to the Petition Date (the "Utility Deposit"), into a newly created, segregated account for the benefit of the Utility Companies (the "Utility Deposit Account"). As of the Petition Date, the Debtors estimate that the total amount of the Utility Deposit will be approximately $26,000.

12. The Debtors will transfer funds for the Utility Deposit into the Utility Deposit Account at U.S. Bank N.A. within twenty (20) days after entry of an interim order on this

motion, which the Debtors will hold in the Utility Deposit Account for the benefit of the Utility Companies on the Utility Services List during the pendency of the chapter 11 cases.

13. The Debtors may adjust the Utility Deposit if the Debtors: (i) terminate or discontinue any of the Utility Services provided by a Utility Company; (ii) make other arrangements with certain Utility Companies for adequate assurance of payment; (iii) determine that an entity listed on the Utility Services List is not a utility company as defined by section 366 of the Bankruptcy Code; or (iv) supplement the Utility Services List to include additional Utility Companies. No liens senior to the interests of the Utility Companies will encumber the Utility Deposit or the Utility Deposit Account.

14. The Debtors further request that the Utility Deposit be automatically available to the Debtors, without further Court order, upon the earlier of the effective date of a chapter 11 plan and closure of the chapter 11 cases. Additionally, if the Debtors terminate any of the Utility Services provided by a Utility Company, the Debtors request that they be permitted to reduce the Utility Deposit to reflect the termination of that Utility Company.

15. The Debtors submit that the Utility Deposit, in conjunction with the Debtors' ability to pay for future Utility Services in the ordinary course of business and consistent with their prepetition practice (together, the "Proposed Adequate Assurance"), constitutes sufficient adequate assurance of payment to the Utility Companies in full satisfaction of section 366 of the Bankruptcy Code.

**C.    Proposed Adequate Assurance Procedures**

16. The Debtors request that the Court approve the procedures for requesting different or additional adequate assurance of future payment (each, an "Additional Assurance Request") set forth below and in the proposed Interim Order and Final Order (the "Adequate

Assurance Procedures"). Any Utility Company that is not satisfied with the Proposed Adequate Assurance may make an Additional Assurance Request pursuant to the Adequate Assurance Procedures.

17. The Adequate Assurance Procedures provide a streamlined process for a Utility Company to address potential concerns with respect to the Proposed Adequate Assurance while at the same time allowing the Debtors to continue their business operations uninterrupted. More specifically, the Adequate Assurance Procedures permit a Utility Company to object to the Proposed Adequate Assurance by filing and serving an Additional Assurance Request upon certain notice parties.

18. The Debtors propose the following Adequate Assurance Procedures in the event that any Utility Company is not satisfied with the Proposed Adequate Assurance:

    a)    The Debtors will serve a copy of this motion, the Interim Order, and the Final Order on the Utility Companies on the Utility Services List within three (3) business days after entry of the Interim Order or Final Order, respectively.

    b)    Subject to entry of the Interim Order, the Debtors will deposit the Utility Deposit, in the aggregate amount of $25,986.00, in the Utility Deposit Account within twenty (20) days after entry of an interim order on this motion.

    c)    If an amount relating to Utility Services provided postpetition by any Utility Company is unpaid, and remains unpaid beyond any applicable grace period, such Utility Company may request a disbursement from the Adequate Assurance Account up to the amount applicable to each such Utility Provider by giving notice to: (i) proposed counsel to the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801), Attn: Laura Davis Jones (ljones@pszjlaw.com), David M. Bertenthal (dbertenthal@pszjlaw.com), and Timothy P. Cairns (tcairns@pszjlaw.com); (ii) the Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: [●]; and (iii) counsel to any official committee of unsecured creditors appointed in the chapter 11 cases (collectively, the "Notice Parties"). The Debtors shall honor such request within five (5) business days after the date the

request is received by the Debtors, subject to the ability of the Debtors and the Utility Company to resolve any dispute regarding such request without further order of the Court. To the extent any Utility Company receives a disbursement from the Adequate Assurance Account, the Debtors shall replenish the Adequate Assurance Account in the amount disbursed.

d) The portion of the Utility Deposit attributable to each Utility Company will be returned to the Debtors upon the earlier of: (i) reconciliation and payment by the Debtors of the Utility Company's final invoice in accordance with applicable nonbankruptcy law following the Debtors' termination of Utility Services from such Utility Company; and (ii) the earlier of (a) the effective date of any chapter 11 plan confirmed in the chapter 11 cases and (b) the closure of the chapter 11 cases; *provided* that there are no outstanding disputes related to postpetition payments due to the affected Utility Companies.

e) Any Utility Company desiring additional assurances of payment in the form of deposits, prepayments, or otherwise must serve a request for additional assurance (an "<u>Additional Assurance Request</u>") on the Notice Parties.

f) The Additional Assurance Request must: (i) be made in writing; (ii) set forth the location(s) for which Utility Services are provided, the account number(s) for those location(s), and the outstanding balance for each account; (iii) explain why the Utility Company believes the Utility Deposit is not adequate assurance of payment; and (iv) certify that the Utility Company does not already hold a deposit equal to or greater than two weeks of Utility Services provided by such Utility Company.

g) An Additional Assurance Request may be made at any time. If a Utility Company does not serve an Additional Assurance Request, the Utility Company will be: (i) deemed to have received "satisfactory" adequate assurance of payment in compliance with section 366 of the Bankruptcy Code; and (ii) forbidden from discontinuing, altering, or refusing Utility Services to, or discriminating against, the Debtors on account of any unpaid prepetition charges or requiring additional assurance of payment other than the Proposed Adequate Assurance.

h) Upon the Debtors' receipt of an Additional Assurance Request, the Debtors will negotiate with the Utility Company to resolve the Utility Company's Additional Assurance Request.

i) The Debtors may, without further order from the Court, resolve an Additional Assurance Request by mutual agreement with a Utility Company, and the Debtors may, in connection with any such agreement, provide a Utility Company with additional adequate assurance of payment, including cash deposits, payments of any outstanding prepetition balance

        due to the Utility Company, prepayments, or other forms of security if the Debtors believe that such adequate assurance is reasonable.

j)     If the Debtors and the Utility Company are not able to reach an alternative resolution within thirty (30) days of receipt of the Additional Assurance Request, the Debtors will request a hearing before the Court at the next regularly scheduled omnibus hearing to determine the adequacy of assurance of payment with respect to the particular Utility Company (the "<u>Determination Hearing</u>") pursuant to section 366(c)(3) of the Bankruptcy Code, unless the Debtors and the Utility Company agree in writing to extend the period.

k)     Pending resolution of the Additional Assurance Request and Determination Hearing, the Utility Company making the Additional Assurance Request will be prohibited from altering, refusing, or discontinuing Utility Services to the Debtors on account of unpaid charges for prepetition services or on account of any objections to the Proposed Adequate Assurance.

l)     Notwithstanding anything in these procedures to the contrary, the Debtors will request a hearing (the "<u>Final Adequate Assurance Hearing</u>"), to take place no later than thirty (30) days following the Petition Date, to resolve outstanding objections to these procedures in the event any are timely filed.

### D.    <u>Modifications To The Utility Services List</u>

19.     Although the Debtors have made an extensive and good-faith effort to identify all of the Utility Companies and to include them on the Utility Services List, certain Utility Companies may not be listed therein. To the extent that the Debtors identify additional Utility Companies, the Debtors shall promptly file amendments to the Utility Services List and serve copies of the Interim Order or Final Order, as applicable, granting this motion on any newly-identified Utility Companies. In addition, the Debtors will increase the amount of the Utility Deposit to account for any newly-identified Utility Companies. The Debtors request that the Interim Order or Final Order, as applicable, bind all Utility Companies, regardless of when the Utility Companies are added to the Utility Services List. For any Utility Company that is subsequently removed from the Utility Services List, the Debtors request the authority to decrease the Utility Deposit by an amount equal to two weeks of the Debtors' average cost of services from

such removed Utility Company; *provided, however*, that the Debtors shall provide the applicable Utility Company with seven (7) days' notice thereof and the opportunity to respond to such removal.

## Basis for Relief

20. The relief requested in this motion will ensure the continuation of the Debtors' business at this critical juncture as they transition into chapter 11. The relief requested also provides the Utility Companies with a fair and orderly procedure for determining requests for additional adequate assurance, without which the Debtors could be forced to address multiple requests by Utility Companies in a disorganized manner when the Debtors' efforts should be more productively focused on continuing to operate their businesses for the benefit of all parties in interest.

### A.     The Proposed Adequate Assurance Is More Than Adequate

21. Pursuant to section 366 of the Bankruptcy Code, a utility company may not alter, refuse, or discontinue service to, or discriminate against, a debtor *solely* on the basis of the commencement of a chapter 11 case or unpaid prepetition amounts. 11 U.S.C. § 366(a). However, a utility company may alter, refuse, or discontinue service if, during the first twenty days of a bankruptcy case, the debtor does not provide adequate assurance of payment for postpetition utility services, or if, during the first thirty days of a chapter 11 case, the debtor does not provide adequate assurance of payment for postpetition utility services in a form satisfactory to the utility company. 11 U.S.C. § 366(b), (c)(2).

22. The policy underlying section 366 of the Bankruptcy Code is to protect debtors from utility service cutoffs upon the filing of a bankruptcy case and to provide utility

9

companies[4] with adequate assurance that debtors will in fact pay for postpetition services. *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 350 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6306; *see also In re Jones*, 369 B.R. 745, 748 (B.A.P. 1st Cir. 2007) (quoting *Begley v. Phila. Elec. Co. (In re Begley)*, 760 F.2d 46, 49 (3d Cir. 1985)) ("The purpose of § 366 is 'to prevent the threat of termination from being used to collect pre-petition debts while not forcing the utility to provide services for which it may never be paid.'"). As set forth herein, the Proposed Adequate Assurance requested in this motion is consistent with these policy goals.

23. Section 366(c)(1)(A) of the Bankruptcy Code defines "assurance of payment" to mean several enumerated forms of security (*e.g.*, a cash deposit, letter of credit, certificate of deposit, surety bond, prepayment of utility consumption, or other mutually agreed upon security), while section 366(c)(1)(B) of the Bankruptcy Code expressly excludes from such definition an administrative expense priority for a utility's claim. 11 U.S.C. § 366(c). The Bankruptcy Code does not otherwise define what makes an assurance of payment "adequate," thereby placing such determination within the reasonable discretion of the bankruptcy court. *See* 11 U.S.C. § 366(b) ("On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment."); 11 U.S.C. § 366(c)(3)(A) ("On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2)."); *In re Pac. Gas & Elec. Co.*, 271 B.R. 626, 644 (N.D. Cal. 2002) ("The use of the word 'may' in the second sentence [of section 366(b) of the Bankruptcy Code] clearly contemplates that the decision whether to order security lies within the

---

[4] "Utility" is not defined in the Bankruptcy Code. However, bankruptcy courts have generally limited this to entities that have a "special relationship" with debtors, in that they provide debtors with an essential service, for which debtors have a need for continued access. *See, e.g.*, *Darby v. Time Warner Cable, Inc. (In re Darby)*, 470 F.3d 573, 574–75 (5th Cir. 2006).

discretion of the Bankruptcy Court."); *In re Steinebach*, 303 B.R. 634, 641 (Bankr. D. Ariz. 2004) (citation omitted) ("Bankruptcy courts are afforded reasonable discretion in determining what constitutes adequate assurance . . . ."). However, when determining "whether an assurance of payment is adequate," a bankruptcy court may *not* consider three specific factors: (a) whether the debtors had a prepetition deposit; (b) whether the debtors paid their utility bills on time prepetition; or (c) the administrative expense priority afforded utilities postpetition. 11 U.S.C. § 366(c)(3)(B).

24. Nothing in section 366(c) of the Bankruptcy Code precludes a bankruptcy court from considering other factors that could minimize the amount of the deposit, including (without limitation): (a) the right of the utility to terminate service upon nonpayment; (b) the chapter 11 estate's liquidity; and (c) the estate's net worth and ability to pay postpetition obligations. *See In re Penn Jersey Corp.*, 72 B.R. 981, 985 (Bankr. E.D. Pa. 1987) (citations omitted) ("We note, in this regard, . . . that the Court of Appeals has stated . . . that a utility is well-protected, after establishment of adequate assurance, by its remedy 'to disconnect service as its remedy for non-payment' without 'recourse to the bankruptcy court,' 'even though . . . the debtor is provided with an additional layer of protection arising from any available state utility commission Regulations limiting a utility's termination rights."); *In re Agrifos Fertilizer, L.P.*, No. 01-35220-H2-11, 2002 WL 32054779, at *5 (Bankr. S.D. Tex. Nov. 25, 2002) (citation omitted) ("If a debtor demonstrates . . . evidence of post-petition liquidity, a deposit may not be necessary . . . ."); *In re Best Prods. Co.*, 203 B.R. 51, 54 (Bankr. E.D. Va. 1996) (citation omitted) ("[T]he court should consider the debtor's . . . net worth, and the debtor's present and future ability to pay post-petition obligations.").

25. Therefore, although section 366(c)(2) of the Bankruptcy Code allows a utility company to take action if the debtor fails to provide adequate assurance of payment that the

utility company deems "satisfactory," the bankruptcy court is the ultimate arbiter of what is "satisfactory" assurance after taking into consideration all relevant facts, including the relationship between the debtor and the utility company. *See, e.g.*, *In re Penn. Cent. Transp. Co.*, 467 F.2d 100, 103–04 (3d Cir. 1972) (affirming the bankruptcy court's decision that no utility deposits were necessary where such deposits would "jeopardize the continuing operation of the [debtor] merely to give further security to suppliers who already [were] reasonably protected"); *Heard v. City Water Board (In re Heard)*, 84 B.R. 454, 459 (Bankr. W.D. Tex. 1987) (holding that, because the utility had not had any difficulty with the debtors during 14 years of service, "the utility need[ed] no adequate assurance"). Courts construing section 366(b) of the Bankruptcy Code have long recognized that adequate assurance of payment does not constitute an absolute guarantee of the debtor's ability to pay. *See, e.g.*, *In re Caldor, Inc.—NY*, 199 B.R. 1, 3 (S.D.N.Y. 1996) (citation omitted) ("Section 366(b) requires the Bankruptcy Court to determine whether the circumstances are sufficient to provide a utility with 'adequate assurance' of payment. The statute does not require an 'absolute guarantee of payment.'"), *aff'd sub nom. Va. Elec. & Power Co. v. Caldor, Inc.—NY*, 117 F.3d 646 (2d Cir. 1997) ("<u>Caldor II</u>"); *In re New Rochelle Tel. Corp.*, 397 B.R. 633, 639 (Bankr. E.D.N.Y. 2008) (citation omitted) ("Adequate assurance, however, is not a guarantee of payment; rather, it is intended to guard against the utility assuming an unreasonable risk of non-payment."); *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002) ("In determining adequate assurance, a bankruptcy court is not required to give a utility company the equivalent of a guaranty of payment . . . .").

26. There is nothing to prevent a court from deciding, on the facts of the case before it, that the amount required of a debtor to provide adequate assurance of payment to a utility company should be nominal or even zero. *See, e.g.*, *In re Pac-West Telecomm, Inc.*, No. 07-10562

12

(BLS) (Bankr. D. Del. May 2, 2007) [Docket No. 39] (approving adequate assurance in the form of a one-time supplemental prepayment to each utility company equal to the prorated amount of one week's charges).[5]  Courts consider what is "need[ed] of the utility for assurance, and . . . require that the debtor supply *no more than that*, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." *Caldor II*, 117 F.3d at 650 (quoting *Penn Jersey*, 72 B.R. at 985); *see also Penn Cent.*, 467 F.2d at 103–04; *In re Magnesium Corp. of Am.*, 278 B.R. 698, 714 (Bankr. S.D.N.Y. 2002).

27. Here, the Utility Companies are adequately assured against any risk of nonpayment for future services.  As such, the Proposed Adequate Assurance is reasonable and satisfies the requirements of section 366 of the Bankruptcy Code.  As set forth herein, the Debtors fully intend to pay all postpetition obligations owed to the Utility Companies in the ordinary course of business.  The Adequate Assurance Deposit and the Debtors' ongoing ability to meet obligations as they come due in the ordinary course provide assurance that the Debtors will pay their obligations to the Utility Companies.  Additionally, the Utility Companies are protected through the Utility Deposit, which will be held in a segregated account, and the Utility Companies are afforded flexibility and an opportunity to be heard through the Adequate Assurance Procedures.  Accordingly, the Proposed Adequate Assurance is reasonable and satisfies section 366 of the Bankruptcy Code.  The Debtors believe that one-half of one month's deposit is more than adequate and should be more than satisfactory under the totality of the facts and circumstances.  *See, e.g.*,

---

[5] Prior to the enactment of section 366(c) of the Bankruptcy Code, courts frequently made parallel rulings pursuant to section 366(b) of the Bankruptcy Code. *See Penn. Cent.*, 467 F.2d at 103–04 (affirming the bankruptcy court's decision that no utility deposit was necessary); *Caldor II*, 117 F.3d at 650 ("Even assuming that 'other security' should be interpreted narrowly, we agree with the appellees that a bankruptcy court's authority to 'modify' the level of the 'deposit or other security,' provided for under § 366(b), includes the power to require no 'deposit or other security' where none is necessary to provide a utility supplier with 'adequate assurance of payment.'").

4858-8973-8473.2 28613.00001

*Best Prods.*, 203 B.R. at 54 (authorizing a utility deposit "equal to one-half of the average monthly bill for each of the debtor's facilities serviced by the objecting utilities").

28.    Moreover, termination of the Utility Services could result in the Debtors' inability to operate their business, to the detriment of all stakeholders. *See In re Pilgrim's Pride Corp.*, No. 08-45664 (DML), 2009 WL 7313309, at *2 (Bankr. N.D. Tex. Jan 4, 2009) ("The consequences of an unexpected termination of utility service to [the debtors] could be catastrophic."); *In re Monroe Well Serv., Inc.*, 83 B.R. 317, 319, 322 (Bankr. E.D. Pa. 1988) (noting that without utility service the debtors would "cease operation" and that section 366 of the Bankruptcy Code "was intended to limit the leverage held by utility companies, not increase it").

29.    This Court has granted similar relief in other cases. *See, e.g.*, *In re SunPower Corp.*, No. 24-11649 (CTG) (Bankr. D. Del. Aug. 28, 2024) (approving adequate assurance of payment procedures and an adequate assurance deposit equal to approximately half of the debtors' monthly utility expenses on a final basis); *In re Vyaire Med., Inc.*, No. 24-11217 (BLS) (Bankr. D. Del. July 9, 2024) (same); *In re Express Inc.*, No. 24-10831 (KBO) (Bankr. D. Del. May 15, 2024) (same); *In re Sientra, Inc.*, No. 24-10245 (JTD) (Bankr. D. Del. Mar. 11, 2024) (same); *In re MVK Farmco LLC*, No. 23-11721 (LSS) (Bankr. D. Del. Nov. 13, 2023) (same).[6]

**B.    <u>The Adequate Assurance Procedures Are Reasonable And Appropriate</u>**

30.    Courts are permitted to fashion reasonable procedures, such as the Adequate Assurance Procedures proposed herein, to implement the protections afforded under section 366 of the Bankruptcy Code. *See, e.g.*, *In re Circuit City Stores Inc.*, No. 08-35653, 2009 WL 484553, at *5 (Bankr. E.D. Va. Jan. 14, 2009) ("[T]he plain language of § 366 of the Bankruptcy Code

---

[6]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

4858-8973-8473.2 28613.00001

allows the court to adopt the Procedures set forth in the Utility Order."). Such procedures are important because, without them, the Debtors "could be forced to address numerous requests by utility companies in an unorganized manner at a critical period in their efforts to reorganize." *Id.* Moreover, any rights the Utility Companies believe they have under sections 366(b) and (c)(2) of the Bankruptcy Code are fully preserved under the Adequate Assurance Procedures, because the Utility Companies may choose, in accordance with the Adequate Assurance Procedures, to request modification of the Proposed Adequate Assurance. *See id.* at *5–6. The Adequate Assurance Procedures avoid a haphazard and chaotic process whereby each Utility Company could make an extortionate, last-minute demand for adequate assurance that would force the Debtors to pay under the threat of losing critical Utility Services. *See id.* at *5.

31.     The proposed Adequate Assurance Procedures are reasonable and in accord with the purposes of section 366 of the Bankruptcy Code because they will ensure that the essential Utility Services continue while providing a streamlined process for Utility Companies to challenge the adequacy of the Proposed Adequate Assurance or seek an alternative form of adequate assurance.

32.     As explained herein and in the First Day Declaration, continued and uninterrupted utility service is critical to the Debtors' operations and the success of the chapter 11 cases. With the Adequate Assurance Procedures proposed herein, the Utility Companies will not be prejudiced by continuing to provide their services to the Debtors postpetition. If a Utility Company does not believe that the Proposed Adequate Assurance is "satisfactory," such Utility Company may file an objection or submit an Additional Assurance Request pursuant to the Adequate Assurance Procedures proposed herein.

4858-8973-8473.2 28613.00001

33. The Court has the power to approve the Adequate Assurance Procedures pursuant to section 105(a) of the Bankruptcy Code, which provides that a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). The Adequate Assurance Procedures are necessary and appropriate to carry out the provisions of the Bankruptcy Code, as they will ensure that the Utility Services are continued without prejudicing the Utility Companies.

### C. Processing Of Checks And Electronic Fund Transfers Should Be Authorized

34. The Debtors have sufficient funds to pay the amounts described in this motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations, the proposed debtor-in-possession financing, and anticipated access to cash collateral. Under the Debtors' existing cash management system, the Debtors have made arrangements readily to identify checks, wire transfer requests, or automated clearing house transfers with respect to authorized payments related to this motion, as applicable. Accordingly, the Debtors believe that checks, wire transfer requests, or automated clearing house transfers that are not related to authorized payments will not be honored inadvertently. Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks, wire transfer requests, and automated clearing house transfers in respect of the relief requested in this motion.

### Satisfaction of Bankruptcy Rule 6003

35. Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. For the reasons discussed above, the relief requested herein is integral to the Debtors' ability to transition their operations into these chapter 11 cases and to maintain the value of their estates postpetition. Failure to receive such

16

authorization and other relief during the first twenty-one days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture.  For the reasons discussed herein, the relief requested is necessary in order for the Debtors to operate their business in the ordinary course, preserve the going concern value of the Debtors' operations, and maximize the value of their estates for the benefit of all stakeholders.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## **Reservation of Rights**

36. Nothing contained in this motion or any order granting the relief requested in this motion, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be:  (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this motion or any order granting the relief requested by this motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action, or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.  If the Court grants the relief sought herein, any payment made pursuant to the

17

Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights subsequently to dispute such claim.

### **Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

37. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### **Notice**

38. The Debtors will provide notice of this motion to: (a) the United States Trustee for the District of Delaware; (b) the United States Attorney's Office for the District of Delaware; (c) the state attorneys general for all states in which the Debtors conduct business; (d) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (e) counsel to the prepetition lender; (f) counsel to the postpetition lender; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002. As this motion is seeking "first day" relief, within two business days of the hearing on the motion, the Debtors will serve copies of the motion and any order entered in respect to this motion as required by Local Rule 9013-1(m).

*[Remainder of Page Intentionally Left Blank]*

**No Prior Request**

39.     No prior request for the relief sought in this motion has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully request entry of the Interim Order and Final Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** respectively, granting the relief requested herein and granting such other relief as is just and proper.

| | |
|---|---|
| Dated:  October 16, 2024 | **PACHULSKI STANG ZIEHL & JONES LLP** |
| | |
| | */s/ Laura Davis Jones* |
| | Laura Davis Jones (DE Bar No. 2436) |
| | David M. Bertenthal (CA Bar No. 167624) |
| | Timothy P. Cairns (DE Bar No. 4228) |
| | 919 North Market Street, 17th Floor |
| | P.O. Box 8705 |
| | Wilmington, Delaware 19899-8705 (Courier 19801) |
| | Telephone:   302-652-4100 |
| | Facsimile:    302-652-4400 |
| | Email: ljones@pszjlaw.com |
| | dbertenthal@pszjlaw.com |
| | tcairns@pszjlaw.com |
| | |
| | *Proposed Counsel to the* |
| | *Debtors and Debtors in Possession* |