## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FLUID MARKET INC., *et al.*,[1] | ) | Case No. 24-12363 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

## MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
## (I) APPROVING NOTIFICATION AND HEARING PROCEDURES
## FOR (A) CERTAIN TRANSFERS OF AND DECLARATIONS OF
## WORTHLESSNESS WITH RESPECT TO COMMON STOCK
## AND (B) CERTAIN TRANSFERS OF CLAIMS AGAINST
## DEBTORS, AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion:[2]

### Relief Requested

1. By this motion, the Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and the "Final Order"): (a) approving certain notification and hearing procedures, substantially in the form of Exhibit 1 attached to the Interim Order (the "Procedures"), related to certain transfers of and declarations of worthlessness with respect to Debtor Fluid Market, Inc.'s ("FMI") existing classes (or series) of common stock or any Beneficial Ownership[3] therein (any

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Fluid Market, Inc. (1365); and Fluid Fleet Services, LLC (5994). The Debtors' service address is 3827 Lafayette St., Suite #149, Denver, CO 80205.

[2] The facts and circumstances supporting this motion are set forth in the *Declaration of T. Scott Avila in Support of the Debtors' Chapter 11 Petitions and First Day Relief* (the "First Day Declaration"), filed contemporaneously with this motion and incorporated by reference herein. Capitalized terms used but not immediately defined shall have the meanings ascribed to them elsewhere in this motion or in the First Day Declaration, as applicable.

[3] "Beneficial Ownership" will be determined in accordance with the applicable rules of sections 382 and 383 of the Internal Revenue Code of 1986, 26 U.S.C. §§ 1–9834 (as amended, the "IRC") and the U.S. Department of the Treasury regulations thereunder (the "Treasury Regulations") (other than Treasury Regulations section 1.382-2T(h)(2)(i)(A)), and includes direct, indirect, and constructive ownership (*e.g.*, (1) a holding company would be considered to beneficially own all equity securities owned by its subsidiaries, (2) a partner in a partnership would

such record or Beneficial Ownership of common stock, collectively, the "Common Stock") for the purposes of protecting the potential value of the Debtors' net operating losses ("NOLs") and certain other tax attributes (together with the NOLs, the "Tax Attributes"); (b) directing that any purchase, sale, other transfer of, or declaration of worthlessness with respect to Common Stock in violation of the Procedures shall be null and void *ab initio*; (c) scheduling a final hearing to consider approval of the motion on a final basis; and (d) granting related relief.

### Jurisdiction and Venue

2.     The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.     Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

be considered to beneficially own its proportionate share of any equity securities owned by such partnership, (3) an individual and such individual's family members may be treated as one individual, (4) persons and entities acting in concert to make a coordinated acquisition of equity securities may be treated as a single entity, and (5) a holder would be considered to beneficially own equity securities that such holder has an Option to acquire). An "Option" to acquire stock includes all interests described in Treasury Regulations section 1.382-4(d)(9), including any contingent purchase right, warrant, convertible debt, put, call, stock subject to risk of forfeiture, contract to acquire stock, or similar interest, regardless of whether it is contingent or otherwise not currently exercisable.

4.     The statutory bases for the relief requested herein are sections 105, 362, and 541 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2002-2 and 9013-1.

### Background

5.     On the date hereof (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in the chapter 11 cases, and no committees have been appointed or designated.

6.     The Debtors operate and manage a technology-based, peer-to-peer truck-sharing platform across the United States with a fleet of nearly 5,500 vehicles owned by their non-Debtor affiliates or third-party owners who have elected to put their vehicles on the Debtors' platform, https://www.fluidtruck.com/.  Customers have quick and easy access to the right vehicle whenever they need it via the Debtors' mobile app and website.  Faced with severely constrained liquidity, and after multiple failed efforts to raise additional capital or debt financing, the Debtors, in an exercise of their business judgment, commenced these chapter 11 cases with the intention of pursuing a prompt sale of their assets to preserve their business as a going concern and maximize value for all their stakeholders.

### The Tax Attributes

7.     Companies generally have a variety of tax attributes.  A company generates NOLs if the operating expenses it has incurred exceed the revenues it has earned during a single tax year.  A company may apply or "carry forward" NOLs to reduce future tax payments (subject

to certain conditions discussed below).[4]  *See* IRC § 172.  Generally, a company's deduction for

net business interest expense is limited to 30 percent of its adjusted taxable income plus certain

other amounts.  Any business interest expense disallowed is carried forward and treated as business

interest expense in the following tax year ("163(j) Carryforwards").  *See* IRC § 163.  While NOLs

and 163(j) Carryforwards are the most ubiquitous tax attributes, companies can also generate a

variety of other tax attributes, including foreign tax credits, business tax credits, and capital loss

carryforwards, as the case may be.  Moreover, the "tax basis" in a company's assets can be vital

to determining a company's tax attributes.

8.     As discussed below, a company's tax attributes can become subject to

significant limitation under IRC §§ 382 and 383 if an "ownership change" occurs.  The purpose of

the relief requested herein is to minimize the risk that an "ownership change" occurs before the

conclusion of these chapter 11 cases.  In doing so, the Debtors intend to maximize the value of

their estates by preserving the Tax Attributes.

9.     The Debtors believe that they have, as of December 31, 2023, significant

U.S. federal NOLs of 163(j) Carryforwards in amounts to be determined, along with certain other

Tax Attributes.[5]  The Debtors may generate additional Tax Attributes in the 2024 tax year,

including during the pendency of these chapter 11 cases.  The Tax Attributes are potentially of

significant value to the Debtors and their estates because the Debtors may be able to use the Tax

Attributes to offset any taxable income, including any such taxable income generated by

transactions consummated during these chapter 11 cases (including with respect to any taxable

---

[4]     In addition, under certain circumstances, certain NOLs generated may be "carried back" to offset taxable income
        in prior years.  The specific rules regarding carrybacks and carryforwards depend on when a particular NOL
        was generated.

[5]     Amounts are subject to change.  The statement of federal net operating loss carryforwards and Section 163(j)
        carryforwards is not intended to be an exclusive list of the Debtors' tax attributes.

disposition of some or all of the Debtors' assets).  Additionally, depending on the structure used in the Debtors' chapter 11 plan, in the event any of the Debtors' Tax Attributes were to survive, the Debtors may be able to carry forward certain of those Tax Attributes to offset federal taxable income or federal tax liability in future years.  The relief requested herein is expected to preserve the value of the Tax Attributes to the benefit of the Debtors' stakeholders.

A.      **An "Ownership Change" May Negatively
        Affect the Debtors' Utilization of the Tax Attributes**

10.      The Procedures are the mechanism by which the Debtors propose that they will monitor and, if necessary, object to certain transfers of Beneficial Ownership of Common Stock.

11.      Sections 382 and 383 of the IRC limit the amount of federal taxable income and federal tax liability, respectively, that can be offset by a corporation's tax attributes in taxable years (or portions thereof) following an "ownership change."  Generally, an "ownership change" occurs if the percentage (by value) of the stock of a corporation owned by one or more "5 percent" shareholders has increased by more than 50 percentage points over the lowest percentage of stock owned by such shareholders at any time during the three-year testing period ending on the date of the ownership change.  The total percentage point increases of stock owned by one or more "5 percent" shareholders within the measuring period is generally referred to as the amount of the "ownership shift."  In situations involving multiple classes of stock with different rights, the determination of whether a shareholder is a "5 percent" shareholder is made by reference to stock value (without regard to certain considerations such as control premiums or minority discounts, and with reference to certain mechanical tests).  For example, an ownership change would occur in the following situation:

An individual ("<u>A</u>") owns 50.1 percent of the stock of corporation XYZ. A sells her 50.1 percent interest to another individual ("<u>B</u>"), who owns 5 percent of XYZ's stock. Under section 382 of the IRC, an ownership change has occurred because B's interest in XYZ has increased more than 50 percentage points (from 5 percent to 55.1 percent) during the testing period. The same result would follow even if B owned no XYZ stock prior to the transaction with A because B both becomes a 5 percent shareholder and increases his ownership by more than 50 percentage points during the testing period.

12.     Under these rules, a company can be harmed as a result of actions by parties that are unknown to the company. As noted above, if a person unknown to the company were to acquire more than 5 percent of the company's stock (determined in accordance with the rules set forth above), the company would experience an "ownership shift" (or an increase in the magnitude of an "ownership shift") that could lead to an ownership change. By the time the company knew who the unidentified shareholder was, the shareholder would have already purchased the shares, and the harm would be done. Accordingly, for the Procedures to be effective, the Procedures must bind unknown parties.

13.     As one particularly salient example, companies in certain instances may enact charter restrictions to protect their tax attributes. Such charter restrictions may impose **substantive** limitations on sales and purchases of equity that are similar to the procedural limitations requested in this motion. Although such charter restrictions are put to a shareholder vote before being enacted, they always bind unknown parties (i.e., persons that are not shareholders at the time the vote is taken) and do so via public information issued by the company in connection with the adoption of such charter restrictions. It is true that the relief requested in this motion is not being put to a shareholder vote—nor should it be, because the requested relief is intended to maximize the value of the Debtors for all stakeholders—but unlike charter

restrictions, the relief requested in this motion merely implements **procedures** that must be observed before relevant actions are taken.

14.    An "ownership change" can also occur as a result of a "worthless stock deduction" claimed by any "50-percent shareholder."  IRC § 382(g)(4)(D).  A 50-percent shareholder is any person or entity (or group of people that is treated as a single entity under the applicable rules) with Beneficial Ownership of 50 percent or more of a corporation's stock "at any time during the 3-year period ending on the last day of the taxable year" with respect to which the worthless stock deduction is claimed.  *Id.*  If the 50-percent shareholder still owns the corporation's stock at the end of the taxable year, sections 382 and 383 of the IRC essentially treat such person or entity as newly purchasing the stock on the first day of the next taxable year.  For example, if a person or entity with 50 percent of a corporation's stock claims a worthless stock deduction with respect to the 2023 tax year but does not sell such stock in 2023, that person is treated:  (a) as not having owned the stock at the end of 2023; and (b) as having purchased the stock on the first day of the 2024 tax year.  That deemed purchase would cause an ownership change because the 50-percent shareholder would be deemed to have a 50-percentage-point increase in its stock ownership.  Notably, while the seminal case of *Official Committee of Unsecured Creditors v. PSS Steamship Co. (In re Prudential Lines Inc.)*, 928 F.2d 565 (2d Cir. 1991) is generally relied upon to support equity trading motions in general, the specific issue in *Prudential Lines* was, in fact, a worthless stock deduction.

15.    If an ownership change occurs, section 382 of the IRC limits the amount of a corporation's future taxable income that may be offset by its "pre-change losses" and section 383 of the IRC limits the amount of a corporation's future tax liability that may be offset by its "excess credits," in each case, to an annual amount based on the fair market value of all of the stock of the

corporation prior to the ownership change multiplied by the long-term tax-exempt rate that applies to the month of the ownership change.[6]  *See* IRC §§ 382(b) and 383(a).  Pre-change losses and excess credits include the Debtors' Tax Attributes and any so-called "realized built-in losses" (as defined in section 382(h)(3) of the IRC).[7]  Once a Tax Attribute is limited under section 382 or 383 of the IRC, its use may be limited forever.[8]  Thus, certain transfers or worthless stock deductions with respect to the Beneficial Ownership of Common Stock effected before the effective date of the Debtors' consummation of the relevant chapter 11 proceedings may trigger an "ownership change" for IRC purposes, severely endangering the Debtors' ability to use the Tax Attributes, which would cause substantial damage to the Debtors' estates.

16.    Notably, the Debtors have limited the relief requested herein to the extent necessary to preserve estate value.  Specifically, the proposed Interim Order and Final Order will affect only:  (a) holders of the equivalent of more than 4.5 percent or more of Beneficial Ownership of the Common Stock; (b) parties who are interested in purchasing sufficient Common Stock to result in such party becoming a holder of 4.5 percent or more of Beneficial Ownership of the outstanding Common Stock; and (c) any "50-percent shareholder" (as defined in section 382(g)(4)(D) of the Code) seeking to claim a worthless stock deduction.

---

[6]   The applicable long-term tax-exempt rate changes from month to month.  For ownership changes occurring in September 2024, the applicable long-term tax-exempt rate is 4.28 percent.

[7]   The rules relating to potential limitations on the ability to offset taxable income with so-called realized built-in losses are highly complex and depend on, among other things, the extent (if any) of a debtor's "net unrealized built-in loss." A net unrealized built-in loss is equal to the excess of the aggregate adjusted basis of all of a corporation's applicable assets over their fair market value (as determined for purposes of section 382 of the IRC) immediately prior to the ownership change. IRC § 382(h)(3)(A)(i). Once a net unrealized built-in loss is limited under section 382 or 383 of the IRC, its use is limited for 5 years.

[8]   Realized built-in losses that are deducted beginning after the expiration of a five-year "recognition period" are no longer subject to limitation, but any realized built-in losses that are deducted prior to the expiration of such period are limited forever.

17.    To maximize the use of the Tax Attributes and enhance recoveries for the Debtors' stakeholders, the Debtors seek limited relief that will enable them to monitor closely certain transfers of Beneficial Ownership of Common Stock and certain worthless stock deductions with respect to Beneficial Ownership of Common Stock so as to be in a position to act expeditiously to prevent such transfers or worthlessness deductions, if necessary, with the purpose of preserving the Tax Attributes.  By establishing and implementing such Procedures, the Debtors will be in a position to object to "ownership changes" that threaten their ability to preserve the value of their Tax Attributes for the benefit of the estates.

**B.    Proposed Procedures for Transfers of or**
**Declarations of Worthlessness with Respect to Common Stock**

18.    The Procedures are the mechanism by which the Debtors propose that they will monitor and, if necessary, object to certain transfers of Beneficial Ownership of Common Stock and declarations of worthlessness with respect to Beneficial Ownership of Common Stock to ensure preservation of the Tax Attributes.  The Procedures, which are fully set forth in <u>Exhibit 1</u> to the Interim Order and the Final Order, respectively, are detailed below.[9]

<u>Procedures for Transfers of Common Stock</u>

a.    Any entity (as defined in section 101(15) of the Bankruptcy Code) that is a Substantial Shareholder (as defined herein) must file with the Court, and serve upon: (i) the Debtors, Fluid Market, Inc., 3827 Lafayette St., Suite #149, Denver, CO 80205; (ii) proposed counsel to the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801), Attn: Laura Davis Jones (ljones@pszjlaw.com), David M. Bertenthal (dbertenthal@pszjlaw.com), and Timothy P. Cairns (tcairns@pszjlaw.com); (iii) the Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: [●]; (iv) counsel to any official committee of unsecured creditors appointed in the chapter 11 cases; and (v) any party that has requested notice pursuant to Bankruptcy Rule 2002 or Local Rule 2002-(b) (collectively, the "<u>Declaration Notice Parties</u>"), a declaration

---

[9]    Capitalized terms used in this section but not otherwise defined herein have the meanings given to them in the Procedures.  To the extent that this summary and the terms of the Procedures are inconsistent, the terms of the Procedures control.

of such status, substantially in the form attached to the Procedures as **Exhibit 1A** (each, a "<u>Declaration of Status as a Substantial Shareholder</u>"), on or before the later of (A) twenty calendar days after the date of the Notice of Interim Order, or (B) ten calendar days after becoming a Substantial Shareholder; *provided* that, for the avoidance of doubt, the other procedures set forth herein shall apply to any Substantial Shareholder even if no Declaration of Status as a Substantial Shareholder has been filed.

b.  Prior to effectuating any transfer of Beneficial Ownership of Common Stock that would result in an increase in the amount of Common Stock of which a Substantial Shareholder has Beneficial Ownership or would result in an entity or individual becoming a Substantial Shareholder, the parties to such transaction must file with the Court, and serve upon the Declaration Notice Parties, an advance written declaration of the intended transfer of Common Stock, as applicable, substantially in the form attached to the Procedures as **Exhibit 1B** (each, a "<u>Declaration of Intent to Accumulate Common Stock</u>").

c.  Prior to effectuating any transfer of Beneficial Ownership of Common Stock that would result in a decrease in the amount of Common Stock of which a Substantial Shareholder has Beneficial Ownership or would result in an entity or individual ceasing to be a Substantial Shareholder, the parties to such transaction must file with the Court, and serve upon the Declaration Notice Parties, an advance written declaration of the intended transfer of Common Stock, as applicable, substantially in the form attached to the Procedures as **Exhibit 1C** (each, a "<u>Declaration of Intent to Transfer Common Stock</u>," and together with a Declaration of Intent to Accumulate Common Stock, each, a "<u>Declaration of Proposed Transfer</u>").

d.  The Debtors and the other Declaration Notice Parties shall have twenty calendar days after receipt of a Declaration of Proposed Transfer to file with the Court and serve on such Substantial Shareholder or potential Substantial Shareholder an objection to any proposed transfer of Beneficial Ownership of Common Stock, as applicable, described in the Declaration of Proposed Transfer on the grounds that such transfer might adversely affect the Debtors' ability to utilize their Tax Attributes.  If the Debtors or any of the other Declaration Notice Parties file an objection, such transaction will remain ineffective unless such objection is withdrawn, or such transaction is approved by a final and non-appealable order of the Court.  If the Debtors and the other Declaration Notice Parties do not object within such twenty-day period, such transaction can proceed solely as set forth in the Declaration of Proposed Transfer.  Further transactions within the scope of this paragraph must be the subject of additional notices in accordance with the procedures set forth herein, with an additional twenty-day waiting period for each Declaration of Proposed Transfer.  To the extent that the Debtors receive an appropriate Declaration of Proposed Transfer and determine in their business judgment not to object, they shall provide notice of that decision as soon as is reasonably practicable to any statutory committee(s) appointed in these chapter 11 cases.

e.      For purposes of these Procedures (including, for the avoidance of doubt, with respect to both transfers and declarations of worthlessness):  (i) a "<u>Substantial Shareholder</u>" is any entity or individual person that has Beneficial Ownership of at least 4.5 percent of all issued and outstanding shares of Common Stock; and (ii) "<u>Beneficial Ownership</u>" will be determined in accordance with the applicable rules of section 382 of the IRC, and the Treasury Regulations promulgated thereunder (other than Treasury Regulations section 1.382-2T(h)(2)(i)(A)) and includes direct, indirect, and constructive ownership (*e.g.*, (1) a holding company would be considered to beneficially own all equity securities owned by its subsidiaries, (2) a partner in a partnership would be considered to beneficially own its proportionate share of any equity securities owned by such partnership, (3) an individual and such individual's family members may be treated as one individual, (4) persons and entities acting in concert to make a coordinated acquisition of equity securities may be treated as a single entity, and (5) a holder would be considered to beneficially own equity securities that such holder has an Option (as defined herein) to acquire).  An "<u>Option</u>" to acquire stock includes all interests described in Treasury Regulations section 1.382-4(d)(9), including any contingent purchase right, warrant, convertible debt, put, call, stock subject to risk of forfeiture, contract to acquire stock, or similar interest, regardless of whether it is contingent or otherwise not currently exercisable.

<u>Procedures for Declarations of Worthlessness of Common Stock</u>

a.      Any person or entity that currently is or becomes a 50-Percent Shareholder[10] must file with the Court and serve upon the Declaration Notice Parties a declaration of such status, substantially in the form attached to the Procedures as **Exhibit 1D** (each, a "<u>Declaration of Status as a 50-Percent Shareholder</u>"), on or before the later of (i) twenty calendar days after the date of the Notice of Interim Order, and (ii) ten calendar days after becoming a 50-Percent Shareholder; *provided* that, for the avoidance of doubt, the other procedures set forth herein shall apply to any 50-Percent Shareholder even if no Declaration of Status as a 50-Percent Shareholder has been filed.

b.      Prior to filing any federal or state tax return, or any amendment to such a return, or taking any other action that claims any deduction for worthlessness of Beneficial Ownership of Common Stock for a taxable year ending before the Debtors' emergence from chapter 11 protection, such 50-Percent Shareholder must file with the Court and serve upon the Declaration Notice Parties a declaration of intent to claim a worthless stock deduction (a "<u>Declaration of Intent to Claim a Worthless Stock Deduction</u>"), substantially in the form attached to the Procedures as **Exhibit 1E**.

---

[10]     For purposes of the Procedures, a "<u>50-Percent Shareholder</u>" is any person or entity that, at any time since December 31, 2019, has owned Beneficial Ownership of 50 percent or more of the Common Stock (determined in accordance with section 382(g)(4)(D) of the IRC and the applicable Treasury Regulations thereunder).

i.  The Debtors and the other Declaration Notice Parties shall have twenty calendar days after receipt of a Declaration of Intent to Claim a Worthless Stock Deduction to file with the Court and serve on such 50-Percent Shareholder an objection to any proposed claim of worthlessness described in the Declaration of Intent to Claim a Worthless Stock Deduction on the grounds that such claim might adversely affect the Debtors' ability to utilize their Tax Attributes.

ii.  If the Debtors or the other Declaration Notice Parties timely object, the filing of the tax return or amendment thereto with such claim will not be permitted unless approved by a final and non-appealable order of the Court, unless such objection is withdrawn.

iii.  If the Debtors and the other Declaration Notice Parties do not object within such twenty-day period, the filing of the return or amendment with such claim will be permitted solely as described in the Declaration of Intent to Claim a Worthless Stock Deduction. Additional returns and amendments within the scope of this section must be the subject of additional notices as set forth herein, with an additional twenty-day waiting period. To the extent that the Debtors receive an appropriate Declaration of Intent to Claim a Worthless Stock Deduction and determine in their business judgment not to object, they shall provide notice of that decision as soon as is reasonably practicable to any statutory committee(s) appointed in these chapter 11 cases.

Notice Procedures

a.  No later than two business days following entry of the Interim Order, the Debtors shall serve a notice by first class mail, substantially in the form attached to the Procedures as **Exhibit 1F** (the "Notice of Interim Order"), on (i) the U.S. Trustee for the District of Delaware; (ii) the entities listed on the consolidated list of creditors holding the 30 largest unsecured claims; (iii) the U.S. Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) counsel to any official committee appointed in these chapter 11 cases; (vi) all registered holders of Common Stock, as applicable; and (vii) any party that has requested notice pursuant to Bankruptcy Rule 2002 or Local Rule 2002-1(b). Additionally, no later than two business days following entry of the Final Order, the Debtors shall serve a Notice of Interim Order modified to reflect that the Final Order has been entered, substantially in the form attached to the Procedures as **Exhibit 1G** (as modified, the "Notice of Final Order") on the same entities that received the Notice of Interim Order.

b.  All registered and nominee holders of Common Stock shall be required to serve the Notice of Interim Order or Notice of Final Order, as applicable, on any holder for whose benefit such registered or nominee holder holds such Common Stock, down the chain of ownership for all such holders of Common Stock.

c.    Any entity or individual, or broker or agent acting on such entity's or individual's behalf who sells Common Stock to another entity or individual, shall be required to serve a copy of the Notice of Interim Order or Notice of Final Order, as applicable, on such purchaser of such Common Stock, or any broker or agent acting on such purchaser's behalf.

d.    To the extent confidential information is required in any declaration described in the Procedures, such confidential information may be filed and served in redacted form; *provided, however*, that any such declarations served on the Debtors ***shall not*** be in redacted form. The Debtors shall keep all information provided in such declarations strictly confidential and shall not disclose the contents thereof to any person except: (i) to the extent necessary to respond to a petition or objection filed with the Court; (ii) to the extent otherwise required by law; or (iii) to the extent that the information contained therein is already public; *provided, however*, that the Debtors may disclose the contents thereof to their professional advisors, who shall keep all such notices strictly confidential and shall not disclose the contents thereof to any other person, subject to further Court order. To the extent confidential information is necessary to respond to an objection filed with the Court, such confidential information shall be filed under seal or in a redacted form.

## Basis for Relief

19.    Section 541 of the Bankruptcy Code provides that property of the estate comprises, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541. The Tax Attributes are property of the Debtors' estates. *See Official Comm. of Unsecured Creditors v. PSS Steamship Co. (In re Prudential Lines Inc.)*, 928 F.2d 565, 573 (2d Cir. 1991) ("We hold that the right to a carryforward attributable to its . . . NOL was property of [the debtor's] bankruptcy estate."); *Official Comm. of Unsecured Creditors v. Forman (In re Forman Enters., Inc.)*, 273 B.R. 408, 416 (Bankr. W.D. Pa. 2002) (finding that NOLs are property of the debtors' estates); *Nisselson v. Drew Indus., Inc. (In re White Metal Rolling & Stamping Corp.)*, 222 B.R. 417, 424 (Bankr. S.D.N.Y. 1998) (same). Moreover, section 362(a)(3) of the Bankruptcy Code stays "any act [of an entity] to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Accordingly, any act of a holder of a debtor's equity securities that causes the termination, or limits use, of the Tax Attributes violates the automatic stay.

*See, e.g.*, *Prudential Lines*, 928 F.2d at 574 (holding that causing the termination of or adversely affecting the value of a debtor's NOL violates the automatic stay); *In re Phar-Mor, Inc.*, 152 B.R. 924, 927 (Bankr. N.D. Ohio 1993) ("[T]he sale of stock is prohibited by § 362(a)(3) as an exercise of control over the NOL, which is property of the estate.").

20.     Implementing the Procedures is necessary and appropriate to enforce the automatic stay and to preserve the value of the Tax Attributes for the benefit of the Debtors' estates. Under sections 382 and 383 of the IRC, certain transfers or declarations of worthlessness with respect to Beneficial Ownership of Common Stock prior to the consummation of a chapter 11 plan could cause the termination or limit the use of the Tax Attributes.  As stated above, the Debtors currently estimate that, as of December 31, 2023, they have significant U.S. federal NOLs and 163(j) Carryforwards in amounts to be determined, and certain other tax attributes.  In addition, the Debtors may generate additional Tax Attributes in the 2024 tax year.  As noted above, these Tax Attributes may be necessary to address tax consequences resulting from the implementation of their chapter 11 plan and, depending upon the structure used to consummate their chapter 11 plan, may provide the potential for material future tax savings (including in post-emergence years). The termination or limitation of the Tax Attributes could thus be materially detrimental to all parties in interest, including by potentially limiting the Debtors' ability to use certain structures to consummate their chapter 11 plan.  Granting the relief requested herein will preserve the Debtors' flexibility in operating their businesses during the pendency of these chapter 11 cases and implementing an exit plan that makes full and efficient use of the Tax Attributes and maximizes the value of the Debtors' estates.

21.     Additionally, the Procedures do not bar all transfers of or declarations of worthlessness with respect to Beneficial Ownership of Common Stock.  The Debtors seek to

establish procedures only to monitor those types of transactions that would pose a serious risk under the ownership change test pursuant to sections 382 and 383 of the IRC and to preserve the Debtors' ability to seek substantive relief if it appears that a proposed transfer or declaration of worthlessness could jeopardize the Debtors' utilization of the Tax Attributes. Because of the Tax Attributes' importance to the Debtors' restructuring, and thus all parties in interest, the benefits of implementing the Procedures outweigh the drawbacks of subjecting a small subset of transfers to the Procedures.

22.     Courts in this and other jurisdictions have routinely restricted transfers of equity interests and declarations of worthlessness with respect to beneficial interests of a debtor's stock, or instituted notice procedures regarding proposed transfers and declarations of worthlessness, to protect debtors against the possible loss of tax attributes. *See, e.g.*, *In re SunPower Corp.*, No. 24-11649 (CTG) (Bankr. D. Del. Aug. 28, 2024) (approving certain notification and hearing procedures with respect to certain transfers of equity interests on a final basis); *In re Vyaire Med., Inc.*, No 24-11217 (BLS) (Bankr. D. Del. July 9, 2024) (same); *In re Express, Inc.*, No 24-10831 (KBO) (Bankr. D. Del., June 6, 2024) (same); *In re Appgate, Inc.*, No. 24-10956 (CTG) (Bankr. D. Del. May 28, 2024) (same); *In re Sientra, Inc.*, No. 24-10245 (JTD) (Bankr. D. Del. Mar. 11, 2024) (same); *In re PGX Holdings, Inc.*, No. 23-10718 (CTG) (Bankr. D. Del. July 19, 2023) (same).[11]

23.     Accordingly, the Debtors request that the Court enter the Interim Order and the Final Order approving the Procedures to protect the Debtors against the possible loss or limitation of the Debtors' Tax Attributes.

---

[11]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

**Satisfaction of Bankruptcy Rule 6003**

24.     The Debtors believe that they are entitled to immediate authorization for the relief contemplated by this Motion.  Pursuant to Bankruptcy Rule 6003, "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting the following:  . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001." To the extent that the requirements of Bankruptcy Rule 6003 are applicable to the relief requested in the Motion, the Debtors submit that, for the reasons set forth herein, such relief is necessary to avoid immediate and irreparable harm.  For the reasons discussed herein and in the First Day Declaration, the relief requested herein is integral to the Debtors' administrative activities in these chapter 11 cases and is necessary to preserve the value of the Debtors' business and to maximize the value of the Debtors' estates for the benefit of all stakeholders.  Failure to receive such authorization and other relief during the first twenty-one (21) days of these chapter 11 cases would severely disrupt the administration of the Debtors' estates at this critical juncture.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

**Reservation of Rights**

25.     Nothing contained herein is intended or shall be construed as: (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay a prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief

requested by this Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

26.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Notice

27.     The Debtors will provide notice of this motion to:  (a) the United States Trustee for the District of Delaware; (b) the United States Attorney's Office for the District of Delaware; (c) the state attorneys general for all states in which the Debtors conduct business; (d) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (e) counsel to the prepetition lender; (f) counsel to the postpetition lender; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002.  As this motion is seeking "first day" relief, within two business days of the hearing on the motion, the Debtors will serve copies of the motion and any order entered in respect to this motion as required by Local Rule 9013-1(m).

*[Remainder of Page Intentionally Left Blank]*

**No Prior Request**

28.     No prior request for the relief sought in this motion has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully request entry of the Interim Order and Final Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** respectively, granting the relief requested herein and granting such other relief as is just and proper.

Dated:  October 16, 2024            **PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Timothy P. Cairns (DE Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:   302-652-4100
Facsimile:    302-652-4400
Email: ljones@pszjlaw.com
          dbertenthal@pszjlaw.com
          tcairns@pszjlaw.com

*Proposed Counsel to the*
*Debtors and Debtors in Possession*