## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CLAIRE'S HOLDINGS LLC, *et al.*,[1] | ) | Case No. 25-11454 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. 13** |

### INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO OPERATE THE CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN EXISTING BUSINESS FORMS, (D) CONTINUE TO PERFORM INTERCOMPANY TRANSACTIONS, (II) GRANTING ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION INTERCOMPANY TRANSACTIONS, AND (III) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for the entry of an interim order (this "Interim Order"), (a) authorizing the Debtors to (i) continue to operate the Cash Management System and maintain their existing Debtor Bank Accounts, (ii) honor certain prepetition or postpetition obligations related thereto, (iii) maintain existing Business Forms in the ordinary course of business, and (iv) continue to perform Intercompany Transactions; (b) granting administrative expense status to the Intercompany Transactions; (c) waiving certain requirements under section 345 of the Bankruptcy Code and U.S. Trustee Guidelines; (d) scheduling a final hearing to consider approval

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are:  Claire's Holdings LLC (9619); BMS Distributing Corp. (4117); CBI Distributing Corp. (5574); Claire's (Gibraltar) Holdings Limited (4273); Claire's Boutiques, Inc. (5307); Claire's Canada Corp. (7936); Claire's Intellectual LLC (5274); Claire's Puerto Rico Corp. (6113); Claire's Stores, Inc. (0416); Claire's Swiss Holdings II LLC (7980); Claire's Swiss Holdings LLC (2299); CLSIP Holdings LLC (1950); CLSIP LLC (9769); and CSI Canada LLC (2343).  The Debtors' mailing address is 2400 West Central Road, Hoffman Estates, IL 60192.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

of the Motion on a final basis; and (e) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein, if any, at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.    The Motion is granted on an interim basis as set forth herein.

1.    Any objections to the entry of this Interim Order, to the extent not withdrawn or settled, are overruled.

2.    The final hearing (the "Final Hearing") on the Motion shall be held on **September 9, 2025, at 2:00 p.m., prevailing Eastern Time**.  Any objections or responses to entry of a final order on the Motion shall be filed on or before **4:00 p.m., prevailing Eastern Time, on September 2, 2025** and shall be served on:  (a) the Debtors, Claire's Holdings LLC, 2400 West Central Road, Hoffman Estates, Illinois 60192, Attn.: Brendan McKeough, Executive Vice

President, Chief Legal Officer, and Secretary (brendan.mckeough@claires.com) and 3 SW 129th

Avenue, Pembroke Pines, Florida 33027, Attn: Michele Reilly, Assistant Secretary

(michele.reilly@claires.com); (b) proposed co-counsel to the Debtors, (i) Kirkland & Ellis LLP,

601 Lexington Avenue, New York, New York 10022, Attn.: Joshua A. Sussberg, P.C.

(joshua.sussberg@kirkland.com) and Allyson B. Smith (allyson.smith@kirkland.com) and

333 West Wolf Point Plaza, Chicago, Illinois 60654, Attn.: Alexandra F. Schwarzman, P.C.

(alexandra.schwarzman@kirkland.com) and Robert A. Jacobson (rob.jacobson@kirkland.com)

and (ii) Richards, Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington,

Delaware 19801, Attn: Paul N. Heath (heath@rlf.com) and Zachary I. Shapiro (shapiro@rlf.com);

(c) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801,

Attn.: Benjamin A. Hackman (Benjamin.A.Hackman@usdoj.gov); (d) counsel to the Prepetition

Priority Term Loan Agent and Existing Prepetition Term Loan Agent, Ankura Trust Company,

LLC, Cahill Gordon & Reindell LLP, Attn.: Joel Moss (JMoss@cahill.com), Amit Trehan

(ATrehan@cahill.com), and Sean Tierney (STierney@cahill.com); (e) counsel to the Prepetition

ABL Agent, JPMorgan Chase Bank, N.A., Simpson Thacher & Bartlett LLP, Attn.: Elisha D.

Graff (egraff@stblaw.com) and Zachary J. Weiner (zachary.weiner@stblaw.com) and Potter

Anderson & Corroon LLP, Attn: L. Katherine Good (kgood@potteranderson.com) and Jeremy

Ryan (jryan@potteranderson.com); and (f) any statutory committee appointed in these chapter 11

cases.

      3.     The Debtors are authorized, but not directed, in all cases consistent with past

practice and in the ordinary course of business, to: (a) continue operating the Cash Management

System, substantially as identified on **Exhibit 1** attached hereto and as described in the Motion;

(b) honor their prepetition obligations related thereto; (c) use, in their present form, all

correspondence and Business Forms, as well as checks and other documents related to the Bank Accounts existing immediately before the Petition Date, without reference to the Debtors' status as debtors in possession; *provided* that once the Debtors' preprinted Business Forms have been exhausted, the Debtors shall, when reordering their Business Forms, add the designation "Debtor in Possession" and corresponding bankruptcy case number thereon; (d) continue to perform and record Intercompany Transactions in the ordinary course of business, and treat postpetition Intercompany Claims in a manner consistent with this Court's grant of administrative expense status thereto; (e) continue to use, with the same account numbers, the Bank Accounts in existence as of the Petition Date, including those accounts identified on **Exhibit 2** attached hereto without the need to comply with certain guidelines set forth in the U.S. Trustee Guidelines (to the extent applicable); (f) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; (g) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers, ACH transfers, and other debits; (h) open new debtor in possession Bank Accounts, *provided that* the Debtors shall open any such new Bank Accounts only at banks that have executed a Uniform Depository Agreement with the U.S. Trustee, or at such banks that are willing to immediately execute such an agreement; and (i) pay any Bank Fees incurred in the ordinary course in connection with the Bank Accounts, and to otherwise perform their obligations under the documents governing the Bank Accounts.

4.    The Cash Management Banks are authorized to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course and in a manner consistent with prepetition practices, and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, credit card payments, and ACH transfers issued and drawn on the Bank Accounts after the

Petition Date by the holders or makers thereof, as the case may be, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

5.       The Cash Management Banks are authorized to debit the Debtors' accounts in the ordinary course of business, consistent with historical practices, without the need for further order of this Court for:  (a) all checks drawn on the Debtors' accounts that are cashed at such Cash Management Banks' counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (b) all checks or other items deposited in one of Debtors' accounts with such Cash Management Banks prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to the Petition Date; (c) ACH transfers issued and drawn on the Bank Accounts; and (d) all undisputed prepetition and postpetition amounts outstanding as of the date hereof, if any, owed to the Cash Management Banks as service charges and/or fees for the maintenance of the Cash Management System (collectively (a)-(d), the "Bank Account Claims"). The postpetition Bank Account Claims are entitled to administrative expense priority under section 503(b) of the Bankruptcy Code.

6.       Any existing deposit agreements between or among the Debtors, the Cash Management Banks, and other parties shall continue to govern the postpetition cash management relationship between the Debtors and the Cash Management Banks, and all of the provisions of such agreements, including, without limitation, the termination, indemnification, and fee provisions, shall remain in full force and effect unless otherwise ordered by the Court, and the Debtors and the Cash Management Banks may, without further order of this Court, agree to and implement changes to the Cash Management System and cash management procedures in the

ordinary course of business, consistent with historical practices and the Debtors' prepetition secured debt agreements, including, without limitation, the opening and closing of bank accounts, subject to the terms and conditions of this Interim Order.

7.      Subject to the terms of this Interim Order, the Debtors are authorized, but not directed, in the ordinary course of business and consistent with historical practices, to open new accounts or close any existing Bank Accounts and enter into any ancillary agreements, including deposit account control agreements, related to the foregoing, as they may deem necessary and appropriate in their sole discretion.  The relief granted in this Interim Order is extended to any new bank account opened by the Debtors after the date hereof, which account shall be deemed a Bank Account, and to the bank at which such account is opened, which bank shall be deemed a Cash Management Bank; *provided that* the Debtors shall open any such new Bank Accounts only at banks that have executed a Uniform Depository Agreement with the U.S. Trustee, or at such banks that are willing to immediately execute such an agreement.

8.      As soon as possible after entry of this Interim Order, the Debtors shall contact the Cash Management Banks that are a party to a Uniform Depository Agreement with the U.S. Trustee and: (a) provide such Cash Management Banks with the Debtors' employer identification number and lead case number for these chapter 11 cases; and (b) identify each of their bank accounts as being held by a debtor in possession and provide the corresponding bankruptcy case number.

9.      To the extent any of the Debtor Bank Accounts are not in compliance with section 345(b) of the Bankruptcy Code or any of the U.S. Trustee's requirements or guidelines, the Debtors shall have until a date that is 30 days from the entry of this Interim Order, without prejudice to seek an additional extension, to come into compliance with section 345(b) of the

Bankruptcy Code and any of the U.S. Trustee's requirements or guidelines; *provided* that nothing herein shall prevent the Debtors or the U. S. Trustee from seeking further relief from the Court to the extent that an agreement cannot be reached.

10.     The Debtors shall serve a copy of this Interim Order on the Cash Management Banks and as soon as possible after entry of this Interim Order, and upon any bank at which the Debtors open a new bank account immediately upon the opening of the new account.

11.     All banks provided with notice of this Interim Order maintaining any of the Bank Accounts shall not honor or pay any bank payments drawn on the listed Bank Accounts or otherwise issued before the Petition Date for which the Debtors specifically issue stop payment orders in accordance with the documents governing such Bank Accounts.

12.     Except as otherwise set forth herein, the Debtors and the Cash Management Banks may, without further order of this Court, agree and implement changes to the policies and procedures related to the Cash Management System in the ordinary course of business.

13.     In the course of providing cash management services to the Debtors, each of the Cash Management Banks is authorized, without further order of this Court and consistent with prepetition practices, to deduct the applicable fees (whether arising prior to or after the Petition Date) from the appropriate accounts of the Debtors, and further, to charge back to the appropriate accounts of the Debtors any amounts resulting from returned checks or other returned items, including returned items that result from ACH transactions, wire transfers, or other electronic transfers of any kind, regardless of whether such items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers.  Any such fees arising after the Petition Date that are charged by the Cash

Management Banks consistent with established practice are entitled to administrative expense priority status pursuant to section 503(b) of the Bankruptcy Code.

14.     Notwithstanding any other provision of this Interim Order, any Cash Management Bank may rely upon the representations of the Debtors, without a duty of inquiry, with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtors prior to, on, or after the Petition Date should be honored pursuant to any order of this Court, and no bank that honors a prepetition or postpetition check or other item drawn on any account that is the subject of this Interim Order (a) at the direction of the Debtors, (b) in a good-faith belief that this Court has authorized such prepetition check or item to be honored, or (c) as a result of a mistake made despite implementation of reasonably customary handling procedures, shall be deemed to be nor shall be liable to the Debtors or their estates or any other person or entity on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Interim Order.

15.     Any banks, including the Cash Management Banks, are further authorized to honor the Debtors' directions with respect to the opening and closing of any Bank Account and accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions; *provided* that the Cash Management Banks shall not have any liability to any party for relying on such representations to the extent such reliance otherwise complies with applicable law.

16.     Any requirement to establish separate accounts for cash collateral and/or tax payments is hereby waived.

17.     The Debtors are authorized, but not directed, to continue engaging in Intercompany Transactions in connection with the Cash Management Systems, in the ordinary course of business, consistent with past practice.  The Debtors shall maintain accurate and detailed

records of all Intercompany Transactions and the payment of Intercompany Claims so that all transactions, including Intercompany Transactions and the payment of Intercompany Claims, may be readily traced, ascertained, and recorded properly on applicable intercompany accounts (if any) and distinguished between prepetition and postpetition transactions for the purposes of determining administrative expense status.  All postpetition payments under any postpetition Intercompany Transactions authorized hereunder that result in an Intercompany Claim are hereby accorded administrative expense status under section 503(b) of the Bankruptcy Code.

18.    The Debtors are authorized, but not directed, to continue the use of P-Cards pursuant to the P-Card Program in the ordinary course of business and consistent with prepetition practices, including by paying prepetition and postpetition obligations outstanding with respect thereto, subject to the limitations of this Interim Order and any other applicable interim and/or final orders of this Court.  Any Cash Management Bank may rely on the representations of the Debtors with respect to its use of the P-Cards under the P-Card Program, and such Cash Management Bank shall not have any liability to any party for relying on such representations by a Debtor as provided for herein.

19.    Any existing agreements between or among the Debtors and any bank in respect of the P-Card Program shall continue to govern the postpetition relationship between the Debtors and such bank, and all of the provisions of such agreements, including, without limitation, the termination and fee provisions, rights, benefits, offset rights and remedies afforded under such agreements, shall remain in full force and effect unless otherwise ordered by the Court, and the Debtors and such bank may, without further order of this Court, agree to and implement changes related to the P-Card Programs in the ordinary course of business, consistent with past practice and pursuant to the terms of those existing agreements.  Without limiting the generality of the

foregoing:  (a) the aggregate credit limit under the P-Card Program with U.S Bank is $230,000 inclusive of both prepetition and postpetition obligations; (b) the Debtors are authorized to continue to maintain the Credit Card Collateral Account for purposes of cash collateralizing all prepetition and postpetition obligations under P-Card Program, and all cash from time to time on deposit in such account shall remain subject to an exclusive first-priority lien in favor of the Prepetition ABL Agent as security for such obligations; (c) all prepetition and postpetition charges, fees, and interest under the P-Card Program are hereby authorized and required to be paid by the Debtors to U.S. Bank as they become due, and (d) in the event the Debtors fail to make any timely payment to U.S. Bank in respect of the obligations under the P-Card Program, U.S. Bank is authorized, in its discretion, to debit the Credit Card Collateral Account for the amount of any unpaid obligations, without further order of this Court.  To the extent necessary, U.S. Bank is hereby granted relief from the stay imposed under section 362 of the Bankruptcy Code for purposes of this paragraph.

20.    Nothing contained in the Motion or this Interim Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date or (b) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Petition Date.

21.    Nothing contained in the Motion or this Interim Order shall permit the Cash Management Banks to terminate any cash management services without 30 days' prior written notice (or such other period as may be specified in any agreement between the Debtors and such Cash Management Bank, which period shall control and govern termination of such cash management services notwithstanding anything herein to the contrary) to the Debtors.

22.     Notwithstanding the Debtors' use of a consolidated cash management system, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor, regardless of which entity makes those disbursements.

23.     The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein and to the extent authorized by this Interim Order.

24.     Nothing in this Interim Order authorizes the Debtors to accelerate any payments not otherwise due prior to the date of the Final Hearing.

25.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

26.     Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief (including any payment made in accordance with this Interim Order), nothing in this Interim Order is intended as or shall be construed or deemed to be:  (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding

that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Interim Order or the Motion or any order granting the relief requested by the Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of any claims, causes of action, or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law; (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.  Any payment made pursuant to this Interim Order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

27.    The contents of this Motion satisfy the contents of Bankruptcy Rule 6003.

28.    Notwithstanding anything to the contrary in this Interim Order, any payment to be made, obligation incurred or authorization contained herein shall be subject to and in compliance with the "Approved Budget" as defined in the orders of the Court approving the consensual use of cash collateral in these chapter 11 cases (including with respect to timing of payments thereunder).

29.    Notice of the Motion as provided therein shall be deemed good and sufficient notice of the Motion, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

30.    Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

31.    The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

32.    This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

**Dated: August 7th, 2025**
**Wilmington, Delaware**

**BRENDAN L. SHANNON**
**UNITED STATES BANKRUPTCY JUDGE**