## Exhibit B

**Agreements**

### Fluid Fleet Services, LLC

Vehicle Management Agreement

This Vehicle Management Agreement ("Agreement") dated as of the [Insert Date] (the "Effective Date"), by and between [Insert Company Name], a [Insert State] [Insert Entity Type] located at [Insert Address] ("Owner"), and Fluid Fleet Services, LLC, a Colorado limited liability company located at 1441 W. 46th Ave., Denver, Colorado 80211 ("Manager").

A.  Owner owns and desires to rent, and has the right to collect rental fees from and manage, certain vehicles, as specified on Exhibit A, attached hereto, and desires to engage Manager to manage and maintain the same to the extent hereinafter specified.

B.  NOW THEREFORE, in consideration of the vehicles, the parties agree as follows:

1.  <u>Vehicles.</u>  This Agreement relates to the vehicles listed on Exhibit A, attached hereto, ("Vehicles"), which may be modified upon mutual agreement of the parties from time to time.

2.  <u>Commencement Date</u>. Manager's duties and responsibilities under this Agreement as of the Effective Date and shall continue for a period of one (1) year ("Term").  Thereafter, this Agreement shall automatically renew for additional one (1) year terms (each a "Renewal Term") unless terminated by either party by providing the other party with written notice of its intent to terminate the Agreement at least thirty (30) days prior to the expiration of the then current term.  In the event that all Vehicles listed on Exhibit A are sold, this Agreement shall automatically terminate.

3.  <u>Manager Termination</u>.  In the event that Owner violates the terms under this Agreement, Manager reserves the right to terminate this Agreement immediately upon written notice to Owner.

4.  <u>Manager's Responsibilities</u>.

A.  **Management**:  To the extent herein provided and subject to the terms and conditions herein set forth, Manager shall manage and maintain the Vehicles and manage the Owner's Fluid Market Account under which the Vehicles are listed for rent. Manager is responsible for setting all pricing related to the Vehicle(s).  During the Term, Owner waives its right to cancel trips or decline reservations using the Fluid application.  Owners that wish to use a Vehicle must communicate the dates with Manager so that Manager can ensure the Vehicle(s) are blocked on the Fluid application calendar.  Manager shall have all communication with the renters and Owner agrees not to reach out to any renters directly.

B.  **Compliance with Laws**:  Manager shall be responsible for the management, operation and maintenance of the Vehicles in compliance with all federal, state and local laws.  Manager shall promptly remedy any violation of any such law which comes to its attention to the extent that such remedy is within the control of the Manager; provided, however, that Manager's responsibilities shall be limited to funds made available by owner to cause such compliance.  In addition, Owner shall sign a State of Colorado Power of Attorney for Motor Vehicle Only form (DR 2175) so that Manager is able to perform its obligations under this Agreement.

C.  **Approved Maintenance, Repairs and Budgets**:  Manager shall prepare and submit to Owner a proposed budget for the promotion, operation, repair and maintenance of the Vehicles on an annual basis ("Approved Operating Budget"), or in the case of unforeseen repairs, on an as-needed basis.  Manager agrees to use diligence and to employ all reasonable efforts to ensure that the actual costs of maintaining and managing the Vehicles shall not exceed the Approved Operating Budget.  Manager shall secure Owner's prior approval for any expenditures over five percent (5%) of the actual cash value of the vehicle.  If the expenditure is less than the five percent (5%), no approval is necessary.  During the Term, Manager agrees to inform Owner of any major increases in costs and expenses that were not foreseen during the budget preparation period and thus were not reflected in the Approved Operating Budget" and shall submit to Owner for approval a revised budget based upon said unforeseen costs and expenses.

D.  **Collection of Rental Fees and Other Income**:  All rental fees will be collected by Fluid Market, Inc. ("Fluid") and remitted to Owner less offset for any fees submitted by Manager for the maintenance and repair of the Vehicles. This shall include any late fees, extended reservation fees, and other fees collected by Fluid from the rental of the Vehicles. All monies collected from Fluid resulting from the rental of the Vehicles shall be paid to Owner in arrears on or about the 15th of each calendar month that follows when the Vehicles were rented.  All monies so collected shall be paid by check or electronic transfer as directed by Owner, less the deduction of any Manager fees, as specified in Exhibit B, attached hereto, approved costs or other costs related to the Vehicles.  In the event that there are no rentals of the Vehicle(s) in a calendar month, Manager reserves the right to charge a management fee in the amount specified in Exhibit B.  Owner is responsible for providing Manager with a credit

**EXHIBIT B**
**Page 1 of 37**

card number that Manager can use to collect fees and costs associated with the Vehicle(s).

**E. Financial Reporting and Accounting:** All financial reporting, recordkeeping and accounting with respect to the Vehicle(s) shall be the responsibility of the Manager and shall be adequately maintained. Owner may examine or cause to be examined the books and record related to the Vehicle(s) or perform any and all audit tests relating to Manager's activities; provided Owner gives Manager at least fourteen (14) days prior written notice of such examination.

**F. Repairs:** Manager shall attend to the making and supervision of all ordinary and extraordinary repairs to the Vehicle(s); however, no single expenditure which is not included in the Approved Operating Budget shall exceed ($2,000.00) without the prior written approval of the Owner. All actual expenses for such repairs shall be offset from amounts payable to Owner from collected Vehicle rental fees. In cases of emergencies, Manager may make expenditures for repairs which exceed the aforementioned amount without prior written approval if Manger deems such expenditure to be necessary to prevent damage or injury. Manager will inform Owner of any such emergency expenditure before the end of the next business day. Manager has the right to select any company or contractor to perform repairs to the Vehicle(s). In the event that the cost of repairs exceeds amounts payable from Manager to Owner, Owner shall pay Manager for such repairs in advance.

**G. Taxes:** Manager shall, if such amounts are included in the Approved Operating Budget, pay taxes due to a government agency as a result of the renting of the Vehicles. Any such taxes that are paid will be offset from amounts due to Owner from Manager. Each party shall be responsible for their own local, state and federal taxes arising from this Agreement.

5. <u>Insurance</u>. In the event that Owner or the Vehicle requires additional insurance coverage, Owner will obtain and keep in full force adequate insurance to comply with all state and federal laws related to motor vehicles.

6. <u>Sale of Vehicle(s)</u>. If Owner sells a Vehicle listed on Exhibit A, Manager shall cooperate with the selling dealer/ third party buyer. Owner agrees to provide Manager immediate notice of any such intent to sell or actual sale of any Vehicle. If Owner elects to have the Manager sell the vehicle the Owner will be charged a $500 management fee outside of any other sale, transaction, auction, other fees related to the sale of the vehicle.

7. <u>Indemnity</u>. Both parties agree to indemnify and hold harmless the other party and its employees, parents, subsidiaries, affiliates, board of directors, agents, representatives, etc., harmless from and against any liabilities, legal fees, damages, losses, costs and other expenses in relation to any claims or actions brought against Fluid or Manager arising out of any breach of this Agreement.

8. <u>Limitations on Liability</u>. Under no circumstances will either party be liable to the other for lost profits or for any indirect, incidental, consequential, special, punitive, or exemplary damages arising from the subject matter of this Agreement, regardless of the type of claim even if that party has been advised of the possibility of such damages, such as, but not limited to, loss of revenue, lost data, or anticipated profits or lost business. Manager shall be liable to Owner for all losses, damages, fines, penalties, costs and expenses (excluding attorneys' fees), sustained or incurred by Owner by reason of or arising out of Manager's breach of the duties and obligations of this Agreement. In no event shall Manager's liability exceed the amounts paid to Manager under this Agreement.

9. <u>Notices</u>. All notices, demands, consents and reports provided for in this Agreement which are required to be in writing shall be given to the parties at the addresses set forth in page 1 of this Agreement, unless otherwise provided by either party.

10. <u>Amendments</u>. Except as otherwise herein provided, any and all amendments to this Agreement shall be null and void unless approved by the parties in writing.

11. <u>Interpretation</u>. The headings, subheadings, and other captions in this Agreement are for convenience and reference only and will not be used in interpreting, construing, or enforcing any of the provisions of this Agreement. Each party acknowledges that it has had the opportunity to review this Agreement with legal counsel of its choice, and there will be no presumption that ambiguities will be construed or interpreted against the drafter, and no presumptions made or inferences drawn because of the inclusion of a term not contained in a prior draft or the deletion of a term contained in a prior draft

12. <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of Colorado without reference to its choice of law provisions. Both parties hereby submit to the exclusive jurisdiction of the State of Colorado.

**EXHIBIT B**
**Page 2 of 37**

13.    <u>Relationship of the Parties.</u>  Unless specifically provided for herein, Manager shall not be considered an agent or franchisee of Owner and Owner and Manager.

14.    <u>Waiver.</u>  No waiver of any breach of any provision of this Agreement shall constitute a waiver of any prior, concurrent or subsequent breach of the same or any other provisions hereof, and no waiver shall be effective unless made in writing and signed by an authorized representative of the waiving party.

15.    <u>Severability.</u>  In the event any provision of this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, the remaining provisions shall remain in full force and effect.  If any provision of this Agreement shall, for any reason, be determined by a court of competent jurisdiction to be excessively broad or unreasonable as to scope or subject, such provision shall be enforced to the extent necessary to be reasonable under the circumstances and consistent with applicable law while reflecting as closely as possible the intent of the parties as expressed herein.

In witness thereof, the respective parties have agreed upon and executed this Agreement as of the Effective Date.

**Read and agreed on behalf of:**

Always Funday LLC

[Insert Company Name] ("Owner")

By:  Clark Lodge          Clark L   10/19/29

Name:  Clark Lodge
                    (print)

Title:  Owner

Date:  10/29/19

Address:  3330 E. 7th Ave PKwy Denver CO 80206

Email Address:  clarklodge78@gmail.com

*Authorized to Receive Legal Notices*

**Fluid Fleet Services LLC ("Manager")**

By:

Name:
                    (print)

Title:

Date:

**EXHIBIT B**
**Page 3 of 37**

## Exhibit A:  Vehicle(s) List

1.

# [COMPANY LETTERHEAD]

## Letter of Authorization

October 29, 2019

To Whom It May Concern:

Fluid Fleet Services LLC and its representatives including:

James Eberhard
Luis Lopez
Elizabeth Martinez
Jenifer Snyder
Michael Gumina
Lonny Landry
Miles Tanner

Is hereby authorized to drive, run, use and act on the behalf of [Insert Company Name].  This authorization includes the right to drive, use, act, remove, sell and control the vehicles with the following VIN:

Please feel free to contact our office should you have any questions or concerns.

Kind regards,

Clark Lodge
Owner
Always Funday LLC
October 29, 2019

### Exhibit B:   Management Fee

As compensation for its performance of the obligations set forth in the Agreement, Manager shall be entitled to the following compensation:

1.  Manager shall collect a fee in the amount of 15% of the total gross rental fees generated from each Vehicle. Fees shall be remitted directly to Manger from Fluid.   Manager shall have the right to offset any amounts due under this Agreement from amounts payable to Owner from Fluid.
2.  In the event that Owner desires to obtain full coverage on each Vehicle, in excess of Fluid's platform coverage, Owner shall pay Fluid $49.00 per month, or such other rate as provided by Fluid, for each Vehicle covered.   All fees will be offset from Owner monthly payments.   Additionally, any elections or deletions of coverage must be sent to Fluid in writing and will take effect when processed by Fluid.

**Fluid Fleet Services, LLC**

Vehicle Management Agreement

This Vehicle Management Agreement ("Agreement") dated as of the 6/24/2019 (the "Effective Date"), by and between Broken Mirror LLC, a Colorado LLC located at 5392 E Brittany Pl, Centennial CO 80121 ("Owner"), and Fluid Fleet Services, LLC, a Colorado limited liability company located at 3001 Brighton Blvd #705, Denver, CO 80216 ("Manager").

    A.  Owner owns and desires to rent, and has the right to collect rental fees from and manage, certain vehicles, as specified on Exhibit A, attached hereto, and desires to engage Manager to manage and maintain the same to the extent hereinafter specified.

    B.  NOW THEREFORE, in consideration of the vehicles, the parties agree as follows:

1.  <u>Vehicles.</u>  This Agreement relates to the vehicles listed on Exhibit A, attached hereto, ("Vehicles"), which may be modified upon mutual agreement of the parties from time to time.

2.  <u>Commencement Date</u>. Manager's duties and responsibilities under this Agreement as of the Effective Date and shall continue for a period of one (1) year ("Term").   Thereafter, this Agreement shall automatically renew for additional one (1) year terms (each a "Renewal Term") unless terminated by either party by providing the other party with written notice of its intent to terminate the Agreement at least thirty (30) days prior to the expiration of the then current term.    In the event that all Vehicles listed on Exhibit A are sold, this Agreement shall automatically terminate.

3.  <u>Manager Termination</u>.   In the event that Owner violates the terms under this Agreement, Manager reserves the right to terminate this Agreement immediately upon written notice to Owner.

4.  <u>Manager's Responsibilities</u>.

    A.  **Management**:   To the extent herein provided and subject to the terms and conditions herein set forth, Manager shall manage and maintain the Vehicles and manage the Owner's Fluid Market Account under which the Vehicles are listed for rent. Manager is responsible for setting all pricing related to the Vehicle(s).   During the Term, Owner waives its right to cancel trips or decline reservations using the Fluid application.   Owners that wish to use a Vehicle must communicate the dates with Manager so that Manager can ensure the Vehicle(s) are blocked on the Fluid application calendar.   Manager shall have all communication with the renters and Owner agrees not to reach out to any renters directly.

    B.  **Compliance with Laws**:   Manager shall be responsible for the management, operation and maintenance of the Vehicles in compliance with all federal, state and local laws.   Manager shall promptly remedy any violation of any such law which comes to its attention to the extent that such remedy is within the control of the Manager; provided, however, that Manager's responsibilities shall be limited to funds made available by owner to cause such compliance.   In addition, Owner shall sign a State of Colorado Power of Attorney for Motor Vehicle Only form (DR 2175) so that Manager is able to perform its obligations under this Agreement.

    C.  **Approved Maintenance, Repairs and Budgets**:   Manager shall prepare and submit to Owner a proposed budget for the promotion, operation, repair and maintenance of the Vehicles on an annual basis ("Approved Operating Budget"), or in the case of unforeseen repairs, on an as-needed basis.   Manager agrees to use diligence and to employ all reasonable efforts to ensure that the actual costs of maintaining and managing the Vehicles shall not exceed the Approved Operating Budget.   Manager shall secure Owner's prior approval for any expenditures over five percent (5%) of the actual cash value of the vehicle.   If the expenditure is less than the five percent (5%), no approval is necessary.   During the Term, Manager agrees to inform Owner of any major increases in costs and expenses that were not foreseen during the budget preparation period and thus were not reflected in the Approved Operating Budget" and shall submit to Owner for approval a revised budget based upon said unforeseen costs and expenses.

    D.  **Collection of Rental Fees and Other Income**:   All rental fees will be collected by Fluid Market, Inc. ("Fluid") and remitted to Owner less offset for any fees submitted by Manager for the maintenance and repair of the Vehicles.   This shall include any late fees, extended reservation fees, and other fees collected by Fluid from the rental of the Vehicles.   All monies collected resulting from the rental of the Vehicles shall be paid to Owner in arrears on or about the 15th of each calendar month that follows when the Vehicle was rented. Monies

EXHIBIT B
Page 7 of 37

monies so collected shall be paid by check or electronic transfer as directed by Owner, less the deduction of any Manager fees, as specified in Exhibit B, attached hereto, approved costs or other costs related to the Vehicles. In the event that there are no rentals of the Vehicle(s) in a calendar month, Manager reserves the right to charge a management fee in the amount specified in Exhibit B.   Owner is responsible for providing Manager with a credit card number that Manager can use to collect fees and costs associated with the Vehicle(s).

E.   **Financial Reporting and Accounting:**   All financial reporting, recordkeeping and accounting with respect to the Vehicle(s) shall be the responsibility of the Manager and shall be adequately maintained.   Owner may examine or cause to be examined the books and record related to the Vehicle(s) or perform any and all audit tests relating to Manager's activities; provided Owner gives Manager at least fourteen (14) days prior written notice of such examination.

F.   **Repairs:**   Manager shall attend to the making and supervision of all ordinary and extraordinary repairs to the Vehicle(s); however, no single expenditure which is not included in the Approved Operating Budget shall exceed ($2,000.00) without the prior written approval of the Owner.   All actual expenses for such repairs shall be offset from amounts payable to Owner from collected Vehicle rental fees.   In cases of emergencies, Manager may make expenditures for repairs which exceed the aforementioned amount without prior written approval if Manger deems such expenditure to be necessary to prevent damage or injury.   Manager will inform Owner of any such emergency expenditure before the end of the next business day.   Manager has the right to select any company or contractor to perform repairs to the Vehicle(s).   In the event that the cost of repairs exceeds amounts payable from Manager to Owner, Owner shall pay Manager for such repairs in advance.

G.   **Taxes:**   Manager shall, if such amounts are included in the Approved Operating Budget, pay taxes due to a government agency as a result of the renting of the Vehicles.   Any such taxes that are paid will be offset from amounts due to Owner from Manager.   Each party shall be responsible for their own local, state and federal taxes arising from this Agreement.

5.   Insurance.   In the event that Owner or the Vehicle requires additional insurance coverage, Owner will obtain and keep in full force adequate insurance to comply with all state and federal laws related to motor vehicles.

6.   Sale of Vehicle(s).   If Owner sells a Vehicle listed on Exhibit A, Manager shall cooperate with the selling dealer/third party buyer.   Owner agrees to provide Manager immediate notice of any such intent to sell or actual sale of any Vehicle.   If Owner elects to have the Manager sell the vehicle the Owner will be charged a $500 management fee outside of any other sale, transaction, auction, other fees related to the sale of the vehicle.

7.   Indemnity.   Both parties agree to indemnify and hold harmless the other party and its employees, parents, subsidiaries, affiliates, board of directors, agents, representatives, etc., harmless from and against any liabilities, legal fees, damages, losses, costs and other expenses in relation to any claims or actions brought against Fluid or Manager arising out of any breach of this Agreement.

8.   Limitations on Liability.   Under no circumstances will either party be liable to the other for lost profits or for any indirect, incidental, consequential, special, punitive, or exemplary damages arising from the subject matter of this Agreement, regardless of the type of claim even if that party has been advised of the possibility of such damages, such as, but not limited to, loss of revenue, lost data, or anticipated profits or lost business.   Manager shall be liable to Owner for all losses, damages, fines, penalties, costs and expenses (excluding attorneys' fees), sustained or incurred by Owner by reason of or arising out of Manager's breach of the duties and obligations of this Agreement. In no event shall Manager's liability exceed the amounts paid to Manager under this Agreement.

9.   Notices.   All notices, demands, consents and reports provided for in this Agreement which are required to be in writing shall be given to the parties at the addresses set forth in page 1 of this Agreement, unless otherwise provided by either party.

10.   Amendments.   Except as otherwise herein provided, any and all amendments to this Agreement shall be null and void unless approved by the parties in writing.

11.   Interpretation.   The headings, subheadings, and other captions in this Agreement are for convenience and reference only and will not be used in interpreting, construing, or enforcing any of the provisions of this Agreement. Each party acknowledges that it has had the opportunity to review this Agreement with legal counsel of its choice, and there will be no presumption that ambiguities will be construed or interpreted against the drafter, and no presumptions made or

inferences drawn because of the inclusion of a term not contained in a prior draft or the deletion of a term contained in a prior draft

12. <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of Colorado without reference to its choice of law provisions.   Both parties hereby submit to the exclusive jurisdiction of the State of Colorado.

13. <u>Relationship of the Parties.</u>   Unless specifically provided for herein, Manager shall not be considered an agent or franchisee of Owner and Owner and Manager.

14. <u>Waiver.</u>   No waiver of any breach of any provision of this Agreement shall constitute a waiver of any prior, concurrent or subsequent breach of the same or any other provisions hereof, and no waiver shall be effective unless made in writing and signed by an authorized representative of the waiving party.

15. <u>Severability</u>.   In the event any provision of this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, the remaining provisions shall remain in full force and effect.  If any provision of this Agreement shall, for any reason, be determined by a court of competent jurisdiction to be excessively broad or unreasonable as to scope or subject, such provision shall be enforced to the extent necessary to be reasonable under the circumstances and consistent with applicable law while reflecting as closely as possible the intent of the parties as expressed herein.

In witness thereof, the respective parties have agreed upon and executed this Agreement as of the Effective Date.

**Read and agreed on behalf of:**

**Broken Mirror LLC ("Owner")**

By: _____

Name: _____TJ NEIL_____
            (print)

Title: _____MANAGER_____

Date: _____6/25/19_____

Address: _____5392 E BRITTANY PL, Centennial CO 80121___

Email Address: _____TJ.NEIL3@GMAIL.COM_____
            *Authorized to Receive Legal Notices*

**Fluid Fleet Services LLC ("Manager")**

By: _____

Name: _____
            (print)

Title: _____

Date: _____

## Exhibit B:   Management Fee

As compensation for its performance of the obligations set forth in the Agreement, Manager shall be entitled to the following compensation:

1.  Manager shall collect a fee in the amount of 20% of the total gross rental fees generated from each Vehicle. Fees shall be remitted directly to Manger from Fluid.   Manager shall have the right to offset any amounts due under this Agreement from amounts payable to Owner from Fluid.

2.  In the event that Owner desires to obtain full coverage on each Vehicle, in excess of Fluid's platform coverage, Owner shall pay Fluid $25,00 per month for each Vehicle covered.   All fees will be offset from Owner monthly payments.   Additionally, any elections or deletions of coverage must be sent to Fluid in writing and will take effect when processed by Fluid.

# Broken Mirror LLC

### Letter of Authorization

6/21/2019

To Whom It May Concern:

Fluid Fleet Services LLC and its representatives including:

James Eberhard
Luis Lopez
Elizabeth Martinez
Jenifer Snyder
Michael Gumina

Is hereby authorized to drive, run, use and act on the behalf of Broken Mirror LLC.  This authorization includes the right to drive, use, act, remove, sell and control the vehicles with the following VIN:

Please feel free to contact our office should you have any questions or concerns.

Kind regards,

TJ Neil
Owner
Broken Mirror LLC
303-912-5266

**Fluid Fleet Services, LLC**

Vehicle Management Agreement

This Vehicle Management Agreement ("Agreement") dated as of the effective date set forth herein (the "Effective Date"), by and between the company listed below ("Owner"), and Fluid Fleet Services, LLC, a Colorado limited liability company located at 1441 W. 46th Ave., Unit 2, Denver, CO 80211 ("Manager").

1.  <u>Vehicles.</u>  This Agreement relates to the vehicles listed either in the Fluid Market Inc.("Fluid") platform or listed on Exhibit A, attached hereto, (collectively the "Vehicles"), which may be modified upon mutual agreement of the parties from time to time.

2.  <u>Commencement Date</u>. Manager's duties and responsibilities under this Agreement as of the Effective Date and shall continue for a period of one (1) year ("Term").  Thereafter, this Agreement shall automatically renew for additional one (1) year terms (each a "Renewal Term") unless terminated by either party by providing the other party with written notice of its intent to terminate the Agreement at least thirty (30) days prior to the expiration of the then current term.   In the event that all Vehicles listed on Exhibit A are sold, this Agreement shall automatically terminate.

3.  <u>Manager Termination</u>.  In the event that Owner violates the terms under this Agreement, Manager reserves the right to terminate this Agreement immediately upon written notice to Owner.

4.  <u>Early Termination Fee</u>.  In the event that Owner purchased any Vehicle using Fluid's dealer incentive program and elects to sell or remove its vehicle from the Fluid platform before the expiration of the first year of the initial two (2) year term, Owner shall pay Manager an early termination fee in the amount of $400.00 per month for the remainder of the first year of the initial Term after the date of such sale or removal.  This fee is not meant to be punitive, rather it is the repayment of the incentive discounts that Owner received at the time of purchasing the Vehicles.

5.  <u>Exclusive Use</u>:  During the Term, including any Renewal Term(s), Owner agrees that Vehicles will be used exclusively through Manager's platform.

6.  <u>Manager's Responsibilities</u>.

    **A.  Management**:  To the extent herein provided and subject to the terms and conditions herein set forth, Manager shall manage and maintain the Vehicles and manage the Owner's Fluid Market Account under which the Vehicles are listed for rent. Manager is responsible for setting all pricing related to the Vehicle(s).  During the Term, Owner waives its right to cancel trips or decline reservations using the Fluid application.  Owners that wish to use a Vehicle must communicate the dates with Manager so that Manager can ensure the Vehicle(s) are blocked on the Fluid application calendar.  Manager shall have all communication with the renters and Owner agrees not to reach out to any renters directly.

    **B.  Compliance with Laws**:  Manager shall be responsible for the management and maintenance of the Vehicles in compliance with all federal, state and local laws.  Manager shall promptly remedy any violation of any such law which comes to its attention to the extent that such remedy is within the control of the Manager; provided, however, that Manager's responsibilities shall be limited to funds made available by owner to cause such compliance.

    **C.  Approved Maintenance, Repairs and Budgets**:  Owner agrees to reimburse Manager for all maintenance expenses.  Manager shall secure Owner's prior approval for any expenditures over five percent (5%) of the actual cash value of the vehicle.  During the Term, Manager agrees to inform Owner of any major increases in costs and expenses and shall provide Owner with regular statements detailing such expenses.

    **D.  Collection of Rental Fees and Other Income**:  All rental fees will be collected by Fluid and remitted to Owner less any offsets for any fees submitted by Manager for the maintenance and repair of the Vehicles.  This shall include any late fees, extended reservation fees, and other fees collected by Fluid from the rental of the Vehicles.  All monies collected from Fluid resulting from the rental of the Vehicles shall be paid to Owner in accordance with Fluid's then current accounting practices.  All monies so collected shall be paid by electronic transfer as directed by Owner, less the deduction of any Manager fees, as specified in Exhibit B, attached hereto, approved costs or other costs related to the Vehicles.  In the event that there are no rentals of the Vehicle(s) in a calendar month, Manager reserves the right to charge a management fee in the amount specified in Exhibit B.  Owner is

**EXHIBIT B**
**Page 12 of 37**

responsible for providing Manager with a credit card number that Manager can use to collect fees and costs associated with the Vehicle(s).

**E.  Financial Reporting and Accounting:**  All financial reporting, recordkeeping and accounting with respect to the Vehicle(s) shall be the responsibility of the Manager and shall be adequately maintained.  Owner may examine or cause to be examined the books and record related to the Vehicle(s) upon ten (10) days prior written notice.

**F.  Repairs:**  Manager shall attend to the making and supervision of all ordinary and extraordinary repairs to the Vehicle(s); however, no single expenditure shall exceed ($2,000.00) without the prior approval of the Owner.  All actual expenses for such repairs shall be offset from amounts payable to Owner from collected Vehicle rental fees.  In cases of emergencies, Manager may make expenditures for repairs which exceed the aforementioned amount without prior approval if Manger deems such expenditure to be necessary for safety reasons.  Manager will inform Owner of any such emergency expenditure as quickly as possible.   Manager has the right to select any company or contractor to perform repairs to the Vehicle(s).

**G.  Taxes:**  Manager or Fluid may pay taxes due as a result of the renting of the Vehicles.  Any such taxes that are paid will be offset from amounts due to Owner from Manager.  Each party shall be responsible for their own local, state and federal income taxes arising from this Agreement.

**H.  Lienholders:**  In the event that a Vehicle is encumbered by a loan or other similar encumbrance ("Loan"), Owner hereby authorizes Manager to communicate with such lienholder or lender ("Lienholder") to ensure that vehicle encumbrances are paid timely in order to prevent a repossession or issue with such Vehicle.  This Agreement shall be deemed as appropriate authorization to facilitate this Paragraph H and may be presented to any Lienholder related to a Vehicle.  During the Term, Manager, at its election and in its sole discretion, is permitted to make any Loan payments related to Vehicles and may offset payments due to Owner from Rental Fees in order to facilitate payment for a Loan or payment to a specific Lienholder.  Manager shall report any such payments to Owner for each Vehicle on a monthly basis and communicate with Owner prior to invoking the rights granted under this paragraph H.

7.    <u>Insurance</u>.  In the event that Owner or the Vehicle requires additional insurance coverage, Owner will obtain and keep in full force adequate insurance to comply with all state and federal laws related to motor vehicles.

8.    <u>Sale of Vehicle(s)</u>.  Owner is prohibited from selling any Vehicle listed on Exhibit A, or purchased through a Fluid Market, Inc. inventive program for the first twelve (12) months of this Agreement.  Thereafter (or if requested by Manager during the first twelve (12) months) if Owner sells a Vehicle listed on Exhibit A, Manager shall cooperate with the selling dealer/third party buyer.  Owner agrees to provide Manager immediate notice of any such intent to sell or actual sale of any Vehicle.  If Owner elects to have the Manager sell the vehicle (or if a vehicle is totaled for insurance purposes), the Owner will be charged a disposition fee in the amount of $500.00 ("Disposition Fee") plus an additional amount in the form of a disposition incentive fee as is set forth below ("Disposition Incentive Fee").  The Disposition Fee and Disposition Incentive Fee are in addition to and outside of any other sale, transaction, auction, other fees related to the sale of the vehicle.
   a.    If the vehicle is sold during months 1-24 after onboarding to the Fluid platform, Owner shall pay Manager a disposition incentive fee in the amount of 20% of the sale price that is in excess of $22,000.00.
   b.    If the vehicle is sold during months 25-47 after onboarding to the Fluid platform, Owner shall pay Manager a disposition incentive fee in the amount of 20% of the sale price that is excess of $17,000.00.
   c.    If the vehicle is sold during month 48 or beyond after onboarding to the Fluid platform, Owner shall pay Manager a disposition incentive fee in the amount of 20% of the sale price that is excess of $12,000.00.

9.    <u>Indemnity</u>.  Both parties agree to indemnify and hold harmless the other party and its employees, parents, subsidiaries, affiliates, board of directors, agents, representatives, etc., harmless from and against any liabilities, legal fees, damages, losses, costs and other expenses in relation to any claims or actions brought against Fluid or Manager arising out of any breach of this Agreement.

10.   <u>Limitations on Liability</u>.  Under no circumstances will either party be liable to the other for lost profits or for any indirect, incidental, consequential, special, punitive, or exemplary damages arising from the subject matter of this Agreement, regardless of the type of claim even if that party has been advised of the possibility of such damages, such as, but not limited to, loss of revenue, lost data, or anticipated profits or lost business.  Manager shall be liable to Owner for all losses, damages, fines, penalties, costs and expenses (excluding attorneys' fees), sustained or incurred by Owner by reason of or arising out of Manager's breach of the duties and obligations of this Agreement.  In no event shall Manager's liability exceed the amounts paid to Manager under this Agreement.

**EXHIBIT B**
**Page 13 of 37**

11.    <u>Notices</u>.  All notices, demands, consents and reports provided for in this Agreement which are required to be in writing shall be given to the parties at the addresses set forth in page 1 of this Agreement, unless otherwise provided by either party.

12.    <u>Amendments</u>.  Except as otherwise herein provided, any and all amendments to this Agreement shall be null and void unless approved by the parties in writing.  The terms of this Agreement are set forth at www.fluidtruck.com/ffs/fvipterms and may be updated from time to time.  Any changes to the terms that are posted on this site are automatically include and considered accepted modifications to this Agreement upon Owner's continued use of the services hereunder.

13.    <u>Interpretation</u>.  The headings, subheadings, and other captions in this Agreement are for convenience and reference only and will not be used in interpreting, construing, or enforcing any of the provisions of this Agreement. Each party acknowledges that it has had the opportunity to review this Agreement with legal counsel of its choice, and there will be no presumption that ambiguities will be construed or interpreted against the drafter, and no presumptions made or inferences drawn because of the inclusion of a term not contained in a prior draft or the deletion of a term contained in a prior draft

14.    <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of Colorado without reference to its choice of law provisions.  Both parties hereby submit to the exclusive jurisdiction of the State of Colorado.

15.    <u>Relationship of the Parties.</u>  Unless specifically provided for herein, Manager shall not be considered an agent or franchisee of Owner and Owner and Manager.

16.    <u>Waiver.</u>  No waiver of any breach of any provision of this Agreement shall constitute a waiver of any prior, concurrent or subsequent breach of the same or any other provisions hereof, and no waiver shall be effective unless made in writing and signed by an authorized representative of the waiving party.

17.    <u>Severability</u>.  In the event any provision of this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, the remaining provisions shall remain in full force and effect.  If any provision of this Agreement shall, for any reason, be determined by a court of competent jurisdiction to be excessively broad or unreasonable as to scope or subject, such provision shall be enforced to the extent necessary to be reasonable under the circumstances and consistent with applicable law while reflecting as closely as possible the intent of the parties as expressed herein.

In witness thereof, the respective parties have agreed upon and executed this Agreement as of the Effective Date.

**Read and agreed on behalf of:**

Company Name ("Owner"):  Premier Palm Ventures LLC

By:  *Asma Charania*
Asma Charania (Oct 26, 2021 19:29 EDT)

Name: Asma Charania

                                                                      (print)

Title: Owner

Effective Date:  Oct 26, 2021

FEIN/Tax ID:  87-2355255

Address:  2453 Poinciana Dr, Weston, FL 33327

Email Address:  asma.charania@gmail.com
                              *Authorized to Receive Legal Notices*

**Fluid Fleet Services LLC ("Manager")**

By:     /j8mes eberh8rd/
Name:   <u>James Eberhard</u>
               (print)
Title:   <u>President</u>

**Exhibit A:  Vehicle(s) List**

1)  1FTBR1C80MKA56603
2)  1FTBR1C81MKA69229
3)  1FTBR1C88MKA69180
4)  1FTBR1C89MKA69219
5)  1FTBR1C89MKA69575
6)  1FTBR1C8XMKA58875
7)  1FTBR1C8XMKA70265
8)  1FTBR3X82MKA69648
9)  1FTBR3X85MKA82104
10)    1FTBR3X8XMKA69641
11)    3C6LRVDG0ME578790
12)    3C6LRVDG2ME570271
13)    3C6LRVDG3ME570098
14)    3C6LRVDG3ME578833
15)    3C6LRVDG5ME570264
16)    3C6LRVDG7ME570119
17)    3C6LRVDG8ME570100
18)    3C6LRVDG9ME570140
19)    3C6LRVDG9ME578805
20)    3C6LRVDGXME578831

**Exhibit B:  Management Fee**

As compensation for its performance of the obligations set forth in the Agreement, Manager shall be entitled to the following compensation:

1.      Manager shall collect a fee in the amount of 15% of the total gross rental fees generated from each Vehicle.  Fees shall be remitted directly to Manger from Fluid.  Manager shall have the right to offset any amounts due under this Agreement from amounts payable to Owner from Fluid.

2.      Owner also understands that all Vehicles that are Ram Promasters are subject to the FVIP Maintenance Plan whereby Owner shall pay $99 per month, per Vehicle for the following services: (i) extended insurance coverage during non-rental periods; and (ii) most scheduled maintenance (please refer to the FVIP Maintenance Plan Program Document for more information.  The fees for this program will be offset from Owner payouts each month.

# Fleet Services Agreement - Premier Palm Ventures 10.26.2021

Final Audit Report                                                                              2021-10-26

| | |
|---|---|
| Created: | 2021-10-26 |
| By: | Jake Shirek (jake@nmdequitygroup.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAADVaGDs3VCi_FYOWDPhpXqwFuSam8AP5l |

## "Fleet Services Agreement - Premier Palm Ventures 10.26.2021 " History

📄 Document created by Jake Shirek (jake@nmdequitygroup.com)
2021-10-26 - 8:48:17 PM GMT- IP address: 50.196.90.165

📧 Document emailed to Asma Charania (asma.charania@gmail.com) for signature
2021-10-26 - 8:52:46 PM GMT

📄 Email viewed by Asma Charania (asma.charania@gmail.com)
2021-10-26 - 8:54:11 PM GMT- IP address: 66.249.88.20

✍ Document e-signed by Asma Charania (asma.charania@gmail.com)
Signature Date: 2021-10-26 - 11:29:34 PM GMT - Time Source: server- IP address: 73.0.20.244

✅ Agreement completed.
2021-10-26 - 11:29:34 PM GMT

Adobe Sign

## Fluid Fleet Services, LLC

Vehicle Management Agreement

This Vehicle Management Agreement ("Agreement") dated as of the 9/30/19 (the "Effective Date"), by and between No Mondays LLC, a Colorado, LLC located at 417 31st street Hermosa Beach, California ("Owner"), and Fluid Fleet Services, LLC, a Colorado limited liability company located at 3001 Brighton Blvd #705, Denver, CO 80216 ("Manager").

A.   A.      Owner owns and desires to rent, and has the right to collect rental fees from and manage, certain vehicles, as specified on Exhibit A, attached hereto, and desires to engage Manager to manage and maintain the same to the extent hereinafter specified.

A.   B.      NOW THEREFORE, in consideration of the vehicles, the parties agree as follows:

1.   1.   Vehicles.  This Agreement relates to the vehicles listed on Exhibit A, attached hereto, ("Vehicles"), which may be modified upon mutual agreement of the parties from time to time.

1.   2.   Commencement Date. Manager's duties and responsibilities under this Agreement as of the Effective Date and shall continue for a period of one (1) year ("Term"). Thereafter, this Agreement shall automatically renew for additional one (1) year terms (each a "Renewal Term") unless terminated by either party by providing the other party with written notice of its intent to terminate the Agreement at least thirty (30) days prior to the expiration of the then current term.  In the event that all Vehicles listed on Exhibit A are sold, this Agreement shall automatically terminate.

1.   3.   Manager Termination.  In the event that Owner violates the terms under this Agreement, Manager reserves the right to terminate this Agreement immediately upon written notice to Owner.

1.   4.   Manager's Responsibilities.

A.   A.      **Management**:  To the extent herein provided and subject to the terms and conditions herein set forth, Manager shall manage and maintain the Vehicles and manage the Owner's Fluid Market Account under which the Vehicles are listed for rent. Manager is responsible for setting all pricing related to the Vehicle(s). During the Term, Owner waives its right to cancel trips or decline reservations using the Fluid application.  Owners that wish to use a Vehicle must communicate the dates with Manager so that Manager can ensure the Vehicle(s) are blocked on the Fluid application calendar.  Manager shall have all communication with the renters and Owner agrees not to reach out to any renters directly.

A.   B.      **Compliance with Laws**:  Manager shall be responsible for the management, operation and maintenance of the Vehicles in compliance with all federal, state and local laws.  Manager shall promptly remedy any violation of any such law which comes to its attention to the extent that such remedy is within the control of the Manager; provided, however, that Manager's responsibilities shall be limited to funds made available by owner to cause such compliance.  In addition, Owner shall sign a State of Colorado Power of Attorney for Motor Vehicle Only form (DR 2175) so that Manager is able to perform its obligations under this Agreement.

A.   C.      **Approved Maintenance, Repairs and Budgets**:  Manager shall prepare and submit to Owner a proposed budget for the promotion, operation, repair and maintenance of the Vehicles on an annual basis ("Approved Operating Budget"), or in the case of unforeseen repairs, on an as-needed basis.  Manager agrees to use diligence and to employ all reasonable efforts to ensure that the actual costs of maintaining and managing the Vehicles shall not exceed the Approved Operating Budget.  Manager shall secure Owner's prior approval for any expenditures over five percent (5%) of the actual cash value of the vehicle.  If the expenditure is less than the five percent (5%), no approval is necessary.  During the Term, Manager agrees to inform Owner of any major increases in costs and expenses that were not foreseen during the budget preparation period and thus were not reflected in the Approved Operating Budget" and shall submit to Owner for approval a revised budget based upon said unforeseen costs and expenses.

A.   D.      **Collection of Rental Fees and Other Income**:  All rental fees will be collected by Fluid Market, Inc. ("Fluid") and remitted to Owner less offset for any fees submitted by Manager for the maintenance and repair of the Vehicles.  This shall include any late fees, extended reservation fees, and other fees collected by Fluid from the rental of the Vehicles.  All monies collected from Fluid resulting from the rental of the Vehicles shall be paid to Owner in arrears on or about the 15th of each calendar month that follows when the Vehicles were rented.  All monies so collected shall be paid by check or electronic transfer as directed by Owner, less the deduction of any Manager fees, as specified in Exhibit B, attached hereto, approved costs or other costs related to the Vehicles. In the event that there are no rentals of the Vehicle(s) in a calendar month, Manager reserves the right to charge a management fee in the amount specified in Exhibit B.  Owner is responsible for providing Manager with a credit

**EXHIBIT B**
**Page 19 of 37**

card number that Manager can use to collect fees and costs associated with the Vehicle(s).

A.  **E.    Financial Reporting and Accounting:** All financial reporting, recordkeeping and accounting with respect to the Vehicle(s) shall be the responsibility of the Manager and shall be adequately maintained.  Owner may examine or cause to be examined the books and record related to the Vehicle(s) or perform any and all audit tests relating to Manager's activities; provided Owner gives Manager at least fourteen (14) days prior written notice of such examination.

A.  **F.    Repairs:** Manager shall attend to the making and supervision of all ordinary and extraordinary repairs to the Vehicle(s); however, no single expenditure which is not included in the Approved Operating Budget shall exceed ($2,000.00) without the prior written approval of the Owner.  All actual expenses for such repairs shall be offset from amounts payable to Owner from collected Vehicle rental fees.  In cases of emergencies, Manager may make expenditures for repairs which exceed the aforementioned amount without prior written approval if Manger deems such expenditure to be necessary to prevent damage or injury.  Manager will inform Owner of any such emergency expenditure before the end of the next business day.   Manager has the right to select any company or contractor to perform repairs to the Vehicle(s).  In the event that the cost of repairs exceeds amounts payable from Manager to Owner, Owner shall pay Manager for such repairs in advance.

A.  **G.    Taxes:** Manager shall, if such amounts are included in the Approved Operating Budget, pay taxes due to a government agency as a result of the renting of the Vehicles.  Any such taxes that are paid will be offset from amounts due to Owner from Manager.  Each party shall be responsible for their own local, state and federal taxes arising from this Agreement.

1.  5.  <u>Insurance</u>.  In the event that Owner or the Vehicle requires additional insurance coverage, Owner will obtain and keep in full force adequate insurance to comply with all state and federal laws related to motor vehicles.

1.  6.  <u>Sale of Vehicle(s)</u>.  If Owner sells a Vehicle listed on Exhibit A, Manager shall cooperate with the selling dealer/third party buyer.  Owner agrees to provide Manager immediate notice of any such intent to sell or actual sale of any Vehicle.  If Owner elects to have the Manager sell the vehicle the Owner will be charged a $500 management fee outside of any other sale, transaction, auction, other fees related to the sale of the vehicle.

1.  7.  <u>Indemnity</u>.  Both parties agree to indemnify and hold harmless the other party and its employees, parents, subsidiaries, affiliates, board of directors, agents, representatives, etc., harmless from and against any liabilities, legal fees, damages, losses, costs and other expenses in relation to any claims or actions brought against Fluid or Manager arising out of any breach of this Agreement.

1.  8.  <u>Limitations on Liability</u>.  Under no circumstances will either party be liable to the other for lost profits or for any indirect, incidental, consequential, special, punitive, or exemplary damages arising from the subject matter of this Agreement, regardless of the type of claim even if that party has been advised of the possibility of such damages, such as, but not limited to, loss of revenue, lost data, or anticipated profits or lost business.  Manager shall be liable to Owner for all losses, damages, fines, penalties, costs and expenses (excluding attorneys' fees), sustained or incurred by Owner by reason of or arising out of Manager's breach of the duties and obligations of this Agreement.  In no event shall Manager's liability exceed the amounts paid to Manager under this Agreement.

1.  9.  <u>Notices</u>.  All notices, demands, consents and reports provided for in this Agreement which are required to be in writing shall be given to the parties at the addresses set forth in page 1 of this Agreement, unless otherwise provided by either party.

1.  10. <u>Amendments</u>.  Except as otherwise herein provided, any and all amendments to this Agreement shall be null and void unless approved by the parties in writing.

1.  11. <u>Interpretation</u>.  The headings, subheadings, and other captions in this Agreement are for convenience and reference only and will not be used in interpreting, construing, or enforcing any of the provisions of this Agreement. Each party acknowledges that it has had the opportunity to review this Agreement with legal counsel of its choice, and there will be no presumption that ambiguities will be construed or interpreted against the drafter, and no presumptions made or inferences drawn because of the inclusion of a term not contained in a prior draft or the deletion of a term contained in a prior draft

1.  12. <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of Colorado without reference to its choice of law provisions.  Both parties hereby submit to the exclusive jurisdiction of the State of Colorado.

1.   13. <u>Relationship of the Parties.</u>  Unless specifically provided for herein, Manager shall not be considered an agent or franchisee of Owner and Owner and Manager.

1.   14. <u>Waiver.</u>  No waiver of any breach of any provision of this Agreement shall constitute a waiver of any prior, concurrent or subsequent breach of the same or any other provisions hereof, and no waiver shall be effective unless made in writing and signed by an authorized representative of the waiving party.

1.   15. <u>Severability.</u>  In the event any provision of this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, the remaining provisions shall remain in full force and effect.  If any provision of this Agreement shall, for any reason, be determined by a court of competent jurisdiction to be excessively broad or unreasonable as to scope or subject, such provision shall be enforced to the extent necessary to be reasonable under the circumstances and consistent with applicable law while reflecting as closely as possible the intent of the parties as expressed herein.

In witness thereof, the respective parties have agreed upon and executed this Agreement as of the Effective Date.

**Read and agreed on behalf of:**

**NO Mondays ("Owner")**

By: _Grace Robinson_

Name:  Grace Robinson_____
                              (print)

Title:  CEO_____

Date:  9/30/19_____

Address:  417 31st street Hermosa Beach, CA 90254 _____

Email Address:  dgwpropertiesllc@gmail.com _____
                                *Authorized to Receive Legal Notices*


**Fluid Fleet Services LLC ("Manager")**

By:        _____

Name:    _____
                              (print)
Title:      _____

Date:      _____

**Exhibit A:  Vehicle(s) List**

1.   1.

### Exhibit B:  Management Fee

As compensation for its performance of the obligations set forth in the Agreement, Manager shall be entitled to the following compensation:

1. 1.   Manager shall collect a fee in the amount of 15% of the total gross rental fees generated from each Vehicle.  Fees shall be remitted directly to Manger from Fluid.  Manager shall have the right to offset any amounts due under this Agreement from amounts payable to Owner from Fluid.
2. 2.   In the event that Owner desires to obtain full coverage on each Vehicle, in excess of Fluid's platform coverage, Owner shall pay Fluid $25,00 per month for each Vehicle covered.  All fees will be offset from Owner monthly payments. Additionally, any elections or deletions of coverage must be sent to Fluid in writing and will take effect when processed by Fluid.

## **Fluid Fleet Services, LLC**

Vehicle Management Agreement

This Vehicle Management Agreement ("Agreement") dated as of the effective date set forth herein (the "Effective Date"), by and between the company listed below ("Owner"), and Fluid Fleet Services, LLC, a Colorado limited liability company located at 1441 W. 46th Ave., Unit 2, Denver, CO 80211 ("Manager").

1.    <u>Vehicles.</u>  This Agreement relates to the vehicles listed either in the Fluid Market Inc.("Fluid") platform or listed on Exhibit A, attached hereto, (collectively the "Vehicles"), which may be modified upon mutual agreement of the parties from time to time.

2.    <u>Commencement Date</u>. Manager's duties and responsibilities under this Agreement as of the Effective Date and shall continue for a period of one (1) year ("Term").   Thereafter, this Agreement shall automatically renew for additional one (1) year terms (each a "Renewal Term") unless terminated by either party by providing the other party with written notice of its intent to terminate the Agreement at least thirty (30) days prior to the expiration of the then current term.   In the event that all Vehicles listed on Exhibit A are sold, this Agreement shall automatically terminate.

3.    <u>Manager Termination</u>.  In the event that Owner violates the terms under this Agreement, Manager reserves the right to terminate this Agreement immediately upon written notice to Owner.

4.    <u>Early Termination Fee</u>.  In the event that Owner purchased any Vehicle using Fluid's dealer incentive program and elects to sell or remove its vehicle from the Fluid platform before the expiration of the first year of the initial two (2) year term, Owner shall pay Manager an early termination fee in the amount of $400.00 per month for the remainder of the first year of the initial Term after the date of such sale or removal.  This fee is not meant to be punitive, rather it is the repayment of the incentive discounts that Owner received at the time of purchasing the Vehicles.

5.    <u>Exclusive Use</u>:  During the Term, including any Renewal Term(s), Owner agrees that Vehicles will be used exclusively through Manager's platform.

6.    <u>Manager's Responsibilities</u>.

   **A.  Management**:  To the extent herein provided and subject to the terms and conditions herein set forth, Manager shall manage and maintain the Vehicles and manage the Owner's Fluid Market Account under which the Vehicles are listed for rent. Manager is responsible for setting all pricing related to the Vehicle(s).  During the Term, Owner waives its right to cancel trips or decline reservations using the Fluid application.  Owners that wish to use a Vehicle must communicate the dates with Manager so that Manager can ensure the Vehicle(s) are blocked on the Fluid application calendar.  Manager shall have all communication with the renters and Owner agrees not to reach out to any renters directly.

   **B.  Compliance with Laws**:  Manager shall be responsible for the management and maintenance of the Vehicles in compliance with all federal, state and local laws.  Manager shall promptly remedy any violation of any such law which comes to its attention to the extent that such remedy is within the control of the Manager; provided, however, that Manager's responsibilities shall be limited to funds made available by owner to cause such compliance.

   **C.  Approved Maintenance, Repairs and Budgets**:  Owner agrees to reimburse Manager for all maintenance expenses.  Manager shall secure Owner's prior approval for any expenditures over five percent (5%) of the actual cash value of the vehicle.  During the Term, Manager agrees to inform Owner of any major increases in costs and expenses and shall provide Owner with regular statements detailing such expenses.

   **D.  Collection of Rental Fees and Other Income**:  All rental fees will be collected by Fluid and remitted to Owner less any offsets for any fees submitted by Manager for the maintenance and repair of the Vehicles.  This shall include any late fees, extended reservation fees, and other fees collected by Fluid from the rental of the Vehicles. All monies collected from Fluid resulting from the rental of the Vehicles shall be paid to Owner in accordance with Fluid's then current accounting practices.  All monies so collected shall be paid by electronic transfer as directed by Owner, less the deduction of any Manager fees, as specified in Exhibit B, attached hereto, approved costs or other costs related to the Vehicles.  In the event that there are no rentals of the Vehicle(s) in a calendar month, Manager reserves the right to charge a management fee in the amount specified in Exhibit B.  Owner is

**EXHIBIT B**
**Page 24 of 37**

responsible for providing Manager with a credit card number that Manager can use to collect fees and costs associated with the Vehicle(s).

**E.  Financial Reporting and Accounting:**  All financial reporting, recordkeeping and accounting with respect to the Vehicle(s) shall be the responsibility of the Manager and shall be adequately maintained.  Owner may examine or cause to be examined the books and record related to the Vehicle(s) upon ten (10) days prior written notice.

**F.  Repairs:**  Manager shall attend to the making and supervision of all ordinary and extraordinary repairs to the Vehicle(s); however, no single expenditure shall exceed ($2,000.00) without the prior approval of the Owner.  All actual expenses for such repairs shall be offset from amounts payable to Owner from collected Vehicle rental fees.  In cases of emergencies, Manager may make expenditures for repairs which exceed the aforementioned amount without prior approval if Manger deems such expenditure to be necessary for safety reasons.  Manager will inform Owner of any such emergency expenditure as quickly as possible.   Manager has the right to select any company or contractor to perform repairs to the Vehicle(s).

**G.  Taxes:**  Manager or Fluid may pay taxes due as a result of the renting of the Vehicles.  Any such taxes that are paid will be offset from amounts due to Owner from Manager.  Each party shall be responsible for their own local, state and federal income taxes arising from this Agreement.

**H.  Lienholders:**  In the event that a Vehicle is encumbered by a loan or other similar encumbrance ("Loan"), Owner hereby authorizes Manager to communicate with such lienholder or lender ("Lienholder") to ensure that vehicle encumbrances are paid timely in order to prevent a repossession or issue with such Vehicle.  This Agreement shall be deemed as appropriate authorization to facilitate this Paragraph H and may be presented to any Lienholder related to a Vehicle.  During the Term, Manager, at its election and in its sole discretion, is permitted to make any Loan payments related to Vehicles and may offset payments due to Owner from Rental Fees in order to facilitate payment for a Loan or payment to a specific Lienholder.  Manager shall report any such payments to Owner for each Vehicle on a monthly basis and communicate with Owner prior to invoking the rights granted under this paragraph H.

7.      Insurance.  In the event that Owner or the Vehicle requires additional insurance coverage, Owner will obtain and keep in full force adequate insurance to comply with all state and federal laws related to motor vehicles.

8.      Sale of Vehicle(s).  Owner is prohibited from selling any Vehicle listed on Exhibit A, or purchased through a Fluid Market, Inc. inventive program for the first twelve (12) months of this Agreement.  Thereafter (or if requested by Manager during the first twelve (12) months) if Owner sells a Vehicle listed on Exhibit A, Manager shall cooperate with the selling dealer/third party buyer.  Owner agrees to provide Manager immediate notice of any such intent to sell or actual sale of any Vehicle.  If Owner elects to have the Manager sell the vehicle (or if a vehicle is totaled for insurance purposes), the Owner will be charged a disposition fee in the amount of $500.00 ("Disposition Fee") plus an additional amount in the form of a disposition incentive fee as is set forth below ("Disposition Incentive Fee").  The Disposition Fee and Disposition Incentive Fee are in addition to and outside of any other sale, transaction, auction, other fees related to the sale of the vehicle.
   a.      If the vehicle is sold during months 1-24 after onboarding to the Fluid platform, Owner shall pay Manager a disposition incentive fee in the amount of 20% of the sale price that is in excess of $22,000.00.
   b.      If the vehicle is sold during months 25-47 after onboarding to the Fluid platform, Owner shall pay Manager a disposition incentive fee in the amount of 20% of the sale price that is excess of $17,000.00.
   c.      If the vehicle is sold during month 48 or beyond after onboarding to the Fluid platform, Owner shall pay Manager a disposition incentive fee in the amount of 20% of the sale price that is excess of $12,000.00.

9.      Indemnity.  Both parties agree to indemnify and hold harmless the other party and its employees, parents, subsidiaries, affiliates, board of directors, agents, representatives, etc., harmless from and against any liabilities, legal fees, damages, losses, costs and other expenses in relation to any claims or actions brought against Fluid or Manager arising out of any breach of this Agreement.

10.     Limitations on Liability.  Under no circumstances will either party be liable to the other for lost profits or for any indirect, incidental, consequential, special, punitive, or exemplary damages arising from the subject matter of this Agreement, regardless of the type of claim even if that party has been advised of the possibility of such damages, such as, but not limited to, loss of revenue, lost data, or anticipated profits or lost business.  Manager shall be liable to Owner for all losses, damages, fines, penalties, costs and expenses (excluding attorneys' fees), sustained or incurred by Owner by reason of or arising out of Manager's breach of the duties and obligations of this Agreement.  In no event shall Manager's liability exceed the amounts paid to Manager under this Agreement.

**EXHIBIT B**
**Page 25 of 37**

11.    Notices.  All notices, demands, consents and reports provided for in this Agreement which are required to be in writing shall be given to the parties at the addresses set forth in page 1 of this Agreement, unless otherwise provided by either party.

12.    Amendments.  Except as otherwise herein provided, any and all amendments to this Agreement shall be null and void unless approved by the parties in writing.  The terms of this Agreement are set forth at www.fluidtruck.com/ffs/fvlpterms and may be updated from time to time.  Any changes to the terms that are posted on this site are automatically include and considered accepted modifications to this Agreement upon Owner's continued use of the services hereunder.

13.    Interpretation.  The headings, subheadings, and other captions in this Agreement are for convenience and reference only and will not be used in interpreting, construing, or enforcing any of the provisions of this Agreement.  Each party acknowledges that it has had the opportunity to review this Agreement with legal counsel of its choice, and there will be no presumption that ambiguities will be construed or interpreted against the drafter, and no presumptions made or inferences drawn because of the inclusion of a term not contained in a prior draft or the deletion of a term contained in a prior draft

14.    Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of Colorado without reference to its choice of law provisions.  Both parties hereby submit to the exclusive jurisdiction of the State of Colorado.

15.    Relationship of the Parties.  Unless specifically provided for herein, Manager shall not be considered an agent or franchisee of Owner and Owner and Manager.

16.    Waiver.  No waiver of any breach of any provision of this Agreement shall constitute a waiver of any prior, concurrent or subsequent breach of the same or any other provisions hereof, and no waiver shall be effective unless made in writing and signed by an authorized representative of the waiving party.

17.    Severability.  In the event any provision of this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, the remaining provisions shall remain in full force and effect.  If any provision of this Agreement shall, for any reason, be determined by a court of competent jurisdiction to be excessively broad or unreasonable as to scope or subject, such provision shall be enforced to the extent necessary to be reasonable under the circumstances and consistent with applicable law while reflecting as closely as possible the intent of the parties as expressed herein.

In witness thereof, the respective parties have agreed upon and executed this Agreement as of the Effective Date.

**Read and agreed on behalf of:**

FCP Transport LLC ("Owner"):

By:   _Miguel Poyastro (Jun 4, 2021 13:41 EDT)_

Name:  Miguel Poyastro

                                                            (print)

Title:   Manager

Effective Date:  Jun 4, 2021

FEIN/Tax ID:  86-1182099

Address:  2093 Philadelphia Pike #8356, Claymont, DE, 19703

Email Address:  miguel@fcpmiami.com

*Authorized to Receive Legal Notices*

**Fluid Fleet Services LLC ("Manager")**

By:      /j8mes eberh8rd/

Name:   <u>James Eberhard</u>

                    (print)

Title:   <u>President</u>

## Exhibit A:  Vehicle(s) List

| | |
|---|---|
| 3C6LRVDG4ME517460 | 1.  1FTBR3X86MKA17942 |
| 3C6LRVDG1ME517464 | 2.  1FTBR3X81MKA22076 |
| 3C6LRVDG8ME517462 | 3.  1FTBR3X8XMKA22075 |
| 3C6LRVDG6ME517461 | 4.  1FTBR3X88MKA22074 |
| 3C6LRVDG9ME508205 | 5.  1FTBR3X86MKA18024 |
| 3C6LRVDG7ME508204 | 6.  1FTBR3X86MKA22073 |
| 3C6LRVDG5ME517466 | 7.  1FTBR3X82MKA22037 |
| 3C6LRVDG3ME508121 | 8.  1FTBR3X80MKA22036 |
| 3C6LRVDG9ME508124 | 9.  1FTBR3X89MKA22035 |
| 3C6LRVDG5ME517564 | 10. 1FTBR3X83MKA21964 |
| 3C6LRVDG6ME517458 | 11. 1FTBR3X81MKA21963 |
| 3C6LRVDG8ME517459 | 12. 1FTBR3X8XMKA21962 |
| 3C6LRVDG5ME517502 | 13. 1FTBR3X88MKA21958 |
| 3C6LRVDG3ME517501 | 14. 1FTBR3X86MKA21957 |
| 3C6LRVDG5ME517547 | 15. 1FTBR3X84MKA22217 |
| 3C6LRVDGXME517561 | 16. 1FTBR3X85MKA22212 |
| 3C6LRVDG4ME517474 | 17. 1FTBR3X83MKA22211 |
| 3C6LRVDG9ME517485 | 18. 1FTBR3X81MKA22210 |
| 3C6LRVDG4ME517541 | 19. 1FTBR3X88MKA22205 |
| 3C6LRVDG3ME513948 | 20. 3C6LRVDG3ME522505 |
| 3C6LRVDG3ME513951 | 21. 3C6LRVDG6ME522823 |
| 3C6LRVDG5ME513952 | 22. 3C6LRVDG6ME527746 |
| 3C6LRVDG2ME513956 | 23. 3C6LRVDG9ME522914 |
| 3C6LRVDG6ME513958 | 24. 3C6LRVDG6ME522773 |
| 3C6LRVDG8ME513959 | 25. 3C6LRVDG2ME534323 |
| 3C6LRVDG4ME513960 | 26. 3C6LRVDG2ME527694 |
| 3C6LRVDGXME513915 | 27. 3C6LRVDG7ME530879 |
| 3C6LRVDG6ME513913 | 28. 3C6LRVDG5ME530847 |
| 3C6LRVDG3ME513965 | 29. 3C6LRVDG4ME527731 |
| 3C6LRVDG5ME513966 | 30. 3C6LRVDGXME527975 |
| 3C6LRVDG7ME513919 | 31. 3C6LRVDG5ME522764 |
| 3C6LRVDG7ME513967 | 32. 3C6LRVDGXME522758 |
| 3C6LRVDG3ME513920 | 33. 3C6LRVDG4ME527681 |
| 3C6LRVDG7ME513970 | 34. 3C6LRVDG2ME522902 |
| 3C6LRVDGXME513929 | 35. 3C6LRVDGXME522579 |
| 3C6LRVDG4ME513974 | 36. 1FTBR3X85MKA21948 |
| 3C6LRVDG1ME513933 | 37. 1FTBR3X80MKA21940 |
| 3C6LRVDGXME517575 | 38. 1FTBR3X84MKA21942 |
| 3C6LRVDG7ME517579 | 39. 1FTBR3X83MKA21947 |
| 3C6LRVDG3ME517580 | 40. 1FTBR3X8XMKA22108 |
| 3C6LRVDG2ME517568 | 41. 1FTBR3X86MKA17987 |
| 3C6LRVDG5ME517550 | 42. 1FTBR3X82MKA21938 |
| 3C6LRVDG7ME517551 | 43. 1FTBR3X87MKA21949 |
| 3C6LRVDG0ME517567 | 44. 1FTBR3X80MKA22196 |
| 3C6LRVDG1ME513866 | 45. 1FTBR3X87MKA22227 |
| 3C6LRVDG9ME513873 | 46. 1FTBR3X89MKA18079 |
| 3C6LRVDG6ME513880 | 47. 1FTBR3X82MKA22104 |
| 3C6LRVDG5ME513885 | 48. 1FTBR3X88MKA21863 |
| 3C6LRVDG2ME513889 | 49. 1FTBR3X8XMKA18043 |
| 3C6LRVDG5ME513899 | 50. 1FTBR3X80MKA22022 |

**EXHIBIT B**
**Page 28 of 37**

**Exhibit B:  Management Fee**

As compensation for its performance of the obligations set forth in the Agreement, Manager shall be entitled to the following compensation:

1.      Manager shall collect a fee in the amount of 15% of the total gross rental fees generated from each Vehicle.  Fees shall be remitted directly to Manger from Fluid.  Manager shall have the right to offset any amounts due under this Agreement from amounts payable to Owner from Fluid.

2.      Owner also understands that all Vehicles that are Ram Promasters are subject to the FVIP Maintenance Plan whereby Owner shall pay $99 per month, per Vehicle for the following services: (i) extended insurance coverage during non-rental periods; and (ii) most scheduled maintenance (please refer to the FVIP Maintenance Plan Program Document for more information.  The fees for this program will be offset from Owner payouts each month.

**EXHIBIT B**
**Page 29 of 37**

# Updated Fleet Service Agreement - FCP Transport June 2021

Final Audit Report                                                2021-06-04

| | |
|---|---|
| Created: | 2021-06-02 |
| By: | Jake Shirek (jake@nmdequitygroup.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA56nTMVYES45EtXWAfE-WBUiQbWuiWGZY |

## "Updated Fleet Service Agreement - FCP Transport June 2021" History

📄 Document created by Jake Shirek (jake@nmdequitygroup.com)
   2021-06-02 - 4:43:00 PM GMT- IP address: 50.196.90.165

📧 Document emailed to Miguel Poyastro (miguel@fcpmiami.com) for signature
   2021-06-02 - 4:43:29 PM GMT

📄 Email viewed by Miguel Poyastro (miguel@fcpmiami.com)
   2021-06-04 - 5:41:12 PM GMT- IP address: 108.224.148.173

✍️ Document e-signed by Miguel Poyastro (miguel@fcpmiami.com)
   Signature Date: 2021-06-04 - 5:41:55 PM GMT - Time Source: server- IP address: 108.224.148.173

✅ Agreement completed.
   2021-06-04 - 5:41:55 PM GMT

**Adobe Sign**

**Fluid Fleet Services, LLC**

Vehicle Management Agreement

This Vehicle Management Agreement ("Agreement") dated as of the effective date set forth herein (the "Effective Date"), by and between the company listed below ("Owner"), and Fluid Fleet Services, LLC, a Colorado limited liability company located at 1441 W. 46th Ave., Unit 2, Denver, CO 80211 ("Manager").

1.  <u>Vehicles.</u>  This Agreement relates to the vehicles listed either in the Fluid Market Inc.("Fluid") platform or listed on Exhibit A, attached hereto, (collectively the "Vehicles"), which may be modified upon mutual agreement of the parties from time to time.

2.  <u>Commencement Date</u>. Manager's duties and responsibilities under this Agreement as of the Effective Date and shall continue for a period of one (1) year ("Term").  Thereafter, this Agreement shall automatically renew for additional one (1) year terms (each a "Renewal Term") unless terminated by either party by providing the other party with written notice of its intent to terminate the Agreement at least thirty (30) days prior to the expiration of the then current term.   In the event that all Vehicles listed on Exhibit A are sold, this Agreement shall automatically terminate.

3.  <u>Manager Termination</u>.  In the event that Owner violates the terms under this Agreement, Manager reserves the right to terminate this Agreement immediately upon written notice to Owner.

4.  <u>Early Termination Fee</u>.  In the event that Owner purchased any Vehicle using Fluid's dealer incentive program and elects to sell or remove its vehicle from the Fluid platform before the expiration of the first year of the initial two (2) year term, Owner shall pay Manager an early termination fee in the amount of $400.00 per month for the remainder of the first year of the initial Term after the date of such sale or removal.  This fee is not meant to be punitive, rather it is the repayment of the incentive discounts that Owner received at the time of purchasing the Vehicles.

5.  <u>Exclusive Use</u>:  During the Term, including any Renewal Term(s), Owner agrees that Vehicles will be used exclusively through Manager's platform.

6.  <u>Manager's Responsibilities</u>.

    A.  **Management**:  To the extent herein provided and subject to the terms and conditions herein set forth, Manager shall manage and maintain the Vehicles and manage the Owner's Fluid Market Account under which the Vehicles are listed for rent. Manager is responsible for setting all pricing related to the Vehicle(s).  During the Term, Owner waives its right to cancel trips or decline reservations using the Fluid application.  Owners that wish to use a Vehicle must communicate the dates with Manager so that Manager can ensure the Vehicle(s) are blocked on the Fluid application calendar.  Manager shall have all communication with the renters and Owner agrees not to reach out to any renters directly.

    B.  **Compliance with Laws**:  Manager shall be responsible for the management and maintenance of the Vehicles in compliance with all federal, state and local laws.  Manager shall promptly remedy any violation of any such law which comes to its attention to the extent that such remedy is within the control of the Manager; provided, however, that Manager's responsibilities shall be limited to funds made available by owner to cause such compliance.

    C.  **Approved Maintenance, Repairs and Budgets**:  Owner agrees to reimburse Manager for all maintenance expenses.  Manager shall secure Owner's prior approval for any expenditures over five percent (5%) of the actual cash value of the vehicle.  During the Term, Manager agrees to inform Owner of any major increases in costs and expenses and shall provide Owner with regular statements detailing such expenses.

    D.  **Collection of Rental Fees and Other Income**: All rental fees will be collected by Fluid and remitted to Owner less any offsets for any fees submitted by Manager for the maintenance and repair of the Vehicles.  This shall include any late fees, extended reservation fees, and other fees collected by Fluid from the rental of the Vehicles. All monies collected from Fluid resulting from the rental of the Vehicles shall be paid to Owner in accordance with Fluid's then current accounting practices.  All monies so collected shall be paid by electronic transfer as directed by Owner, less the deduction of any Manager fees, as specified in Exhibit B, attached hereto, approved costs or other costs related to the Vehicles.  In the event that there are no rentals of the Vehicle(s) in a calendar month, Manager reserves the right to charge a management fee in the amount specified in Exhibit B.  Owner is

**EXHIBIT B**
**Page 31 of 37**

responsible for providing Manager with a credit card number that Manager can use to collect fees and costs associated with the Vehicle(s).

**E.  Financial Reporting and Accounting:**  All financial reporting, recordkeeping and accounting with respect to the Vehicle(s) shall be the responsibility of the Manager and shall be adequately maintained.  Owner may examine or cause to be examined the books and record related to the Vehicle(s) upon ten (10) days prior written notice.

**F.  Repairs:**  Manager shall attend to the making and supervision of all ordinary and extraordinary repairs to the Vehicle(s); however, no single expenditure shall exceed ($2,000.00) without the prior approval of the Owner.  All actual expenses for such repairs shall be offset from amounts payable to Owner from collected Vehicle rental fees.  In cases of emergencies, Manager may make expenditures for repairs which exceed the aforementioned amount without prior approval if Manger deems such expenditure to be necessary for safety reasons.  Manager will inform Owner of any such emergency expenditure as quickly as possible.   Manager has the right to select any company or contractor to perform repairs to the Vehicle(s).

**G.  Taxes:**  Manager or Fluid may pay taxes due as a result of the renting of the Vehicles.  Any such taxes that are paid will be offset from amounts due to Owner from Manager.  Each party shall be responsible for their own local, state and federal income taxes arising from this Agreement.

**H.  Lienholders:**  In the event that a Vehicle is encumbered by a loan or other similar encumbrance ("Loan"), Owner hereby authorizes Manager to communicate with such lienholder or lender ("Lienholder") to ensure that vehicle encumbrances are paid timely in order to prevent a repossession or issue with such Vehicle.  This Agreement shall be deemed as appropriate authorization to facilitate this Paragraph H and may be presented to any Lienholder related to a Vehicle.  During the Term, Manager, at its election and in its sole discretion, is permitted to make any Loan payments related to Vehicles and may offset payments due to Owner from Rental Fees in order to facilitate payment for a Loan or payment to a specific Lienholder.  Manager shall report any such payments to Owner for each Vehicle on a monthly basis and communicate with Owner prior to invoking the rights granted under this paragraph H.

7.      Insurance.  In the event that Owner or the Vehicle requires additional insurance coverage, Owner will obtain and keep in full force adequate insurance to comply with all state and federal laws related to motor vehicles.

8.      Sale of Vehicle(s).  Owner is prohibited from selling any Vehicle listed on Exhibit A, or purchased through a Fluid Market, Inc. inventive program for the first twelve (12) months of this Agreement.  Thereafter (or if requested by Manager during the first twelve (12) months) if Owner sells a Vehicle listed on Exhibit A, Manager shall cooperate with the selling dealer/third party buyer.  Owner agrees to provide Manager immediate notice of any such intent to sell or actual sale of any Vehicle.  If Owner elects to have the Manager sell the vehicle (or if a vehicle is totaled for insurance purposes), the Owner will be charged a disposition fee in the amount of $500.00 ("Disposition Fee") plus an additional amount in the form of a disposition incentive fee as is set forth below ("Disposition Incentive Fee").  The Disposition Fee and Disposition Incentive Fee are in addition to and outside of any other sale, transaction, auction, other fees related to the sale of the vehicle.

      a.      If the vehicle is sold during months 1-24 after onboarding to the Fluid platform, Owner shall pay Manager a disposition incentive fee in the amount of 20% of the sale price that is in excess of $22,000.00.

      b.      If the vehicle is sold during months 25-47 after onboarding to the Fluid platform, Owner shall pay Manager a disposition incentive fee in the amount of 20% of the sale price that is excess of $17,000.00.

      c.      If the vehicle is sold during month 48 or beyond after onboarding to the Fluid platform, Owner shall pay Manager a disposition incentive fee in the amount of 20% of the sale price that is excess of $12,000.00.

9.      Indemnity.  Both parties agree to indemnify and hold harmless the other party and its employees, parents, subsidiaries, affiliates, board of directors, agents, representatives, etc., harmless from and against any liabilities, legal fees, damages, losses, costs and other expenses in relation to any claims or actions brought against Fluid or Manager arising out of any breach of this Agreement.

10.     Limitations on Liability.  Under no circumstances will either party be liable to the other for lost profits or for any indirect, incidental, consequential, special, punitive, or exemplary damages arising from the subject matter of this Agreement, regardless of the type of claim even if that party has been advised of the possibility of such damages, such as, but not limited to, loss of revenue, lost data, or anticipated profits or lost business.  Manager shall be liable to Owner for all losses, damages, fines, penalties, costs and expenses (excluding attorneys' fees), sustained or incurred by Owner by reason of or arising out of Manager's breach of the duties and obligations of this Agreement.  In no event shall Manager's liability exceed the amounts paid to Manager under this Agreement.

**EXHIBIT B**
**Page 32 of 37**

11.     Notices.  All notices, demands, consents and reports provided for in this Agreement which are required to be in writing shall be given to the parties at the addresses set forth in page 1 of this Agreement, unless otherwise provided by either party.

12.     Amendments.  Except as otherwise herein provided, any and all amendments to this Agreement shall be null and void unless approved by the parties in writing.  The terms of this Agreement are set forth at www.fluidtruck.com/ffs/fvipterms and may be updated from time to time.  Any changes to the terms that are posted on this site are automatically include and considered accepted modifications to this Agreement upon Owner's continued use of the services hereunder.

13.     Interpretation.  The headings, subheadings, and other captions in this Agreement are for convenience and reference only and will not be used in interpreting, construing, or enforcing any of the provisions of this Agreement.  Each party acknowledges that it has had the opportunity to review this Agreement with legal counsel of its choice, and there will be no presumption that ambiguities will be construed or interpreted against the drafter, and no presumptions made or inferences drawn because of the inclusion of a term not contained in a prior draft or the deletion of a term contained in a prior draft

14.     Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of Colorado without reference to its choice of law provisions.  Both parties hereby submit to the exclusive jurisdiction of the State of Colorado.

15.     Relationship of the Parties.  Unless specifically provided for herein, Manager shall not be considered an agent or franchisee of Owner and Owner and Manager.

16.     Waiver.  No waiver of any breach of any provision of this Agreement shall constitute a waiver of any prior, concurrent or subsequent breach of the same or any other provisions hereof, and no waiver shall be effective unless made in writing and signed by an authorized representative of the waiving party.

17.     Severability.  In the event any provision of this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, the remaining provisions shall remain in full force and effect.  If any provision of this Agreement shall, for any reason, be determined by a court of competent jurisdiction to be excessively broad or unreasonable as to scope or subject, such provision shall be enforced to the extent necessary to be reasonable under the circumstances and consistent with applicable law while reflecting as closely as possible the intent of the parties as expressed herein.

In witness thereof, the respective parties have agreed upon and executed this Agreement as of the Effective Date.

**Read and agreed on behalf of:**

Company Name ("Owner"):

By:  *Jeffrey Scheck*

Name:   Jeffrey Scheck

                                                    (print)

Title:   Manager

Effective Date:   Jun 2, 2021

FEIN/Tax ID:  85-4353944

Address:  850 New Burton Road, Suite 201, Dover, DE, 19904

Email Address:   jeffrey@scheckgroup.com

               *Authorized to Receive Legal Notices*

**EXHIBIT B**
**Page 33 of 37**

**Fluid Fleet Services LLC ("Manager")**

By:       /j8mes eberh8rd/
Name:   <u>James Eberhard</u>
                          (print)
Title:    <u>President</u>

### Exhibit A:  Vehicle(s) List

1. 3C6LRVDG9ME508186
2. 3C6LRVDG6ME508131
3. 3C6LRVDG1ME508148
4. 3C6LRVDG3ME508149
5. 3C6LRVDG6ME508159
6. 3C6LRVDG8ME508180
7. 3C6LRVDG1ME508182
8. 3C6LRVDG2ME508126
9. 3C6LRVDG0ME508190
10. 3C6LRVDG8ME508163
11. 3C6LRVDG3ME517546
12. 3C6LRVDG6ME513944
13. 3C6LRVDG5ME513918
14. 3C6LRVDG2ME513942
15. 3C6LRVDG3ME513934
16. 3C6LRVDG8ME513976
17. 3C6LRVDG4ME517636
18. 3C6LRVDGXME517639
19. 3C6LRVDG8ME517641
20. 3C6LRVDG3ME517644
21. 3C6LRVDG8ME517624
22. 3C6LRVDG9ME517650
23. 3C6LRVDG3ME517627
24. 3C6LRVDG7ME517629
25. 3C6LRVDG4ME517653
26. 3C6LRVDG3ME517496
27. 3C6LRVDG5ME517497
28. 3C6LRVDG5ME517645
29. 3C6LRVDG4ME517619
30. 3C6LRVDG7ME517646
31. 3C6LRVDG9ME517549
32. 3C6LRVDG7ME517565
33. 3C6LRVDG9ME517566
34. 3C6LRVDG4ME517572
35. 3C6LRVDG6ME517573
36. 3C6LRVDG9ME517552
37. 3C6LRVDG4ME517555
38. 3C6LRVDG1ME517562
39. 3C6LRVDG3ME517563
40. 3C6LRVDG7ME517548
41. 3C6LRVDG4ME517605
42. 3C6LRVDG6ME517606
43. 3C6LRVDG8ME517607
44. 3C6LRVDG8ME517610
45. 3C6LRVDG1ME517612
46. 3C6LRVDG5ME517614
47. 3C6LRVDGXME517589
48. 3C6LRVDG4ME517507
49. 3C6LRVDG5ME517399
50. 3C6LRVDG8ME517591

1. 3C6LRVDG4ME522822
2. 3C6LRVDG7ME517503
3. 3C6LRVDG2ME522821
4. 3C6LRVDG2ME522818
5. 3C6LRVDG0ME522817
6. 3C6LRVDGXME522694
7. 3C6LRVDG6ME522935
8. 3C6LRVDG1ME522695
9. 3C6LRVDG3ME522696
10. 3C6LRVDG9ME517406
11. 3C6LRVDG3ME531043
12. 3C6LRVDG4ME527700
13. 3C6LRVDG8ME527912
14. 3C6LRVDG7ME522488
15. 3C6LRVDG3ME530894
16. 3C6LRVDG5ME527916
17. 3C6LRVDG0ME527919
18. 3C6LRVDG4ME531049
19. 3C6LRVDG8ME530857
20. 3C6LRVDG0ME527743
21. 3C6LRVDG1ME530893
22. 3C6LRVDG3ME530863
23. 3C6LRVDG5ME530895
24. 3C6LRVDG1ME527718
25. 3C6LRVDG2ME527730
26. 3C6LRVDG8ME530910
27. 3C6LRVDG1ME534457
28. 3C6LRVDG5ME525079
29. 3C6LRVDGXME540726
30. 3C6LRVDG9ME540720
31. 3C6LRVDG0ME540721
32. 3C6LRVDG2ME540722
33. 3C6LRVDG6ME540724
34. 3C6LRVDG8ME540725
35. 3C6LRVDG7ME527951
36. 3C6LRVDG9ME532360
37. 3C6LRVDG1ME522647
38. 3C6LRVDG0ME532358
39. 3C6LRVDG5ME522764
40. 1FTBR3X84MKA22198
41. 1FTBR3X82MKA22216
42. 1FTBR3X89MKA22200
43. 1FTBR3X82MKA22023
44. 1FTBR3X84MKA22007
45. 1FTBR3X84MKA22024
46. 1FTBR3X86MKA22008
47. 1FTBR3X88MKA22009
48. 3C6LRVDGXME527975
49. 1FTBR3X87MKA22213
50. 1FTBR3X89MKA22214

**Exhibit B:  Management Fee**

As compensation for its performance of the obligations set forth in the Agreement, Manager shall be entitled to the following compensation:

1.      Manager shall collect a fee in the amount of 15% of the total gross rental fees generated from each Vehicle.  Fees shall be remitted directly to Manger from Fluid.  Manager shall have the right to offset any amounts due under this Agreement from amounts payable to Owner from Fluid.

2.      Owner also understands that all Vehicles that are Ram Promasters are subject to the FVIP Maintenance Plan whereby Owner shall pay $99 per month, per Vehicle for the following services: (i) extended insurance coverage during non-rental periods; and (ii) most scheduled maintenance (please refer to the FVIP Maintenance Plan Program Document for more information.  The fees for this program will be offset from Owner payouts each month.

**EXHIBIT B**
**Page 36 of 37**

# Updated Fleet Service Agreement - SA Transport June 2021

**Final Audit Report**                                         2021-06-02

| | |
|---|---|
| Created: | 2021-06-02 |
| By: | Jake Shirek (jake@nmdequitygroup.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAl2E8zu66c_vS-lEE2aKZHQ479zD90wS9 |

## "Updated Fleet Service Agreement - SA Transport June 2021" History

🗎 Document created by Jake Shirek (jake@nmdequitygroup.com)
2021-06-02 - 4:43:51 PM GMT- IP address: 50.196.90.165

📧 Document emailed to Jeffrey Scheck (jeffrey@scheckgroup.com) for signature
2021-06-02 - 4:44:16 PM GMT

🗎 Email viewed by Jeffrey Scheck (jeffrey@scheckgroup.com)
2021-06-02 - 6:16:58 PM GMT- IP address: 12.90.78.214

✒ Document e-signed by Jeffrey Scheck (jeffrey@scheckgroup.com)
Signature Date: 2021-06-02 - 6:17:34 PM GMT - Time Source: server- IP address: 12.90.78.214

✅ Agreement completed.
2021-06-02 - 6:17:34 PM GMT

Adobe Sign