## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FLUID MARKET INC., *et al.*,[1] | ) Case No. 24-1263(CTG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) **Re: Docket No. 74** |

**ORDER (I) APPROVING THE SALE OF ASSETS TO KINGBEE RENTALS LLC FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (II) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION THEREWITH, AND (III) GRANTING RELATED RELIEF**

Upon the *Debtors' Motion for Entry of Orders: (I)(A) Approving Bidding Procedures for the Sale of Substantially all of Debtors' Assets, (B) Authorizing the Debtors to Enter Into the Stalking Horse Agreement and to Provide Bid Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving the Assumption and Assignment Procedures and (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of Substantially all of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief*, Docket No. 74 (the "Sale Motion"),[2] filed by the debtors in the above-captioned chapter 11 cases (collectively, the "Debtors"); and the Court having previously entered the *Order (I) Approving Bidding Procedures and Bid Protections in Connection with the Sale of Substantially all of the*

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Fluid Market Inc. (1365) and Fluid Fleet Services, LLC (5994).  The location of the Debtors' service address is:  3827 Lafayette St., Suite #149, Denver, CO 80205.

[2]  Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Sale Motion, the APA, the Bidding Procedures, and the Bidding Procedures Order (each, as defined herein), as applicable.

*Debtors' Assets, (II) Scheduling Bid Deadlines and the Auction, (III) Approving Form and Manner of Notice Thereof, and (IV) Granted Related Relief,* Docket No. 161 (the "<u>Bidding Procedures Order</u>" and the bidding procedures attached as Exhibit 1 to the Bidding Procedures Order, the "<u>Bidding Procedures</u>") following the hearing on November 19, 2024 (the "<u>Bidding Procedures Hearing</u>"); and Kingbee Rentals LLC (the "<u>Purchaser</u>") having submitted the highest or best bid for the Purchased Assets, as defined in that certain *Asset Purchase Agreement*, dated as of October 30, 2024, by and among the Purchaser and the Debtors, each as a seller (together, the "<u>Sellers</u>") (as amended, supplemented or otherwise modified from time to time, the "<u>APA</u>"), a copy of which is attached hereto as **<u>Exhibit 1</u>**; and the Purchaser having been deemed the Successful Bidder for the Purchased Assets pursuant to the terms of the Bidding Procedures; and the Court having conducted a hearing to consider certain relief requested in the Sale Motion on December 13, 2024 (the "<u>Sale Hearing</u>"), at which time all objecting and interested parties were offered an opportunity to be heard with respect to the Sale Motion; and the Court having reviewed and considered: (i) the Sale Motion; (ii) the APA; (iii) the Bidding Procedures; (iv) the Bidding Procedures Order; (v) the record of the Bidding Procedures Hearing; (vi) objections, filed with the Court (each, an "<u>Objection</u>" and, collectively with any informal objections received by the Debtors, the "<u>Objections</u>"); (vii) the Debtors' reply to the Objections; and (viii) the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing; and after due deliberation the Court having determined that the legal and factual bases set forth in the Sale Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Sale Motion and approval of the APA are in the best interest of the Debtors, their estates and their creditors, and the Debtors having demonstrated good, sufficient and sound business justifications for the relief granted herein;

**IT IS HEREBY FOUND AND DETERMINED THAT:**[3]

A.    <u>Jurisdiction and Venue</u>.  This Court has jurisdiction to consider the Sale Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    <u>Final Order</u>.  This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(j) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, expressly directs that this Sale Order be effective immediately upon entry, and waives any stay of execution or implementation of this Sale Order.

C.    <u>Statutory Predicates</u>.  The statutory and other legal predicates for the relief sought in the Sale Motion and granted herein are sections 105, 363 and 365 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2002, 4001, 6004, 6006, 9007 and 9014 of the Bankruptcy Rules and Rules 2002-1, 6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>").

D.    <u>Notice and Opportunity to Be Heard</u>.  The Debtors have provided proper, timely,

---

[3]    The findings and conclusions of law set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.  The Court's findings also shall include any oral findings of fact and conclusions of law made by the Court during the Sale Hearing.

adequate and sufficient notice of, and a fair and reasonable opportunity to object and be heard with respect to, the Sale Motion, the Bidding Procedures, the Bidding Procedures Order, the Auction, the Sale Hearing, the sale of the Purchased Assets pursuant to the APA (the "Transaction") free and clear of any Interests (as defined below) (other than any Assumed Liabilities expressly assumed under, or expressly permitted by, the APA or this Order) within the meaning of section 363(f) of the Bankruptcy Code, the *[Notice of Successful Bidder]* [Docket No. [•]], and the assumption and assignment of the executory contracts and unexpired leases to be assumed and assigned to the Purchaser at Closing pursuant to this Order and the terms of the APA (collectively, the "Purchased Contracts"), in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, 6006, 9007 and 9014, Local Rules 2002-1, 6004-1 and 9006-1 and the Bidding Procedures Order, to all persons and entities entitled to such notice, including the Notice Parties and all other persons and entities as directed by the Court.  Such notice was good, sufficient and appropriate under the circumstances, including but not limited to providing each counterparty a full and fair opportunity to object to the assumption and assignment of its Purchased Contract and its proposed Cure Amounts; and no other or further notice of any of the foregoing is required.  The Debtors published the Sale Motion, Bidding Procedures Order, the Bidding Procedures, the APA (and all exhibits and schedules thereto), the Sale Notice, the Assumption and Assignment Notice, and certain other documents relevant to the Sale on the case website.

     E.     <u>Sound Business Purpose</u>.  The Debtors have demonstrated good, sufficient and sound business purposes and justifications for approval of the Sale Motion.  The approval of and entry into the Transaction, the APA and any ancillary agreements thereto (i) are a result of due deliberation by the Debtors and constitute a sound and reasonable exercise of the Debtors'

business judgment consistent with their fiduciary duties; (ii) provide value and are beneficial to the Debtors' estates, and are in the best interests of the Debtors, their estates and their stakeholders; and (iii) are reasonable and appropriate under the circumstances.  Business justifications for entry into the Transaction and the APA include, without limitation, the following: (i) the APA constitutes the highest or best offer received for the Purchased Assets; (ii) the APA presents the best opportunity to maximize the value of the Purchased Assets; (iii) failure to consummate the Transaction expeditiously could materially diminish creditor recoveries; and (iv) the immediate consummation of the Transaction is necessary to maximize the value of the Debtors' estates.

F.    <u>Marketing Process</u>.    As demonstrated by the [Declarations] and testimony adduced at the Bidding Procedures Hearing and the Sale Hearing, the Debtors and their advisors thoroughly marketed the Purchased Assets and conducted the marketing and sale process as set forth in and in accordance with the Sale Motion and Bidding Procedures Order.  Based upon the record of these proceedings all prospective purchasers have been afforded a reasonable and fair opportunity to bid for the Purchased Assets.

G.    <u>Compliance with Bidding Procedures</u>.  The Debtors conducted an open and fair sale process.  The sale process was non-collusive in all respects, and the Debtors (a) afforded all interested parties a full, fair, and reasonable opportunity to qualify as a Qualified Bidder and make an offer to purchase the Purchased Assets, (b) provided Potential Bidders, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Purchased Assets or any of the Debtors' assets or business, and (c) appropriately considered all Bids that were duly submitted in accordance with the Bidding Procedures.  The Debtors, the Purchaser, and their respective counsel and other advisors have complied with the Bidding

Procedures and the Bidding Procedures Order. The Purchaser is the designated Successful Bidder, and the APA is designated the Successful Bid for the Purchased Assets enumerated therein, in each case, in accordance with the Bidding Procedures Order. The Purchaser and its professionals have complied in all material respects with the Bidding Procedures Order, the Bidding Procedures, the Assumption and Assignment Procedures, and all other applicable orders of this Court in negotiating and entering into the APA, and the Transaction and the APA likewise comply with the Bidding Procedures Order and all other applicable orders of this Court.

H.      <u>Highest or Best Value</u>.  Consistent with their fiduciary duties, the Debtors have demonstrated good, sufficient and sound business reasons and justifications for entering into the Sale Transaction and the performance of their obligations under the APA, including, but not limited to, the fact that (a) the total consideration provided by the Purchaser for the Purchased Assets as reflected in the APA is the highest or otherwise best offer for the Purchased Assets; (b) the consideration provided by the Purchaser under the APA will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative, including a separate liquidation of the Purchased Assets; (c) there is a substantial risk of depreciation of the value of the Purchased Assets if the Transaction is not consummated promptly; (d) the Transaction contemplated by the APA presents the best opportunity to maximize the value of the Debtors' estates; and (e) unless the Transaction is concluded expeditiously as provided for in the Sale Motion and pursuant to the APA, creditor recoveries will be diminished.

I.      <u>Fair Consideration</u>.  The consideration the Purchaser will pay under the APA constitutes (i) fair and reasonable consideration for the Purchased Assets; and (ii) reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, the Uniform Voidable Transactions Act

and other laws of the United States, any state, territory, possession thereof or the District of Columbia, or any other applicable jurisdiction with laws substantially similar to the foregoing.

J.      Free and Clear Sale.  The Debtors may sell the Purchased Assets free and clear of all Interests (other than any Assumed Liabilities expressly assumed under, or expressly permitted by, the APA or this Order, including the DIP Liens and DIP Obligations (each as defined in the Final DIP Order)), because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Any holders of Interests that objected to the Transaction or the Sale Motion and that have an Interest in the Purchased Assets could be compelled in a legal or equitable proceeding to accept money in satisfaction of such Interest pursuant to section 363(f)(5) or fall within one or more of the other subsections of section 363(f) and, therefore, are adequately protected by having their Interests on the Purchased Assets attach solely to the proceeds of the Transaction ultimately attributable to the sale of the property on which such holders have an Interest, in the same order of priority, and with the same validity, force and effect that such Interests had prior to the consummation of the Transaction, subject to any rights, claims or defenses of the Debtors and their estates.  Any Interest holders that did not object, or that withdrew their objections, to the Sale Motion or the Transaction, are deemed to have consented to the sale of the Purchased Assets free and clear of their respective Interests on the Purchased Assets pursuant to section 363(f)(2) of the Bankruptcy Code.

K.      Purchaser Reliance on Free and Clear Sale.  The Purchaser would not have entered into the APA and would not consummate the Transaction or the other transactions contemplated thereby if the sale of the Purchased Assets were not free and clear of all Interests (other than any Assumed Liabilities expressly assumed under, or expressly permitted by, the APA or this Order), or if the Purchaser would, or in the future could, be liable for any such Interests.  A sale of the

Purchased Assets other than one free and clear of all Interests would adversely impact the Debtors, their estates and their creditors, and would yield substantially less value for the Purchased Assets and the Debtors' estates, with less certainty than provided by the Transaction. The total consideration to be provided under the APA reflects the Purchaser's reliance on this Order to provide it, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, with title to, and possession of, the Purchased Assets free and clear of all Interests (other than any Assumed Liabilities expressly assumed under, or expressly permitted by, the APA or this Order), including, without limitation, to the greatest extent permitted by applicable law, any potential derivative, vicarious, transferee or successor liability Interests.

L.      "Interests".  As used in this Order, the term "Interest" includes, in each case to the extent against or with respect to any of the Debtors or in, on, or against or with respect to any of the Purchased Assets: liens (as defined in section 101(37) of the Bankruptcy Code), claims (as defined in section 101(5) of the Bankruptcy Code), debts (as defined in section 101(12) of the Bankruptcy Code), encumbrances, obligations, Liabilities, demands, guarantees, actions, suits, defenses (to the maximum extent allowed under applicable law), deposits, credits, allowances, options, rights, restrictions, limitations, contractual commitments, rights, or interests of any kind or nature whatsoever, whether known or unknown, inchoate or not, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of these chapter 11 cases, and whether imposed by agreement, understanding, law, equity, or otherwise, including, but not limited to, (i) mortgages, deeds of trust, pledges, charges, security interests, hypothecations, encumbrances, easements, servitudes, leases,

subleases, rights-of-way, encroachments, restrictive covenants, restrictions on transferability or other similar restrictions, rights of offset or recoupment, rights of use or possession, subleases, leases, conditional sale arrangements, or any similar rights, (ii) all claims, including, without limitation, all rights or causes of action (whether in law or equity), proceedings, warranties, guarantees, indemnities, rights of recovery, setoff (except for setoffs exercised prior to the Petition Date), indemnity or contribution, obligations, demands, restrictions, indemnification claims, or liabilities relating to any act or omission of the Debtors or any other person, consent rights, options, contract rights, covenants, and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued, or contingent and regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of these chapter 11 cases, and whether imposed by agreement, understanding, law, equity or otherwise; (iii) all debts, liabilities, obligations, contractual or tort rights and claims, and labor, employment, and pension claims; (iv) any rights that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, or consents, or termination of the Debtors', the Purchaser's interest in the Purchased Assets, or any similar rights; (v) any rights under labor or employment agreements; (vi) any rights under pension, multiemployer plan (as such term is defined in section 3(37) or section 4001(a)(3) of the Employment Retirement Income Security Act of 1974 (as amended, "ERISA"), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plans of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability; (vii) any other employee, worker's compensation, occupation disease, or unemployment or temporary disability claims, including, without limitation, claims that might otherwise arise under or pursuant to (a) ERISA, (b) the Fair

Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act, each as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Internal Revenue Code of any similar state law, (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, (k) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors, or (l) the WARN Act (29 U.S.C.  §§ 2101, et seq.) or any state or other laws of similar effect; (viii) any bulk sales or similar law; (ix) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, and any taxes arising under or out of, in connection with, or in any way relating to the operation of the assets or businesses of the Debtors prior to the Closing; (x) any unexpired and executory or non-executory contract or unexpired lease to which a Debtor is a party that is not an Assumed Contract; (xi) any environmental liabilities, debts, claims, fines, penalties, or obligations arising from conditions, facts, or circumstances first existing or occurring prior to Closing (including, without limitation, the presence of or exposure to chemical, hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis and at any time, including, without limitation, any liabilities, debts, claims, fines, penalties, or obligations arising under the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), or any other environmental, health, and safety laws; and (xii) Interests arising under or in connection with any acts, or failures to act, of any of the Debtors or any of the Debtors' predecessors, Affiliates, or Subsidiaries, including, but not limited to, Interests arising

under any theory, law, or doctrines of successor, transferee, or vicarious liability, violation of

the Securities Act, the Exchange Act, or other applicable securities laws or regulations, breach

of fiduciary duty, or aiding or abetting breach of fiduciary duty, or any similar theories under

applicable Law or otherwise.  As used in this Order, the term "Interest" shall not include the DIP

Liens and DIP Obligations.

      M.     No Successor or Other Derivative Liability.  By consummating the Transaction

pursuant to the APA, neither the Purchaser is a mere continuation of any of the Debtors or any

Debtor's estate, and there is no continuity of enterprise or otherwise or common identity between

the Purchaser, on the one hand, and any Debtor, on the other.  The Purchaser is not holding itself

out as a continuation of any Debtor.  The Purchaser is not a successor to any Debtor or any

Debtor's estate by reason of any theory of law or equity, and the Transaction does not amount to

a consolidation, merger or *de facto* merger of the Purchaser and the Debtors or any of the Debtors'

estates.  Neither the Purchaser, nor its Affiliates or their respective predecessors, designees,

successors, assigns, members, partners, principals, officers, directors, or direct or indirect

shareholders (or the equivalent thereof), in their capacities as such (collectively, the "Purchaser

Related Persons") shall assume or in any way be responsible for any obligation or liability of any

Debtor (or any affiliate of any Debtor) or any Debtor's estate, except as expressly provided in the

APA.  The sale and transfer of the Purchased Assets to the Purchaser, including the assumption

by the Debtors and assignment, transfer and/or sale to the Purchaser of any of the Purchased

Contracts, will not subject the Purchaser or any Purchaser Related Persons to any liability with

respect to the operation of the Debtors' businesses prior to the Closing or by reason of such

transfer, except that, upon the Closing, the Purchaser shall remain liable for the applicable

Assumed Liabilities.

N.    <u>Arm's-Length Sale</u>. The sale process engaged in by the Debtors and the Purchaser, including, without limitation, the Auction, was conducted in accordance with the Bidding Procedures and the Bidding Procedures Order.  The APA was negotiated, proposed, and entered into by the Sellers and the Purchaser in good faith, without collusion of any kind, and from arm's-length bargaining positions, and is substantively and procedurally fair to all parties in interest. The Debtors and the Purchaser and their respective advisors have complied, in good faith, in all material respects with the Bidding Procedures Order and the Bidding Procedures.  The Debtors and their management, board of directors, employees, agents, advisors, and representatives, and the Purchaser and its employees, agents, advisors and representatives, each acted in good faith and without collusion or fraud of any kind.  The Purchaser subjected its bid to competitive bidding in accordance with the Bidding Procedures and was designated the Successful Bidder for the Purchased Assets in accordance with the Bidding Procedures and the Bidding Procedures Order. All payments to be made by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the Transaction have been disclosed.  The form and total consideration to be realized by the Debtors under the APA constitutes fair and reasonably equivalent value, full and adequate consideration, and reasonable market value for the Purchased Assets.

O.    <u>Good Faith</u>.  The Debtors, the Purchaser and their respective counsel and other advisors have negotiated and entered into the APA and each of the transactions contemplated thereby in good faith, without collusion, from arm's-length bargaining position, and substantively and procedurally fair to all entities.  The Purchaser is a good faith purchaser and is acting in good faith within the meaning of section 363(m) of the Bankruptcy Code, and, as such, is entitled to all of the protections afforded thereby.  The Debtors were free to deal with any other party

interested in acquiring some or all of the Purchased Assets. Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Transaction, the APA, or any of the transactions contemplated thereby to be avoided or subject to monetary damages under section 363(n) of the Bankruptcy Code, or that would prevent the application of sections 363(m) of the Bankruptcy Code. The Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction. The Purchaser has not acted in a collusive manner with any person or entity. All payments to be made or caused to be made by the Purchaser and all agreements entered into by the Purchaser and the Debtors under the APA in connection with the Transaction have been disclosed and are appropriate. The APA was not entered into, and the Transaction is not being consummated, for the purpose of hindering, delaying or defrauding creditors under laws of the United States, any state, territory, possession thereof or the District of Columbia, or any other applicable law. Neither the Debtors nor the Purchaser have entered into the APA or are consummating the Transaction with any fraudulent or otherwise improper purpose.

P.     <u>No Collusion</u>. The APA was not controlled by an agreement between potential bidders within the meaning of section 363(n) of the Bankruptcy Code. The Debtors and the Purchaser have not engaged in any conduct that would cause or permit the APA or the consummation of the Sale to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code. Neither the Debtors nor the Purchaser has entered into the APA or is consummating the Sale with any fraudulent or otherwise improper purpose.

Q.     <u>Assumption and Assignment of Purchased Contracts</u>. The assumption and assignment of the Purchased Contracts is an integral part of the Transaction, is in the best interests of the Debtors and their estates and represents the valid and reasonable exercise of the

Debtors' sound business judgment.  Specifically, the assumption and assignment of the Purchased Contracts (i) is necessary to sell the Purchased Assets to the Purchaser as contemplated by the APA, (ii) allows the Debtors to sell the Purchased Assets to the Purchaser as a going concern, (iii) limits the losses suffered by counterparties to the Purchased Contracts, and (iv) maximizes the recoveries of other creditors of the Debtors by eliminating claims against the Debtors' estates that would arise from the Debtors' rejection of the Purchased Contracts. Any counterparty to any Purchased Contract that has not actually filed with the Court and served on the Objection Notice Parties (as defined in the Bidding Procedures) an Assumption and Assignment Objection, as of the date specified in the Bidding Procedures Order (as such date may have been modified or extended in accordance with the terms of the Bidding Procedures Order) is deemed to have consented to the assumption and assignment of the Contract, and to the applicable Cure Amounts.  Such counterparty shall forever be barred and estopped from objecting to the Cure Amount as the amount to cure all defaults to satisfy section 365 of the Bankruptcy Code and from asserting that any additional amounts are due or defaults exist, provided, however, that a counterparty to an Purchased Contract shall not be barred from seeking amounts on account of any defaults occurring solely between the deadline to object to the Cure Amounts set forth in the Assumption and Assignment Notice and the assumption of the contract.

R.    <u>Compliance with Section 365 of the Bankruptcy Code</u>.  The Debtors have met all requirements of section 365(b) of the Bankruptcy Code with respect to the assumption and assignment of each of the Purchased Contracts.  The Debtors and Purchaser have provided adequate assurance (within the meaning of section 365(b)(1) of the Bankruptcy Code) of cure of any default existing under any of the Purchased Contracts on or before the Closing Date.  The Purchaser has demonstrated adequate assurance of future performance of and under the

Purchased Contracts within the meaning of sections 365(b) and 365(f)(2) of the Bankruptcy Code. Pursuant to section 365(f) of the Bankruptcy Code, the Purchased Contracts shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Purchaser, notwithstanding any provision in the Purchased Contracts or other restrictions prohibiting their assignment or transfer.

S.      Property of the Estates. The Purchased Assets constitute property of the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

T.      Validity of the Transaction. The consummation of the Transaction is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including sections 105(a), 363(b), 363(f), 363(k), 363(m), 365(b) and 365(f) and all of the applicable requirements of such sections have been complied with in all respects in connection with the Transaction. As of the Closing, the sale and assignment of the Purchased Assets and the Purchased Contracts to the Purchaser will be a legal, valid and effective transfer of the Purchased Assets and the Purchased Contracts, and will vest the Purchaser with all right, title and interest of the Debtors in and to the Purchased Assets and the Purchased Contracts free and clear of all Interests (other than any Assumed Liabilities expressly assumed under, or expressly permitted by, the APA or this Order). The Debtors have full corporate or other applicable authority to execute the APA and all other documents contemplated thereby, and the Transaction has been duly and validly authorized by all necessary corporate action of the Debtors. Upon entry of this Order, other than any consents identified in the APA, no consent or approval from any other person, entity or legal authority is required to consummate the Transaction.

U.      No Sub Rosa Plan. Neither the Transaction nor the APA impermissibly restructures the rights of any of the Debtors' creditors or impermissibly dictates the terms of a

liquidating plan of reorganization of the Debtors.  Neither the Transaction nor the APA constitutes a *sub rosa* or *de facto* plan of reorganization or liquidation.

V.      No Stay of Order.  Time is of the essence to implement the APA and consummate the Transaction.  The Transaction must be approved and consummated promptly in order to preserve the value of the Purchased Assets and to maximize the value to the Debtors, their estates, their creditors and all other parties in interest and to ensure the Debtors' compliance with their obligations under their post-petition financing agreements.  The Debtors have demonstrated compelling circumstances and sound business justifications for the immediate approval and consummation of the Transaction as contemplated by the APA.  Notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d), 7062 or any applicable provisions of the Local Rules, this Order shall not be stayed and shall be effective and enforceable immediately upon entry.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      Sale Motion Granted.  The Sale Motion and the relief requested therein (to the extent not previously granted by the Court pursuant to the Bidding Procedures Order or otherwise) is GRANTED and approved as set forth herein.  The Purchaser is hereby approved as the Successful Bidder under the Bidding Procedures Order.

2.      Objections Overruled.  Unless otherwise provided for herein or in the Bidding Procedures Order, any Objections to or reservation of rights against the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled are hereby OVERRULED on the merits with prejudice.  All persons and entities that failed to timely object thereto are

deemed to consent to the relief sought therein.  All objections to the entry of this Sale Order or to the relief granted herein that were not timely filed are hereby forever barred.

3.     <u>Transaction Approved</u>.   The APA and all transactions contemplated thereby, including the Transaction, are hereby APPROVED.  The Debtors are authorized to enter into the APA (and all ancillary documents), all of the terms and conditions thereof, and all of the Transactions contemplated therein are approved in all respects, including, without limitation, any amendment to the APA that the Debtors and the Purchaser determines is necessary or desirable in connection with the Transaction.  The consummation of the Transaction is hereby approved and authorized under sections 363(b) and 365 of the Bankruptcy Code.

4.     <u>Prior Findings of Fact and Conclusions of Law</u>.  The Court's findings of fact and conclusions of law in the Bidding Procedures Order, including the record of the Bidding Procedures Hearing, and the findings of fact recited above are incorporated herein by reference. In the event that the terms of this Order and the Bidding Procedures Order are in conflict, this Order will control.

5.     <u>Adequate and Reasonable Notice.</u>  Notice of the Bidding Procedures, the Auction, the Transaction, the assumption and assignment of the Purchased Contracts pursuant to the APA, the Cure Amounts, the Sale Hearing, and all deadlines related thereto was good, sufficient, and appropriate under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006.

6.     <u>Debtors' Performance Authorized</u>.  The Debtors are hereby authorized to enter into and perform their obligations under the APA, and to take such other actions as may be necessary or desirable to effectuate the terms of the APA, including providing transition services, if needed, and other instruments or documents that may be reasonably necessary or desirable to

implement and effectuate the terms of the APA, the Transaction, or this Order, including, without limitation, deeds, assignments, stock powers, transfers of membership interests and any other instruments of transfer, without further order of the Court. The Debtors are hereby further authorized to take all other actions as may reasonably be requested by the Purchaser or otherwise for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser, possession any or all of the Purchased Assets and the Purchased Contracts, as may be necessary or appropriate for the Debtors to perform their obligations under the APA and consummate the Transaction, including, without limitation, providing transition services, without further order of the Court.

7.      The Debtors are hereby authorized and empowered to cause to be executed and filed such statements, instruments, releases and other documents with respect to the Purchased Assets that are necessary or appropriate to effectuate the APA, the Transaction, or this Order, including, as applicable, amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtors may determine are necessary or appropriate.

8.      <u>Valid Transfer and Assignment</u>.  Effective upon the Purchaser curing or providing adequate assurance that it will promptly cure any default, the sale and assignment of the Purchased Contracts and the Purchased Assets by the Debtors to the Purchaser shall constitute a legal, valid and effective transfer and assignment of the Purchased Contracts and the Purchased Assets, notwithstanding any requirement for approval or consent by any person, and will vest in the Purchaser with all right, title and interest of the Debtors and their respective estates in and to

the Purchased Contracts and the Purchased Assets, free and clear of all Interests (other than any Assumed Liabilities expressly assumed under, or expressly permitted by, the APA or this Order), pursuant to section 363(f) of the Bankruptcy Code.

9.    Free and Clear Sale.  Except to the extent specifically provided in the APA, upon the Closing Date, the Debtors shall be, and hereby are, authorized and empowered, pursuant to sections 105, 363(b), 363(f) and 363(k) of the Bankruptcy Code, to sell and transfer to the Purchaser the Purchased Assets.  The sale and transfer of the Purchased Assets to the Purchaser shall vest in the Purchaser with all right, title, and interest of the Debtors in and to the Purchased Assets free and clear of any and all Interests of any person or entity to the fullest extent permitted by applicable law (other than any Assumed Liabilities expressly assumed under, or expressly permitted by, the APA or this Order), with all such Interests to attach to the net proceeds of the Transaction ultimately attributable to the sale of the property on which such holders have an Interest, in the same order of priority, and with the same validity, force and effect that such Interests had prior to the consummation of the Transaction, subject to any rights, claims or defenses of the Debtors or their estates.  Following the Closing, no holder of any Interest on any of the Purchased Assets shall interfere with the Purchaser's use or enjoyment of any of the Purchased Assets based on or related to such Interest or any actions that the Debtors have taken or may take in their chapter 11 cases and no interested party may take any action to prevent or interfere with consummation of the Transaction.

10.    Non-Estate Property.  For the avoidance of doubt, and as provided in the Stalking Horse APA, this Order shall not, and does not, convey to Purchaser title to (i) any vehicles owned by third parties or the proceeds of the sale thereof or (ii) insurance claims receivables that are not property of the Debtors' estates.

11.     <u>Order Self-Executing</u>. The provisions of this Order authorizing the sale and transfer of the Purchased Assets free and clear of Interests (other than Assumed Liabilities expressly assumed under, or expressly permitted by, the APA or this Order) shall be self-executing, and neither the Debtors, on one hand, nor the Purchaser, on the other, shall be required to execute or file releases, termination statements, assignments, consents or other instruments in order to effectuate, consummate, or implement the provisions of this Order.  For the avoidance of doubt, on or after the Closing Date, the Debtors and the Purchaser shall be authorized, but not directed, to file any such releases, termination statements, assignments, consents or other instruments in any jurisdiction to record the release, discharge and termination of Interests on the Purchased Assets pursuant to the terms of this Order.

12.     <u>Direction to Creditors</u>.  This Order shall be (a) effective as a determination that, as of the Closing Date, all Interests on the Purchased Assets (except as otherwise expressly assumed under, or expressly permitted by, the APA ) shall be unconditionally released, discharged and terminated as to the Purchaser and the Purchased Assets; and (b) binding upon all persons and entities, including all the Debtors' creditors and any holder of an Interest on any of the Purchased Assets, and all such persons and entities are hereby authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release their respective Interests on the Purchased Assets, if any.  If any person or entity that has filed a financing statement, mortgage, mechanics lien, *lis pendens* or other document, instrument, notice or agreement evidencing any Interest on the Purchased Assets has not delivered to the Debtors on or before the Closing, in proper form for filing and executed by the appropriate parties, termination statements, releases or instruments of satisfaction that the person or entity has with respect to the Purchased Assets, the Debtors and the Purchaser are authorized to (x) execute and

file such termination statements, releases, instruments of satisfaction or other documents with respect to the Purchased Assets on behalf of the applicable person or entity, and (y) file, register or otherwise record a certified copy of this Order which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Interests on the Purchased Assets. This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, local, tribal or foreign government agency, department or office.

13. <u>Authorization of Recording Officers</u>. This Order shall be binding upon all persons and entities, including filing agents or officers, title agents or companies, recorders of mortgages or deeds, registrars, administrative agencies, governmental units or departments, secretaries of state, governmental officials and all other persons or entities that may be required by operation of law, the duties of their office or contract to accept, file, register or otherwise record or release any documents or instruments regarding the Purchased Assets or who may be required to report or insure any title or state of title in or to the Purchased Assets, (collectively, the "<u>Recording Officers</u>"). All Recording Officers are hereby authorized to (a) accept any and all documents or instruments necessary and appropriate to consummate the Transaction or to record and reflect that the Purchaser is the owner of the Purchased Assets free and clear of all Interests (other than Assumed Liabilities expressly assumed under, or expressly permitted by, the APA or this Order) and (b) strike all recorded Interests on the Purchased Assets from their records.

14. <u>Direction to Surrender the Purchased Assets</u>. All persons or entities in possession or control of any of the Purchased Assets, either presently or on or before the Closing Date, are authorized to surrender possession or control of the Purchased Assets to the Purchaser on the Closing Date.

15.    <u>No Successor Liability</u>.  The Purchaser and the Purchaser Related Persons are not

and shall not be (a) deemed a "successor" in any respect to any of the Debtors or any of their

estates as a result of the consummation of the Transaction under any theory of law or equity;

(b) deemed to have, *de facto* or otherwise, merged or consolidated with or into any of the Debtors

or any of their estates; (c) deemed to be an alter ego of or have a common identity with any of

the Debtors; (d) deemed to have a continuity of enterprise with any of the Debtors; or (e) deemed

to be a continuation or substantial continuation of any of the Debtors or any enterprise of any of

the Debtors, including (with respect to clause (a) through (e) of this paragraph) within the

meaning of any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment,

environmental, health, products liability, safety laws, or other law, doctrine rule or regulation

(including any filing requirements under any such laws, rules or regulations) with respect to the

Debtors' liability under such law, doctrine, rule or regulation including, without limitation, under

COBRA, CERCLA, the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964 (as

amended), the Age Discrimination and Employment Act of 1967 and Age Discrimination in

Employment Act, each as amended, the Americans with Disabilities Act of 1990 (as amended),

the Federal Rehabilitation Act of 1973 (as amended), and the National Labor Relations Act, 29

U.S.C. § 151, et seq.; or (f) other than any Assumed Liabilities expressly assumed under, or

expressly permitted by, the APA or this Order, be liable for (i) any environmental liabilities,

debts, claims, fines, penalties, or obligations arising from conditions, facts, or circumstances first

existing or occurring prior to Closing (including, without limitation, the presence of or exposure

to chemical, hazardous, toxic, polluting, or contaminating substances or wastes), which may be

asserted on any basis and at any time, including, without limitation, any liabilities, debts, claims,

fines, penalties, or obligations arising under CERCLA, or any other environmental, health, and

safety laws, or (ii) any liabilities, debts, claims, fines, penalties, or obligations of or required to be paid by the Debtors (A) for any taxes of any kind for any period, (B) under any labor, employment, or other law, rule, or regulation (including, without limitation, filing requirements under any such laws, rules, or regulations), or (C) under any products liability or intellectual property law or doctrine, or any other law or doctrine, with respect to the Debtors' liability under any law, rule, regulation, or doctrine.

16.     Except as expressly provided in the APA or this Order with respect to the Assumed Liabilities, the Purchaser and the Purchaser Related Persons, in such capacities, as a result of any action taken in connection with the Sale, shall not (a) assume, nor be deemed to have assumed or in any way be responsible for (i) any liability or obligation (of any kind, character, or description, whether known or unknown, asserted or unasserted, matured or unmatured, liquidated or unliquidated, disputed or undisputed, accrued or unaccrued, due or to become due, fixed, absolute, contingent or otherwise) of any of the Debtors or any of their estates or related to the Purchased Assets including, but not limited to, any Excluded Liabilities, any bulk sales law, successor or vicarious liability, liability or responsibility for any claim against any of the Debtors or against any related person of the Debtors, or any similar liability or obligation, (ii) any remaining claims (as defined in section 101(5) of the Bankruptcy Code) or liens against the Debtors or any of their predecessors or affiliates, (iii) liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to, the operation of the Purchased Assets prior to Closing, or (b) have any liability whatsoever with respect to the Debtors' (or their predecessors' or affiliates') respective businesses or operations or product lines or any of the Debtors' (or their predecessors' or affiliates') obligations based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or

based upon any theory of antitrust, environmental, successor, or transferee liability, *de facto* merger or substantial continuity, labor and employment, infringement or products liability, whether known or unknown as of such Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including, without limitation, (i) liabilities or obligations under the CERCLA or any other environmental, health, and safety laws, (ii) liabilities or obligations under ERISA, COBRA, or other similar state or local laws with respect to any pension plan, welfare plan, or other employee benefit plan, (iii) liabilities or obligations under any collective bargaining agreement or employment agreement, or (iv) any liabilities or obligations or any foreign, federal, state, or local labor, employment, or environmental law whether of similar import or otherwise by virtue of such Purchaser's purchase of any Purchased Assets or assumption of the Assumed Liabilities.  The Sale Motion and notices provided in accordance with the Bidding Procedures contain sufficient notice of such limitation in accordance with applicable law.   Except for the Purchaser's assumption of the Assumed Liabilities pursuant to the APA and this Order and claims brought by the Debtors to enforce the express terms of the APA and this Order, the transfer of the Purchased Assets and the Purchased Contracts to the Purchaser under the APA will not result in (a) the Purchaser or any Purchaser Related Person having any liability or obligation for any claim made against any of the Debtors (or their respective affiliates, together with their respective predecessors, successors, assigns, members, partners, officers, directors, principals or direct or indirect equityholders), including without limitation in respect of the Excluded Liabilities, nor in any such liability or obligation attaching to the Purchased Assets; (b) the Purchaser or any Purchaser Related Person having any liability or obligation with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff (except for setoffs exercised prior to the Petition Date), or

otherwise, directly or indirectly, any Interests or Excluded Liabilities, nor in any such liability or obligation attaching to the Purchased Assets; or (c) the Purchaser or any Purchaser Related Person having any liability or obligation to any of the Debtors.

17.     For the avoidance of doubt, except as expressly provided in the APA or this Order with respect to the Assumed Liabilities, nothing shall require the Purchaser or any Purchaser Related Person to (i) continue or maintain in effect, or assume any liability in respect of, any employee, pension, welfare, fringe benefit or any other benefit plan, trust arrangement, or other agreements to which the Debtors are a party or have any responsibility therefor, including, without limitation, medical, welfare, and pension benefits payable after retirement or other termination of employment, (ii) assume any responsibility as a fiduciary, plan sponsor, or otherwise, for making any contribution to, or in respect of the funding, investment, or administration of any employee benefit plan, arrangement, or agreement (including, but not limited to, pension plans), or the termination of any such plan, arrangement, or agreement, or (iii) hire any employees, or assume or maintain in effect, or assume any liability in respect of, any collective bargaining agreement, employment agreement, wage rate, compensation plan, or arrangement or any other terms and conditions of employment for any employees of the Debtors.

18.     Effective upon the Closing Date, all persons and entities are forever prohibited from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Purchaser or any Purchaser Related Person or their assets (including the Purchased Assets) with respect to any (a) Interest in the Purchased Assets or (b) successor, transferee, vicarious or other similar liability or theory of liability, including (i) commencing or continuing any action or other proceeding pending or threatened, in any manner or place, that does not comply with, or is inconsistent with,

the provisions of this Order or other orders of the Court or the agreements or actions contemplated or taken in respect hereof or thereof; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any Interest; (iv) asserting any setoff (except for setoffs exercised prior to the Petition Date), right of subrogation; or (v) revoking, terminating or failing or refusing to renew any license, permit or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with the Purchased Assets.

19.    <u>Assumption and Assignment of the Purchased Contracts</u>.  Under sections 105(a), 363 and 365 of the Bankruptcy Code, and subject to and conditioned upon the closing of the Transaction, the Debtors' assumption and assignment of the Purchased Contracts to the Purchaser free and clear of all Interests (other than any Assumed Liabilities expressly assumed under, or expressly permitted by, the APA or this Order) pursuant to the terms of the APA, as modified by the terms of any amendments reached by the Purchaser and the respective counterparty, is hereby approved, and the Debtors are hereby authorized and directed to assume and assign the Purchased Contracts to the Purchaser in accordance with the APA and this Order, and the requirements of sections 365(b) and 365(f)(2) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.  Any counterparty to a Purchased Contract that has not filed with the Court an objection to the assumption or assignment of such Purchased Contract as of the date specified in the Bidding Procedures Order is deemed to have consented to such assumption and assignment.

20.    Upon the Debtors' assumption and assignment of the Purchased Contracts to the Purchaser, each applicable counterparty shall be forever barred, estopped, and permanently enjoined from (i) raising or asserting against the Debtors, the Purchaser, or their respective property, any assignment fee, default, breach, claim, pecuniary loss, liability or obligation

(whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, known or unknown, liquidated or unliquidated senior or subordinate), counterclaim, defense, setoff or any other matter arising under or out of, in connection with or in any way related to, the Purchased Contracts existing prior to or as of the Closing Date or arising by reason of the Closing, or (ii) taking any other action against the Purchaser as a result of any Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the Purchased Contracts based on acts or occurrences existing prior to or as of the Closing Date or arising by reason of the Closing.  Each Counterparty hereby is also forever barred, estopped, and permanently enjoined from (A) asserting against the Debtors, the Purchaser, or the property of any of them, any default or claim arising out of any indemnity or other obligation or warranties for acts or occurrences arising prior to or existing as of the Closing Date and (B) imposing or charging against the Purchaser or the Purchaser Related Persons any rent accelerations, assignment fees, increases, or any other fees as a result of the Debtors' assumption and assignment of the Purchased Contracts, provided, however, that a counterparty to any Purchased Contract shall not be barred from seeking amounts on account of any defaults occurring solely between the deadline to object to the Cure Amounts set forth in the Assumption and Assignment Notice and the assumption of the contract.

21.     Upon the Debtors' assumption and assignment of the Purchased Contracts to the Purchaser, the Purchaser shall be fully and irrevocably vested with all right, title and interest of the Debtors in and to the Purchased Contracts and the Purchased Contracts shall be deemed to be valid and binding and in full force and effect and enforceable in accordance with their terms for the benefit of the Purchaser, as applicable, notwithstanding any provision in any of the Purchased Contracts that prohibits, restricts, or conditions such assignment or transfer.  The Debtors'

assumption and assignment of the Purchased Contracts to the Purchaser shall not constitute a default under or a termination of any Purchased Contract.

22.    <u>Cure Amounts</u>.  Any defaults or other obligations under the Purchased Contracts shall be deemed cured by the Purchaser's payment or other satisfaction of the Cure Amounts, if any, associated with the Purchased Contracts.

23.    <u>Assumption and Assignment Objections</u>.    Except as provided herein, all Assumption and Assignment Objections to the Debtors' calculation of Cure Amounts with respect to any of the Purchased Contracts have been overruled, withdrawn, waived, settled or otherwise resolved.  Any Assumption and Assignment Objections as to applicable Cure Amounts that have not been resolved by the parties may be heard at a later date as set by the Court.  The pendency of a dispute relating to a particular Purchased Contract shall not prevent or delay the assumption or assignment of any other Purchased Contract or the closing of the Transaction.  To the extent a counterparty to any of the Purchased Contracts fails to timely object to the Cure Amounts for any Purchased Contract in accordance with the Bidding Procedures Order, such Cure Amounts shall be deemed to be finally determined and any such counterparty shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Amounts at any time.

24.    <u>Adequate Assurance</u>.  The Purchaser has provided adequate assurance of future performance under the Purchased Contracts within the meaning of sections 365(b) and 365(f)(2)(B) of the Bankruptcy Code.  Any Assumption and Assignment Objections related to the adequate assurance of future performance by the Purchaser that have not been  withdrawn, waived or settled and all reservations of rights included in such objections are hereby overruled on the merits with prejudice.  All other requirements and conditions under sections 363 and 365

of the Bankruptcy Code for the Debtors' assumption and assignment of the Purchased Contracts to the Purchaser have been satisfied.

25.    <u>Anti-Assignment Provisions Unenforceable</u>.    No section or provision of any Purchased Contract that purports to (a) prohibit, restrict or condition the assignment of a Purchased Contract, including, but not limited to, the conditioning of such assignment on the consent of any counterparty to such Contract; (b) authorize the termination, cancellation or modification of a Purchased Contract based on the filing of a bankruptcy case, the financial condition of the Debtors or similar circumstances; (c) declare a breach or default as a result of a change in control in respect of the Debtors; or (d) provide for additional payments, profit sharing, penalties, conditions, renewals, extensions, charges or other financial accommodations in favor of the counterparty to a Purchased Contract, or modification of any term or condition upon the assignment of a contract or the occurrence of the conditions set forth in subsection (b) above, shall have any force or effect, and any such section or provision constitutes an unenforceable anti-assignment provision under section 365(f) or 365(l), as applicable, of the Bankruptcy Code or is otherwise unenforceable under section 365(e) of the Bankruptcy Code.

26.    <u>No Fees for Assumption and Assignment.</u>    There shall be no rent accelerations, assignment fees, increases or any other fees charged to the Purchaser, or any of their respective successors or assigns, or the Debtors as a result of the assumption and assignment of the Purchased Contracts.

27.    <u>Direction to Purchased Contract Counterparties</u>.    All counterparties to Purchased Contracts assigned to the Purchaser in accordance with the terms of this Order and the APA shall cooperate with, and expeditiously execute and deliver upon, any reasonable request of the Purchaser, and shall not charge the Purchaser for any instruments, applications, consents or other

documents that may be required or requested by any governmental unit or other public or quasi-public authority or other party to effectuate the applicable transfers in connection with the Debtors' assumption and assignment of the Purchased Contracts to the Purchaser.

28.    <u>Oracle America, Inc.</u> Notwithstanding anything to the contrary herein, (1) the issues raised in section A through D of the limited objection filed by Oracle America, Inc. ("<u>Oracle</u>") shall not be deemed resolved and Oracle reserves its right to be heard on such issues at the adjourned Cure Objection hearing; and (2) any assumed and assigned Oracle agreements shall not be subject to any transitional services contemplated between the Debtors and the Purchaser under the APA.

29.    <u>JDK Delivery LLC and AK Enterprises LLC</u>. Nothing in this Order or in the Stalking Horse APA shall affect or impair the rights of JDK Delivery LLC ("<u>JDK</u>") and AK Enterprises LLC ("<u>AK Enterprises</u>") under the terms of the Vehicle Return Agreement between the Debtors and JDK and AK Enterprises.

30.    <u>Global Settlement</u>.  The Committee's *Objection to the Sale* [Docket No. 213], the Committee's *Emergency Motion for an Order Extending the Challenge Period* [Docket No. 216] (the "<u>Challenge Motion</u>"), the Committee's *Motion To Shorten Notice Period With Respect the Challenge Motion* [Docket No. 217] and the *Opposition to the Challenge Motion* by the DIP Lenders [Docket No. 237] are each resolved and/or withdrawn, as applicable, pursuant to the terms of the global settlement between the Debtors, the Committee, the DIP Lenders and the Purchaser on the terms as set forth on the record at the Sale Hearing (the "<u>Global Settlement</u>"). The terms of the Global Settlement are hereby approved by this Order.

31.    <u>Licenses and Permits</u>.  To the extent provided in the APA and available under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any

license, permit, registration and any other governmental authorization or approval of the Debtors with respect to the Purchased Assets and the Purchased Contracts, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Purchaser as of the Closing Date.  To the extent any license or permit necessary for the operation of the Purchased Assets is determined not to be an executory contract that may be assumed and assigned under section 365 of the Bankruptcy Code, the Purchaser shall apply for and obtain any necessary license or permit promptly after the Closing Date, and such license or permit of the Debtors shall remain in place for the Purchaser's benefit until a new license or permit is obtained (or, in the case of licenses or permits of Debtors of which the assignment to Purchaser is pending as of the Closing Date (whether pursuant to a notice period that has not expired as of the Closing Date or a required consent from an applicable governmental authority that has not been received as of the Closing Date), shall transfer to Purchaser upon the expiration of such notice period or the receipt of such consent).

32.    To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Purchased Assets sold, transferred or conveyed to the Purchaser on account of the filing or pendency of these chapter 11 cases or the consummation of the Transaction.

33.    <u>Fair Consideration</u>.  The consideration provided by the Purchaser for the Purchased Assets under the APA shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, the Uniform Voidable Transactions Act, and any other applicable laws of the United States, any state, territory, possession, or the District of Columbia.  The APA was not entered into, and the Transaction is not being consummated, for the purpose of hindering,

delaying, or defrauding creditors of the Debtors under the Bankruptcy Code or under the laws of

the United States, any state, territory, possession thereof, or the District of Columbia, or any other

applicable law.  Neither the Sellers nor the Purchaser have entered into the APA, any Transaction

Document, or any agreement contemplated thereby or are consummating the Transaction with any

fraudulent or otherwise improper purpose.  No other person or entity or group of persons or entities

has offered to purchase the Purchase Assets for an amount that would provide greater value to the

Debtors and their estates than the value provided by the Purchaser. This Court's approval of the

Sale Motion and the APA are in the best interests of the Debtors, their estates, their creditors, and

all other parties in interest.

34.    <u>Good-Faith Purchaser</u>.    The Purchaser is a good-faith Purchaser within the

meaning of section 363(m) of the Bankruptcy Code and is entitled to all of the protections afforded

thereby.  The Transaction and the APA are undertaken and entered into by the Debtors and the

Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the

Bankruptcy Code.  As such, the reversal or modification on appeal of this Order approving the

Transaction under subsection (b) or (c) of the Bankruptcy Code shall not affect the validity of the

Transaction, whether or not the Purchaser knew of the pendency of the appeal, unless this Order

and the Transaction were duly and properly stayed pending appeal.

35.    <u>Section 363(n) of the Bankruptcy Code</u>.  The Transaction approved by this Sale

Order is not subject to avoidance and no party is entitled to any recovery of damages pursuant to

section 363(n) of the Bankruptcy Code or otherwise.

36.    <u>Bulk Sales</u>.  No bulk sales law, bulk transfer law or similar law of any state or

other jurisdiction shall apply in any way to the Transaction.

37.    <u>Amendments</u>.  Except in the case of a material amendment, the APA and any

related agreements may be amended, supplemented, or otherwise modified by the parties thereto and in accordance with the terms thereof, without further action or order of the Court; provided, that, any such amendment, supplement, or modification shall require the prior written consent of the Purchaser and shall not have a material adverse effect on the Debtors' estates.  Any material amendments shall require approval of this Court.  The Committee shall be provided with prior written notice of any amendments.

38.    <u>Binding Order</u>.  This Order and the APA shall be binding upon and govern the acts of all persons and entities, including without limitation, the Debtors, the Purchaser, any of their respective successors and permitted assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for the Debtors' estates or any trustee appointed in a chapter 7 case of any of the Debtors if any of these chapter 11 cases is converted from a case under chapter 11 to a case under chapter 7, all creditors of any and all of the Debtors (whether known or unknown), all counterparties to any Purchased Contracts and all Recording Officers.  Neither the Transaction nor the APA shall be subject to rejection or avoidance under any circumstances.  This Order and the APA shall inure to the benefit of the Debtors, their estates, their creditors, the Purchaser, and their respective successors and assigns.  Nothing contained in any chapter 11 plan confirmed in the chapter 11 cases, any order confirming any such chapter 11 plan, or any order approving wind-down or dismissal of the chapter 11 cases or any subsequent chapter 7 cases shall conflict with or derogate from the provisions of APA (including any related agreements), or this Order, and to the extent of any conflict or derogation between this Order or the APA and such future plan or order, the terms of this Order and the APA, including any related agreements, shall control.

39.    <u>Failure to Specify Provisions; Conflicts</u>.  The failure to specifically include or

mention any particular provision of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtors and the Purchaser that the APA be authorized and approved in its entirety, including any amendments thereto as may be made by the parties thereto in accordance with the terms thereof and this Order.  Likewise, all of the provisions of this Order are nonseverable and mutually dependent.

40.     _Further Assurances_.  From time to time, as and when requested, and subject to the terms of the APA, all parties to the Transaction shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as the requesting party may reasonably deem necessary or desirable to consummate the Transaction, including such actions as may be necessary to perfect, confirm, record or otherwise vest in the Purchaser its right, title and interest in and to the Purchased Assets and the Purchased Contracts.

41.     _Automatic Stay_.  The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified to the extent necessary, without further order of the Court, to allow the Purchaser to deliver any notice provided for in the APA and to take any and all actions permitted or required under the APA in accordance with the terms and conditions thereof.

42.     _No Stay of Order_.  Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062 and any applicable Local Rules, this Order shall not be stayed and shall be effective and enforceable immediately upon entry.  The provisions of this Order shall be self-executing.  Time is of the essence in implementing the APA and closing the Transaction.

43.     _Governing Terms_.  To the extent there is any inconsistency between the terms of this Order and the terms of the APA, the terms of this Order shall govern.

44.     _Retention of Jurisdiction_.  This Court shall retain jurisdiction to (a) interpret,

implement and enforce the terms and provisions of this Order and the APA, including all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith; and (b) decide any issues or disputes concerning or related to this Order, the APA, or the rights and duties of the parties hereunder or thereunder, including the interpretation of the terms, conditions and provisions hereof and thereof, and the status, nature and extent of the Purchased Assets and the Purchased Contracts.

45.    <u>Release</u>.  Effective as of the Closing, other than with respect to obligations arising under this Sale Order, the Global Settlement or the APA, the Debtors irrevocably, knowingly, and voluntarily release, discharge, and forever waive and relinquishes all claims, demands, Liabilities, losses, debts, costs, fees, expenses, penalties, actions, covenants, suits, judgments, damages, defenses, affirmative defenses, setoffs, counterclaims, actions, obligations, and causes of action of whatever kind, character or nature, whether known or unknown, suspected or unsuspected, in contract, contingent or absolute, matured or unmatured, liquidated or unliquidated, direct or indirect, at Law or in equity, derivative or otherwise, whether known or unknown, which the Debtors have, may have, or may assert now or in the future against Purchaser arising out of, based upon, or resulting from any transaction, event, circumstance, action, failure to act, occurrence, or omission of any sort or type, and in connection with the Sale, the Stalking Horse APA (including the negotiation thereof) or any other related act or omission, transaction, agreement, event, or other occurrence which occurred, existed, was taken, permitted or begun prior to the Closing.

46.    <u>Other Provisions</u>.  The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order.

47.    The requirements set forth in Bankruptcy Rules 6003(b), 6004, and 6006 and

Local Rule 9013-1 have been satisfied or otherwise deemed waived.

**Dated: December 17th, 2024**
**Wilmington, Delaware**

**CRAIG T. GOLDBLATT**
**UNITED STATES BANKRUPTCY JUDGE**