## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FLUID MARKET INC., *et al.*,[1] | ) | Case No. 24-12363 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |

**Objection Deadline: August 22, 2025 at 4:00 p.m. (ET)**
**Hearing Date: September 5, 2025 at 3:00 p.m. (ET)**

### DEBTORS' MOTION (I) TO CONVERT CASES FROM CHAPTER 11 TO CHAPTER 7 OF THE BANKRUPTCY CODE, AND (II) FOR RELATED RELIEF

The above-captioned debtors and debtors in possession (the "Debtors") hereby file this motion (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), converting these cases from chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") to chapter 7 of the Bankruptcy Code and granting related relief. In support of the Motion, the Debtors respectfully submit as follows:

### PRELIMINARY STATEMENT

1. The Debtors have determined that a plan of liquidation in these chapter 11 cases is not feasible in light of the Debtors' estimate of administrative and priority claims, the value of their remaining assets, the limited prospect of future recoveries to the estates, and the lack of cash to fund a further wind down. Under the circumstances as described more fully herein, the Debtors request that the Court grant the Motion to convert these cases from chapter 11 to chapter 7 of the Bankruptcy Code and grant related relief. The Debtors believe such relief is in the best interest of their estates and stakeholders.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Fluid Market Inc. (1365) and Fluid Fleet Services, LLC (5994). The Debtors' service address is 3827 Lafayette St., Suite #149, Denver, CO 80205.

**JURISDICTION AND VENUE**

2.      The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory and rule predicates for the relief sought herein are section 1112(a) of the Bankruptcy Code and Rules 1017(f) and 9013 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**BACKGROUND**

5.      On October 16, 2024 (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors have continued in the possession of their property and have continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.   No trustee or examiner has been appointed in the Debtors' chapter 11 cases.

On November 4, 2024, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee")..

6.    The Debtors operated and managed a technology-based, peer-to-peer truck-sharing platform across the United States with a fleet of nearly 5,500 vehicles owned by their nondebtor affiliates or third-party owners ("FVIPs") who have elected to put their vehicles on the Debtors' platform, https://www.fluidtruck.com/.

7.    Faced with severely constrained liquidity, and after multiple failed efforts to raise additional capital or debt financing, the Debtors, in an exercise of their business judgment, commenced these Chapter 11 Cases with the intention of pursuing a prompt sale of their assets to preserve their business as a going concern and maximize value for all their stakeholders.

8.    The factual background regarding the Debtors, including their business and the events precipitating their chapter 11 filings, is set forth in detail in the *Declaration of T. Scott Avila in Support of the Debtors' Chapter 11 Petitions and First Day Relief* [Docket No. 13] (the "First Day Declaration") which is fully incorporated herein by reference.

9.    The Debtors filed their statements of financial affairs and schedules of assets and liabilities (collectively, the "Schedules") with the Court on November 27, 2024. Certain of the Schedules were amended on December 11, 2024. The statutory meeting of creditors under 11 U.S.C. § 341 was held and continued to a date to be determined on November 20, 2024 and December 12, 2024.

A.    **The Sale**

10.    On October 30, 2024, the Debtors filed the *Debtors' Motion For Entry Of Orders: (I)(A) Approving Bidding Procedures For The Sale Of Substantially All Of Debtors'*

*Assets, (B) Authorizing The Debtors To Enter Into The Stalking Horse Agreement And To Provide Bid Protections Thereunder, (C) Scheduling An Auction And Approving The Form And Manner Of Notice Thereof, (D) Approving The Assumption And Assignment Procedures And (E) Scheduling A Sale Hearing And Approving The Form And Manner Of Notice Thereof; (II)(A) Approving The Sale Of Substantially All Of The Debtors' Assets Free And Clear Of Liens, Claims, Interests And Encumbrances And (B) Approving The Assumption And Assignment Of Executory Contracts And Unexpired Leases; And (III) Granting Related Relief* [Docket No. 74 ] (the "Sale Motion") seeking, among other things, entry of an order (the "Sale Order") approving the proposed sale (the "Sale") of substantially all of the Debtors' assets (the "Purchased Assets") pursuant to the terms of that certain asset purchase agreement dated as of October 30, 2024 between the Debtors and Kingbee Rentals, LLC ("Kingbee").

11.     On November 20, 2024, the Court entered an order [Docket No. 161] (the "Bidding Procedures Order") approving certain bidding procedures (the "Bidding Procedures") to be employed by the Debtors in connection with the marketing of the Purchased Assets.  The Debtors did not receive any Qualifying Bids other than the one submitted by Kingbee. In accordance with the Bidding Procedures and the Bidding Procedures Order, the Debtors filed a notice deeming Kingbee the Successful Bidder and cancelling the Auction. *See*, Docket No. 207.

12.     Following a hearing on December 13, 2024 (the "Sale Hearing"), the Court entered the Sale Order [Docket No. 259].  The Sale closed effective as of December 20, 2024 (the "Closing Date").

13.     On December 20, 2024, the Debtors filed the *Debtors' Emergency Motion for Interim and Final Orders (I) Approving Transition Services Agreement Effective as of the Closing Date and (II) Granting Related Relief* [Docket No. 271] (the "TSA Motion"). The TSA

Motion sought interim and final approval of the *Transition Services Agreement* between the Debtors and Kingbee (the "TSA") pursuant to which Kingbee would provide, *inter alia*, information regarding the location of, and asserted vendor repair claims related to, Terminating FVIPs' (as defined in the TSA Motion) vehicles to assist Terminating FVIPs' efforts to obtain possession of their vehicles.

14. On December 27, 2024, the Court entered an order approving the TSA Motion on an interim basis [Docket No. 290]. On January 17, 2025, the Court entered an order approving the TSA on a final basis [Docket No. 321] (the "Final TSA Order").

**B.      The Global Settlement**

15. During the course of these cases, the Debtors engaged in good faith, arm's length negotiations with the Committee, the Debtors' postpetition lenders (the "DIP Lenders") and Kingbee designed to resolve disputes in these cases on a global basis. In addition to objecting to the Sale Motion, the Committee filed its *Emergency Motion of the Official Committee of Unsecured Creditors for an Order Extending the Challenge Period* [Docket No. 216] (the "Challenge Motion"). The parties ultimately reached a global agreement (the "Global Settlement"), the principal terms of which were stated on the record at the Sale Hearing and approved by the Court. The Global Settlement paved the way for approval of the Sale and resolved the Challenge Motion.

16. Among other things, the Global Settlement (i) excludes certain segregated funds held by the Debtors in the approximate aggregate amount of $3.9 million relating to (x) vehicle sale proceeds and (y) damage claim proceeds or insurance claim proceeds from the definition of Purchased Assets ((x) and (y) collectively, the "Segregated Funds")[2], (ii) provides for the Debtors to analyze and reconcile competing interests in the Segregated Funds (the

---

[2] The Global Settlement does not affect Kingbee's right to receive proceeds otherwise included as Purchased Assets.

"Reconciliation"), (iii) requires the Debtors to share the Reconciliation with the Committee for comment, (iv) further provides for the Debtors to propose a methodology for the distribution of the Segregated Funds to the owners thereof (the "Distribution Methodology"), and (v) requires the Debtors to file a motion seeking approval of the Reconciliation and Distribution Methodology (the "Reconciliation Motion"), provided, however, that the Debtors are not required to risk administrative insolvency or engage in extensive litigation in prosecuting the Reconciliation Motion.

17.     The Debtors filed the Reconciliation Motion on May 29, 2025 [Docket No. 418] and a supplemental reconciliation motion [Docket No. 474] (the "Supplemental Motion", together with the Reconciliation Motion, the "Reconciliation Motions") on July 3, 2025.  The Court entered orders (the "Reconciliation Orders") approving the Reconciliation Motions on June 23, 2025 [Docket No.458] and July 17, 2025 [Docket No. 494], respectively. The Debtors are in the process of making the payments authorized under the Reconciliation Orders and intend to continue processing the payments through and including the Conversion Effective Date.

18.     The funds to be distributed include approximately $300,000 in funds that would otherwise be paid over to the Debtors' former CEO and General Counsel or entities controlled by or through them (collectively, the "Founder Claimant Funds"). Pursuant to the Reconciliation Orders, the Founder Claimant Funds would not be distributed for a period of sixty (60) days after the date entry of each Reconciliation Order (the "Holding Period"), which period the Court may extend upon a motion for such funds to be held pending a determination as to whether estate claims or causes of action will be pursued against such persons or for other cause, filed on or before the date of expiration of the Holding Period. The Committee filed a motion to

extend the Holding Period (the "<u>Motion to Extend</u>") on August 8, 2025 [Docket No. 523].  The

Motion to Extend will be heard before the hearing on this Motion as the Motion to Extend should

be resolved prior to the Conversion Effective Date.

19.     The Debtors lack the ability and funds to propose a feasible liquidating

chapter 11 plan. The Global Settlement also contemplated that the Debtors would file this

Motion promptly after they filed the Reconciliation Motion.  With the Reconciliation Motions

now filed, and the Reconciliation Orders entered, the time has come for these cases to be

converted to chapter 7 and allow a chapter 7 trustee to pursue any estate causes of action and

complete the Debtors' wind-down process.

## RELIEF REQUESTED

20.     The Debtors respectfully request that the Court enter an order, (a) pursuant

to section 1112(a) of the Bankruptcy Code, converting these cases to cases under chapter 7 of the

Bankruptcy Code effective as of fourteen (14) days from the later of (i) the entry of the Proposed

Order and (ii) the entry of an order disposing of or otherwise resolving the Motion to Extend (the

"<u>Conversion Effective Date</u>"), and (b) discharging the Debtors' claims and noticing agent

retained in these cases.

## BASIS FOR RELIEF

21.     Section 1112(a) of the Bankruptcy Code governs the voluntary conversion

from chapter 11 to chapter 7.  Section 1112(a) provides that a debtor may convert a chapter 11

case to a case under chapter 7 at any time as of right. Specifically, section 1112(a) of the

Bankruptcy Code states:

> The debtor may convert a case under this chapter to one under chapter 7 of
> this title unless —

   (1)  the debtor is not a debtor in possession;

   (2)  the case originally was commenced as an involuntary case under this chapter; or

   (3)  the case was converted to a case under this chapter other than on the debtor's request.

  22.  Section 1112(a), therefore, gives a chapter 11 debtor the right to convert to chapter 7 unless one of the enumerated exceptions in section 1112(a)(1)-(3) is applicable. *See, e.g.*, *In re Dieckhaus Stationers of King of Prussia, Inc.*, 73 B.R. 969, 971 (Bankr. E.D. Pa. 1987) (stating that section 1112(a) "gives a debtor in possession an absolute right to convert, unless the case is governed by one of the enumerated exceptions"); *Abbott v. Blackwelder Furniture Co.*, 33 B.R. 399, 401 (W.D.N.C. 1983) ("Congress provided the Chapter 11 debtor with the absolute right to accomplish voluntary conversion to a Chapter 7 liquidation without Court approval."); *see also* Fed. R. Bankr. P. 1017(f)(1) and 1017(f)(2) (conversion under section 1112(a) is requested by motion under Bankruptcy Rule 9013 but is not to be treated as a contested matter under Rule 9014).

  23.  In these chapter 11 cases, none of the enumerated exceptions under section 1112(a) of the Bankruptcy Code apply:  (1) the Debtors are debtors in possession under sections 1107 and 1108 of the Bankruptcy Code; (2) these cases were commenced by the filing of voluntary chapter 11 petitions; and (3) these cases were not converted to chapter 11 from another chapter of the Bankruptcy Code. Thus, the Debtors are entitled, as a matter of right, to convert these cases to cases under chapter 7 of the Bankruptcy Code.

  24.  In addition to their absolute legal right to convert these chapter 11 cases to chapter 7, the Debtors believe that converting these cases is in the best interest of the Debtors' estates and creditors.   The Debtors continue to incur administrative expenses and have insufficient unencumbered cash to fund the obligations necessary to successfully prosecute

confirmation of a chapter 11 plan. Accordingly, the Debtors respectfully request that the Court

enter an order converting these cases from chapter 11 to chapter 7 of the Bankruptcy Code.

## MONTHLY AND FINAL FEE APPLICATIONS

25.     The Debtors anticipate that, before the date of the hearing on this Motion,

all professionals of the Debtors and the Committee (the "Estate Professionals") will have filed

their final fee applications for fees and expenses incurred ("Estate Professional Fees"), and to be

incurred, through the Conversion Effective Date.   The Debtors expect to pay all Estate

Professional Fee prior to the Conversion Effective Date.

## DISCHARGE OF NOTICING AND CLAIMS AGENT

26.     On October 18, 2024, the Court entered an order [Docket No. 46]

authorizing the Debtors to retain Epiq Corporate Restructuring, LLC as their claims and noticing

agent. Upon the conversion of these chapter 11 cases to chapter 7, retaining a claims and noticing

agent will be at the discretion of the chapter 7 trustee appointed to administer the chapter 7 cases.

Accordingly, the Debtors request authorization to discharge Epiq from providing any further

services after the Conversion Effective Date.

## NOTICE

27.     The Debtors will provide notice of this motion to:  (a) the U.S. Trustee ;

(b) the Committee; (c) Kingbee; (d) the United States Attorney's Office for the District of

Delaware; (e) the Internal Revenue Service; (f) the state attorneys general for all states in which

the Debtors conduct business; (g) any party that requests service pursuant to Bankruptcy Rule

2002; and (h) all known creditors of the Debtors (for whom identifying information and

addresses are available to the Debtors). The Debtors submit that, in light of the nature of the

relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

28.    No prior motion for the relief requested herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an order substantially in the form attached hereto converting these cases from chapter 11 to chapter 7 of the Bankruptcy Code and grant the Debtors such additional relief as necessary and appropriate.


Dated: August 8, 2025                    **PACHULSKI STANG ZIEHL & JONES LLP**


*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware  19899 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:   (302) 652-4400
Email: ljones@pszjlaw.com
           dbertenthal@pszjlaw.com
           tcairns@pszjlaw.com

*Counsel to the Debtors and Debtors in Possession*