**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

---------------------------------------------------------------- x
: 
In re: : Chapter 11
:
YELLOW CORPORATION, *et al.*,[1] : Case No. 23-11069 (CTG)
:
              Debtors. : (Jointly Administered)
:
---------------------------------------------------------------- x

# THE FUNDS' MOTION FOR PARTIAL SUMMARY JUDGMENT

| | | |
|---|---|---|
| Mark D. Collins<br>Cory D. Kandestin<br>**RICHARDS, LAYTON &<br>FINGER, P.A.**<br>One Rodney Square<br>920 North King Street<br>Wilmington, DE 19801<br>Telephone: (302) 651-7700<br>Facsimile: (302) 651-7701 | Dennis F. Dunne<br>(admitted *pro hac vice*)<br>**MILBANK LLP**<br>55 Hudson Yards<br>New York, NY 10001<br>Telephone: (212) 530-5000<br>Facsimile: (212) 530-5219 | Andrew M. Leblanc<br>(admitted *pro hac vice*)<br>Erin E. Dexter<br>(admitted *pro hac vice*)<br>Melanie Westover Yanez<br>(admitted *pro hac vice*)<br>Riah Kim<br>(admitted *pro hac vice*)<br>**MILBANK LLP**<br>1850 K St. NW, Suite 1100<br>Washington, DC 20006<br>Telephone: (202) 835-7500<br>Facsimile: (202) 263-7586 |

*Counsel for the Funds*

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1
STATEMENT OF FACTS ....................................................................................................... 2
      I.      Yellow Withdraws from the Funds and Liquidates ................................................. 2
      II.     The Debtors' Withdrawal Liability ........................................................................ 2
      III.    The Courts' Prior Rulings ....................................................................................... 3
LEGAL STANDARD ............................................................................................................... 4
ARGUMENT ............................................................................................................................. 5
      I.      MEPP Claims Should Be Allowed in Amounts Reflecting Accelerated
            Annual Payments .................................................................................................... 5
           A.     The Bankruptcy Petitions Automatically Accelerated the Principal
                Amount of the Debtors' Obligations ............................................................ 5
           B.     The Claims Must Not be Discounted Twice ................................................ 9
CONCLUSION .......................................................................................................................... 9

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)................................................................................................................4

*In re B456 Sys., Inc.*,
   No. 12-12859 (KJC), 2017 WL 6603817 (Bankr. D. Del. Dec. 22, 2017)............................7, 8

*Claybrook v. AutoZone Tex., L.P. (In re Am. Remanufacturers, Inc.)*,
   451 B.R. 349 (Bankr. D. Del. 2011) .......................................................................................7

*EBC, Inc. v. Clark Bldg. Sys., Inc.*,
   618 F.3d 253 (3d Cir. 2010).....................................................................................................4

*In re Glob. Indus. Techs., Inc.*,
   2013 WL 587366 (Bankr. W.D. Pa. Feb. 13, 2013) ................................................................7

*HSBC Bank USA, Nat. Ass'n v. Calpine Corp.*,
   2010 WL 3835200 (S.D.N.Y. Sept. 15, 2010).........................................................................7

*IUE AFL-CIO Pension Fund v. Barker & Williamson, Inc.*,
   788 F.2d 118 (3d Cir. 1986).....................................................................................................6

*JELD-WEN, Inc. v. Van Brunt (In re Grossman's Inc.)*,
   607 F.3d 114 (3d Cir. 2010).....................................................................................................5

*In re Manville Forest Prods. Corp.*,
   43 B.R. 293 (Bankr. S.D.N.Y. 1984).......................................................................................7

*In re Oakwood Homes Corp.*,
   449 F.3d 588 (3d Cir. 2006)..............................................................................................6, 7, 9

*In re Ridgewood Apartments of DeKalb County, Ltd.*,
   174 B.R. 712 (Bankr. S.D. Ohio 1994)...................................................................................7

**Statutes**

11 U.S.C. § 365................................................................................................................................8

11 U.S.C. § 502......................................................................................................................4, 7, 9

29 U.S.C. §§ 1381(a) .....................................................................................................................6

29 U.S.C. §§ 1383 (e) ....................................................................................................................6

29 U.S.C. § 1399......................................................................................................................6, 8

29 U.S.C. § 1401.........................................................................................................................6

**Other Authorities**

Fed. R. Civ. P. 56....................................................................................................................1, 4

Fed. R. Bankr. P. 7056................................................................................................................1

Fed. R. Bankr. P. 9014................................................................................................................1

The Central Pennsylvania Teamsters Pension Fund Defined Benefit Plan ("Central PA Teamsters"), the International Brotherhood of Teamsters Union No. Local 710 Pension Fund ("Teamsters Local 710"), the New England Teamsters Pension Fund ("NETTI"), the Teamsters Joint Council No. 83 of Virginia Pension Fund ("Virginia Teamsters"), and the holder of the claims of the Teamsters Local 641 Pension Plan[2] ("Teamsters Local 641" and, together with Central PA Teamsters, Teamsters Local 710, NETTI, and Virginia Teamsters, the "Funds"), by and through their undersigned counsel, hereby move this Court pursuant to Federal Rule of Civil Procedure 56, and Federal Rules of Bankruptcy Procedure 7056 and 9014, for partial summary judgment (the "Motion").

## PRELIMINARY STATEMENT

1. By this Motion, the Funds seek summary judgment that the Funds' claims should be allowed in amounts reflecting the accelerated annual payments of withdrawal liability (the "Annual Payments") the Debtors owe to each Fund.

2. At the moment the Debtors filed for bankruptcy, the full principal amount of the Debtors' withdrawal liability—like any other prepetition obligation owed by a debtor—was accelerated and became due. This is what happens to prepetition claims by operation of law when a debtor files a bankruptcy petition. Accordingly, while the debate thus far in these cases regarding whether the withdrawal liability claims of multiemployer pension funds ("MEPPs") should be accelerated or discounted to present value has centered around questions of "default"—whether the Debtors are in default, whether any MEPP declared a default, and whether any such default raises *ipso facto* questions—these inquiries are unnecessary. The Debtors owed withdrawal liability to the Funds prepetition. The principal amount of prepetition claims is accelerated when

---

[2] A notice of transfer of Teamsters Local 641's proofs of claim was filed at Dkt. No. 4965.

a debtor files for bankruptcy. The Debtors' "withdrawal liability"—which this Court has determined to be the Annual Payments owed to each MEPP—has been accelerated.

3. For the reasons discussed herein, the Funds respectfully request entry of summary judgment declaring that the Debtors' withdrawal liability obligations to the Funds were accelerated as of the Petition Date.

## STATEMENT OF FACTS

4. Below, the Funds set forth the material facts relevant to the issues on which they seek summary judgment.

### I. Yellow Withdraws from the Funds and Liquidates

5. In July 2023, Yellow permanently reduced its workforce and ceased operations, which "amounted to a withdrawal from [the MEPPs]." *Memorandum Opinion* [Dkt. No. 2765] at 1. On August 6, 2023, the Debtors commenced these cases, intending to liquidate. On November 22, the Debtors obtained approval to solicit votes on a plan of liquidation. *See Order Approving the Adequacy of the Disclosure Statement* [Dkt. No. 5024].

### II. The Debtors' Withdrawal Liability

6. The Funds filed proofs of claim reflecting the Debtors' withdrawal liability to each Fund. On January 26 and March 13, 2024, the Debtors objected to the Funds' proofs of claims on multiple grounds, including that the Debtors' liability to the Funds should be limited to the present value of the Annual Payments, determined as if the liquidating Debtors were to make their Annual Payments twenty years into the future on a non-accelerated, non-bankruptcy schedule. *See Debtors' Second Omnibus (Substantive) Objection to Proofs of Claim for Withdrawal Liability* [Dkt. No. 1962]; *Debtors' Seventh Omnibus (Substantive) Objection to Proofs of Claim for Withdrawal Liability* [Dkt. No. 2595].

7. On November 11, 2024, certain Funds filed a motion for partial summary judgment on their calculations of the Debtors' withdrawal liability. *See Funds' Motion for Partial Summary Judgment* [Dkt. No. 3058]. The Debtors also filed a motion for partial summary judgment with respect to similar issues in connection with those Funds' claims. *See Debtors Motion for Partial Summary Judgment on Non-SFA MEPPS' Withdrawal Liability Claims* [Dkt. No. 4834]. The parties continue to litigate towards resolution of the appropriate amount of unfunded vested benefits (UVBs) that each of those Funds allocated to the Debtors and the Annual Payments the Debtors owe to those Funds.

### III. The Courts' Prior Rulings

8. In a memorandum opinion regarding the Debtors' and the SFA Funds' summary judgment motions, the Court held that the Debtors' "withdrawal liability" owed to each MEPP is determined by reference to the Debtors' Annual Payment obligations, subject to ERISA's 20-year cap, rather than each MEPP's total allocation of UVBs to the Debtors. *See* Memorandum Opinion [Dkt. No. 4326] (the "September Ruling") at 35.

9. The Court further held that the Debtors' Annual Payment obligations were accelerated and are not subject to present value discounting, but on the basis that no party contested that the Debtors were in default. *See id*. at 36-38. The Debtors filed a motion to reconsider this portion of the ruling, arguing (*inter alia*) that because no prepetition default occurred, the Annual Payments should not be accelerated. *See Debtors' Motion to Reconsider* [Dkt. No. 4461].

10. In response to the Debtors' motion, the Court amended its September Ruling to state that "the question of whether the Debtors defaulted under § 1399(c)(5) is not properly resolvable on the current summary judgment record." *Order Granting Motion for Reconsideration and Posing Further Questions for the Parties to Consider* [Dkt. No. 4771] (the "Reconsideration

3

Order") at 5.  In its Reconsideration Order, the Court set forth certain questions to enable targeted briefing and prompt resolution of this matter (the "Additional Questions").

11. First, and chief, among those Additional Questions is if "it even matter[s] whether a particular pension plan did or did not declare the 20-year stream of payments to be accelerated" in light of the fact that 11 U.S.C. § 502 operates to accelerate the principal amount of prepetition claims against a debtor.  Reconsideration Order at 5.  If the Debtors' bankruptcy filing accelerated its withdrawal liability, the Court noted that the factual question of whether insecurity defaults occurred under plan documents, and the legal question of whether *ipso facto* concerns exist, may not need to be resolved.  *See id*. at 6.  If, however, the Debtors' Annual Payment obligations were not accelerated, the Court further asked whether the Annual Payments must be discounted to present value.  *Id*. at 7.  The Funds respond to these Additional Questions herein.

## LEGAL STANDARD

12. A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Facts are "material" only if they could "alter the outcome."  *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (internal citations omitted).  Disputes of fact are "genuine" only if "evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."  *Id*. (citation and internal quotation marks omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

13. There are no genuine disputes of material fact on which the Funds seek summary judgment, as all issues are legal in nature.  The Funds are entitled to judgment as a matter of law.

**ARGUMENT**

**I.    MEPP Claims Should Be Allowed in Amounts Reflecting Accelerated Annual Payments**

14. The Debtors' bankruptcy filing operated to accelerate the principal amount of all prepetition claims against the Debtors, including the Debtors' withdrawal liability to the Funds. The Debtors' position appears to be that because they did not default on their withdrawal liability obligations prepetition, there has been no acceleration.  But this ignores both the uncontested fact that the Debtors became liable for withdrawal liability prepetition (when they ceased operations) and well-settled precedent regarding the acceleration of prepetition claims that occurs by operation of law when a petition is filed.  Accordingly, the Funds' claims should be allowed in the amount of the accelerated Annual Payments owed to the Funds.  If the Court determines, however, that the Debtors' Annual Payment obligations have not been accelerated and instead should be discounted to present value, the Court must ensure that "double-discounting" does not occur.

**A.    The Bankruptcy Petitions Automatically Accelerated the Principal Amount of the Debtors' Obligations**

15. It is beyond dispute that the Debtors withdrew from each Fund before filing for bankruptcy.  This gave rise to a prepetition obligation for withdrawal liability to each of the Funds. *See JELD-WEN, Inc. v. Van Brunt (In re Grossman's Inc.)*, 607 F.3d 114, 125 (3d Cir. 2010) ("a 'claim' arises when an individual is exposed pre-petition to a product or other conduct giving rise to an injury, which underlies a 'right to payment' under the Bankruptcy Code").

16. True, the statutory process for notifying an employer of their withdrawal liability had not yet been completed when the Debtors filed their petitions.  It would not have been possible for this process to run its course, as ERISA generally contemplates that (i) a MEPP shall give notice

5

"[a]s soon as practicable" after the withdrawal of the amount of the withdrawal liability,[3] (ii) within 90 days after receiving that notice, the employer may contest the MEPP's assessment,[4] (iii) after reasonable review of the employer's position, the MEPP will notify the employer of its decision,[5] and (iv) if no arbitration is initiated within a specified time period, the employer waives its right to challenge the MEPP's determination.[6] Here, the Debtors filed for bankruptcy very shortly after their permanent cessation of operations, and these various periods were unable to run before the filing.[7] But this does not affect the nature of the obligation the Debtors owed to the Funds—it is the employer's withdrawal itself that gives rise to the obligation to pay withdrawal liability, not any subsequent act. *See* 29 U.S.C. §§ 1381(a) ("If an employer withdraws from a multiemployer plan in a complete withdrawal . . . then the employer *is liable* to the plan in the amount determined under this part to be the withdrawal liability") (emphasis added); 1383(e) ("the date of a complete withdrawal is the date of the cessation of the obligation to contribute or the cessation of covered operations"). Here, that withdrawal occurred prepetition.

17. Accordingly, the Debtors were obligated, prepetition, to pay withdrawal liability to each Fund. Because the withdrawal liability obligations were owed prepetition, the principal amounts of those obligations were accelerated when the Debtors filed for bankruptcy. *See In re Oakwood Homes Corp.,* 449 F.3d 588, 603 n.19 (3d Cir. 2006) ("[t]he legislative history shows that § 502(b) and (b)(2) reflect the basic bankruptcy law tenet that bankruptcy operates as the

---

[3] 29 U.S.C. § 1399(b)(1).

[4] *See id.* § 1399(b)(2)(A).

[5] *See id.* § 1399(b)(2)(B).

[6] *See id.* § 1401(b)(1); *e.g.*, *IUE AFL-CIO Pension Fund v. Barker & Williamson, Inc.*, 788 F.2d 118, 129-30 (3d Cir. 1986) (where statutory periods for review expired, employer was deemed to have waived its right to contest a withdrawal liability assessment).

[7] As the Court observed, this short window between cessation of operations and the bankruptcy filing also made it practically impossible for the Debtors to default, prepetition, in their payment of withdrawal liability obligations given ERISA's 60-day cure period. *See* Reconsideration Order at 3.

acceleration of the principal amount of all claims against the debtor . . . *whether or not* a clause in a prepetition agreement provides that a bankruptcy filing accelerates the maturity date" (quoting H.R. Rep. No. 95-595, at 352-53 (1977)) (citing 4-502 Collier on Bankruptcy ¶ 502.03) (internal quotations omitted)); Reconsideration Order at 5-6 ("[t]here is certainly a view, reflected in the legislative history of § 502, that a bankruptcy filing 'operates as the acceleration of the principal amount of all claims against the debtor'"); *see also, e.g.*, *Claybrook v. AutoZone Tex., L.P. (In re Am. Remanufacturers, Inc.)*, 451 B.R. 349, 367 (Bankr. D. Del. 2011) (recognizing that the principal amount of all claims against a debtor is accelerated upon the bankruptcy filing); *In re Glob. Indus. Techs., Inc.*, 2013 WL 587366, at *47 n.35 (Bankr. W.D. Pa. Feb. 13, 2013) ("It is well recognized that bankruptcy accelerates all claims."); *In re Manville Forest Prods. Corp.*, 43 B.R. 293, 297 (Bankr. S.D.N.Y. 1984) ("It is a basic tenet of the Bankruptcy Code that '[b]ankruptcy operates as the acceleration of the principal amount of all claims against the debtor'"); *HSBC Bank USA, Nat. Ass'n v. Calpine Corp.*, 2010 WL 3835200, at *3 (S.D.N.Y. Sept. 15, 2010) (explaining that the filing of a bankruptcy petition leaves "all of the petitioner's outstanding debts mature and payable."); *In re Ridgewood Apartments of DeKalb County, Ltd.*, 174 B.R. 712, 720 (Bankr. S.D. Ohio 1994) (noting that even if no express contractual language exists to initiate acceleration, a bankruptcy filing acts as the triggering event to accelerate the debtor's obligations).

18. The Debtors' withdrawal liability is distinct from the rejection damages that Judge Carey found were subject to present value discounting in *B456 Systems*. Reconsideration Order at 7-8 (noting that Judge Carey, in *B456 Systems*, distinguished *Oakwood Homes* to discount rejection damages to present value). In that case, the court explained that a claim for rejection damages should be discounted to present value because a "rejection damages claim seeks recovery

7

of *future damages*, which is not akin to a claim for principal." *In re B456 Sys., Inc.*, No. 12-12859 (KJC), 2017 WL 6603817, at *22 (Bankr. D. Del. Dec. 22, 2017) (emphasis added). A claim for rejection damages is fundamentally different from a noncontingent, prepetition debt: it arises from *postpetition* actions of the debtor, yet must be valued as if it arose *prepetition*. Thus, when faced with a claim for future rejection damages, the court must wind back the clock to place that postpetition claimant on equal footing with prepetition claimants. *Id.* at 22, n. 189 (citing *In re O.P.M. Leasing Servs., Inc.*, 79 B.R. 161, 167 (S.D.N.Y. 1987) ("Equality of treatment at distribution is a fundamental principle underlying the bankruptcy laws. By discounting a claim arising from the postpetition rejection of an executory contract or unexpired lease, the postpetition claimant is treated the same as the pre-petition claimant, an explicitly stated purpose of 11 U.S.C. § 365.")). The Debtors' withdrawal liability is, and has always been, a prepetition claim; it arose the moment the Debtors withdrew from the Funds. And while the Court has held that the Debtors' obligations to the Funds are measured in the amount of Annual Payments, those Annual Payments are not future damages, as the rejection damages in *B456 Systems* were—rather, they are a statutorily-created mechanism designed to amortize an obligation that arose prepetition. *See* 29 U.S.C. § 1399(c)(1)(A)(i). Accelerating the Annual Payments, rather than discounting them, is therefore appropriate.

19. As the Debtors' bankruptcy filing accelerated their withdrawal liability obligations, the Funds' claims should be allowed in the accelerated principal amounts owed to each Fund. Accordingly, the answer to the first question posed in the Court's Additional Questions—whether it matters if a pension plan did or did not declare the 20-year stream of payments to be accelerated—is "no." This renders moot many of the questions that follow; it is unnecessary to

reach questions of whether the Funds have declared "insecurity defaults" and whether there are *ipso facto* or automatic stay considerations in connection with such declarations.

        **B.**        **The Claims Must Not be Discounted Twice**

20.  If, however, the Court finds that the filing of a bankruptcy petition did not operate to automatically accelerate the principal amount of the Annual Payments and that present value discounting the Annual Payments is instead appropriate, it is imperative that the Debtors' withdrawal liability claims only be subject to discounting once. *See Oakwood Homes*, 449 F.3d at 600 ("To the extent that the Code in any way contemplates discounting to present value, such discounting is *not permitted* where the claim is for principal plus interest, and the interest has already been disallowed pursuant to § 502(b)(2)." (emphasis in original)); *see also* Reconsideration Order at 7 ("As *Oakwood* explains, removing unmatured interest from a stream of payments does the same thing as discounting that stream of payments to present value (with the discount rate being the rate of interest reflected in the stream of payments) … disallowing [both] unmatured interest *and* present value discounting effectively operated to 'double discount' the creditor's claim").

21.  If the appropriate discount rate for reducing the Annual Payment obligations to present value becomes a relevant factual issue, the parties have exchanged expert reports on this subject and the Funds reserve the right to conduct depositions of those experts.

## CONCLUSION

For the foregoing reasons, the Funds respectfully request that Court enter partial summary judgment on the issue identified herein.

| | | |
|---|---|---|
| Dated: | December 13, 2024<br>Wilmington, Delaware | */s/ Cory D. Kandestin*<br>Mark D. Collins (No. 2981)<br>Cory D. Kandestin (No. 5025)<br>**RICHARDS, LAYTON & FINGER, P.A.**<br>One Rodney Square<br>920 North King Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 651-7700<br>Facsimile:  (302) 651-7701<br>Email:  collins@rlf.com<br>            kandestin@rlf.com |

-and-

Dennis F. Dunne (admitted *pro hac vice*)
**MILBANK LLP**
55 Hudson Yards
New York, New York 10001
Telephone: (212) 530-5000
Facsimile:  (212) 530-5219

-and-

Andrew M. Leblanc (admitted *pro hac vice*)
Erin E. Dexter (admitted *pro hac vice*)
Melanie Westover Yanez (admitted *pro hac vice*)
Riah Kim (admitted *pro hac vice*)
**MILBANK LLP**
1850 K St. NW, Suite 1100,
Washington, DC 20006
Telephone: (202) 835-7500
Facsimile:  (202) 263-7586

*Counsel for the Funds*

10