**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>YELLOW CORPORATION, *et al.*<br><br>Debtors. | Case No. 23-11069 (CTG)<br><br>Chapter 11<br><br>Jointly Administered |

**LOCAL 705 PENSION FUND'S REPLY TO DEBTORS' OPPOSITION TO THE SFA MEPPS' AND NON-SFA MEPPS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

LOCAL 705 INTERNATIONAL BROTHERHOOD OF TEAMSTERS PENSION FUND ("Local 705 Pension Fund"), by and through its undersigned counsel, hereby files this reply in support of its *Memorandum of Local 705 Pension Fund Concerning Default and Present Value Issues Raised in Order Dated November 5,* 2024 [ECF No. 5163]; its opposition to *Debtors' Motion for Partial Summary Judgment on SFA MEPPS' and Non-SFA MEPPS' Claims* filed on December 14, 2024 [ECF No. 5181] (the "Debtors' MSJ"); *Debtors' Omnibus Opposition to the SFA MEPPs' and Non-SFA MEPPs' Motions for Partial Summary Judgment filed* on January 10, 2025 [ECF No. 5381] ("Debtors' Omnibus Opposition"); and *Amended Order Scheduling Certain Dates and Deadlines in SFA MEPP and Non-SFA MEPP Litigation* [ECF No. 5156].

**I.    INTRODUCTION**

Debtors' Omnibus Opposition abandons Debtors' previous argument that they did not default "on an obligation that did not yet exist" [ECF No. 4761, p.2] to now acknowledging that there is an obligation but claiming that all obligations for withdrawal liability (which Debtors assert are a stream of payments and not a lump sum) should be uniformly discounted by a hypothetical and artificial rate based on Debtors' "cost of debt." *See* Debtors' Omnibus Opposition, [ECF No. 5381], pp. 27-30.  Debtors' Omnibus Opposition also relies in large measure

on the argument that the 20-year cap "only goes to show that the MEPPs' proofs of claims do, in fact, seek a future stream of payments." *Id.* at p. 24.

Debtors' new arguments have no application to Local 705 Pension Fund's withdrawal liability claim. On October 28, 2024, this Court made a clear distinction between "an event of default" in a pension plan document and an "option to declare a default." "[If] the plan rules say the *bankruptcy is itself an event of default*, in which case, if you [i.e., Local 705 Pension Fund's counsel] could show me that that's what the plan's rule[s] say, then *it would have been accelerated* as of the petition date…" (Exhibit A, at p.71) (emphasis added). Local 705 Pension Fund did exactly what the Court asked. Debtors acknowledged on December 14, 2024 that Local 705 Pension Fund's plan documents state that Debtors *will be in default* if they file bankruptcy.[1] They do not say that the fund trustees *may declare an event of default*. *See* Debtors' MSJ, [ECF No. 5181], at p.25. ("Section (d)(4) provides that an employer will be in default if the employer files a bankruptcy action.").[2]

In addition to Local 705 Pension Fund's undisputed bankruptcy default provision, Debtors permanently withdrew from the funds prior to bankruptcy by ceasing business operations as stated in the declaration of Mr. Doheny (Dkt. 14, ¶ 17).  *See* 28 U.S.C. Section 1383 (complete

---

[1] Debtors state that "not one MEPP has shown that they validly declared the Debtors to be in default" [ECF. 5381], p.2, but admitted on December 14, 2024 that Local 705 Pension Fund's plan documents state that Debtors *will be in default* if they file bankruptcy. [ECF No. 5181], at p.25. (emphasis added).

[2] Debtors' argument that Local 705 Pension Fund has an additional option to accelerate or not accelerate is irrelevant (even though Local 705 Pension Fund accelerated as indicated in its proof of claim) as acceleration occurs automatically by operation of law under 11 U.S.C. § 101(5)(A). The legislative history of the Bankruptcy Code confirms that bankruptcy accelerates the principal amount of claims. H. Rep. No. 595, 95th Cong., 1st Sess. 352-53 (1977) ("[B]ankruptcy operates as the acceleration of the principal amount of all claims against the debtor.").

withdrawal occurs when a participating employer "permanently ceases all covered operations under the plan."). Local 705 Pension Fund's claim is not subject to the 20-year cap and was filed in a present value discounted amount at expected investment return rates in accordance with 29 U.S.C. § 1393(a)(1) and Debtors' own cited authority in *Sofco Erectors, Inc. v. Trs. of Ohio Operating Eng'rs Pension Fund*, 15 F.4th 407, 418 (6th Cir. 2021).

Local 705 Pension Fund's total claim of $25,596,814 (consisting of 13 years of payments and not 20 years) has been discounted to $17,830,282, using a 6.75% interest rate assumption based on the actuarial projection of the expected returns on the fund's **actual** assets. *See* Gitterman Affidavit, [ECF. 5418], Exhibit A thereto, ¶ 14 (emphasis added). Debtors' categorical statements relating to "all funds" being subject to one or more of Debtors' assertions in their Omnibus Opposition do not apply to Local 705 Pension Fund. Local 705 Pension Fund's claim is different and should have been resolved shortly after it filed its Motion for Summary Judgment on August 23, 2024 [ECF No. 4184].

Debtors' "cost of funds" approach has no application here. It is based on a distortion of legal precedent and a misunderstanding of withdrawal liability. Worst of all, it contradicts Debtors' approach in its own December 3, 2024, Opposition to Non-SFA MEPPS Motion for Partial Summary Judgment." [ECF No. 5068, p. 1]. It should be discarded for the following reasons:

*First,* failure to present value discount is not one of the nine exclusive and substantive grounds for objecting to a claim as enumerated in 11 U.S.C. §§ 502(b)(1)-(9). Section 502(b)(2) provides for disallowance of unmatured interest, which was not included in Local 705 Pension Fund's claim. (*See* Gitterman Affidavit, [ECF. 5418], Exhibit A thereto, par. 19). Binding Third Circuit precedent in *In re Oakwood Homes*, 449 F.3d 588, 601 (3rd Cir. 2006) holds that "once unmatured interest has been disallowed, discounting

3

the remainder of the claim to present value would inequitably twice penalize the creditor for the time value of money." Debtors are not only seeking to double discount Local 705 Pension Fund's already discounted claim, they are seeking to triple discount it!

*Second*, Debtors' main cited cases have nothing to do with discounting withdrawal liability. For example, *Till v. SCS Credit Corp.*, 541 U.S. 465, 474 (2004) is a non-precedential plurality opinion on the appropriate interest rate on post-confirmation secured debt in a Chapter 13 plan,[3] while *In re B456 Sys., Inc.*, 2017 WL 6603817 (Bankr. D. Del. Dec. 22, 2017) involves a claim which included future damages, which the bankruptcy court ruled was "not akin to a claim for principal." *Id. at* 53.

*Third*, Debtors' assertion of a uniform discount rate to all funds is inconsistent with Debtors' cited authority in its December 3, 2024 Opposition to Non-SFA MEPPS Motion for Partial Summary Judgment which argued that 29 U.S.C. § 1393(a)(1) "requires an actuary to project investment returns on the plan's **actual** assets." [ECF No. 5068, p.9] (emphasis in original) *citing Sofco Erectors, Inc.,* 15 F.4th at 418.

*Fourth*, Debtors fundamentally misunderstand withdrawal liability when they argue that "[i]t is blackletter law that a long-term payment obligation is worth less than that same payment obligation owed in a lump sum, because 'the promise of a dollar payable in several years is not worth 100 cents today.'" *citing Matter of Penn Central Transp. Co.*, 596 F.2d 1102, 1316 (3d Cir. 1979). Debtors' Omnibus Opposition. [ECF No. 5381], p.3.

---

[3] Debtors reference to *Till* undercuts Debtors' own arguments for a deep discount rate. The plurality of Justices in that case approved of a 9% rate based on a then prime rate of 8% along with a 1.5% risk premium. The current prime rate is 7.5% and a 1.5% risk premium would only result in a 9% rate and not the 13-18% rate proposed by Debtors. https://www.fedprimerate.com/

The reason that the time value of money principle (which is not a legal principle, much less a blackletter one) has no application here is because pension funds are unlike the trade creditors in Debtors' cited cases. Pension funds have only one permitted use for the dividends that they will receive in this case -- to invest into their own plans and earn returns to pay future obligations based on their *actual* investment assets. Trade creditors, like the creditor in *re B456 Sys.* can do whatever they like with their distributions. The individual pension funds will also have different rates of return. A dollar today may result in future availability of $1.50 to pay a particular pension fund's obligations or $2.00 to pay future pension obligations of another fund.

Debtors should listen to their own expert, Robert Campbell, who blessed all aspects of Local 705 Pension Fund's claim and withdraw their objections to Local 705 Pension Fund's claims. *See* Local 705 Pension Fund's Response to Debtors' Motion for Partial Summary Judgment on SFA MEPPS' and Non-SFA MEPPS' Claims. [ECF No. 5148], pp. 6-7.

## II.    ARGUMENT

### A.    *Debtors Waived all Present Value and Subordination Arguments*

Debtors' arguments procedurally and substantively fail with respect to Local 705 Pension Fund's claim because: (1) Debtors waived any arguments about further present value discounting of Local 705 Pension Fund by failing to disclose them in discovery to Local 705 Pension Fund [ECF. No. 5148, p.2, 5-9]; (2) Local 705 Pension Fund has present-valued the future stream of Debtors' allocation of pension obligations of $25,596,814 by 6.75% per annum (the expected return on actual fund assets) and reduced it to $17,830,282. (*See* Gitterman Affidavit, [ECF. 5418], Exhibit A thereto, par. 16); and (3) Debtors' own expert fully agrees with every aspect of Local

5

705 Pension Fund's calculation of withdrawal liability. [ECF. No. 5148], pp. 6-7.[4]

Local 705 Pension Fund has repeatedly pressed Debtors for an explanation of their baseless present value argument. About nine months ago on April 18, 2024, Local 705 Pension Fund filed its Response to Debtors' Seventh Omnibus (Substantive) Objection to Proofs of Claim for Withdrawal Liability pointing out that "failure to present value discount is not one of the nine exclusive and substantive grounds for objecting to a claim as enumerated in 11 U.S.C. §§ 502(b)(1)-(9)." [ECF. 3060], p.4. Debtors did not respond.

Over eight months ago, on April 25, 2024 Local 705 Pension Fund served discovery requests requiring Debtors' to "state all bases upon which Debtors assert that withdrawal liability should be calculated and/or which component(s) of the Claimant's calculation are in dispute." Debtors provided no explanation other than to reference a report that supported Local 705 Pension Fund's claim. Local 705 Pension Fund offered to produce its actuary and plan administrator for deposition. Debtors declined to depose them. Local 705 Pension Fund filed its Motion for Summary Judgment on August 23, 2024 [ECF No. 4184]. Debtors ignored Local 705 Pension Fund until they filed their Omnibus Opposition on January 10, 2025. [ECF No. 5381] and only then by falsely claiming that Local 705 Pension Fund misquoted Debtors' witness, Robert Campbell. *See* Debtors' Omnibus Opposition. [ECF No. 5381], p.26, n.15.[5]

---

[4] Debtors also failed to include any reference to subordination under Section 1405(B) in their substantive objection to Local 705 Pension Fund's claim [Dkt. 2595] (of which the Debtors get only one set of substantive objections), or in response to discovery requests. Those arguments are also waived, and Local 705 Pension Fund joins in the objections of the other funds concerning the applicability of Section 1405(B).

[5] Debtors' fee application shows that Debtors' counsel was well aware of Local 705 Pension Fund's motion for summary judgment filed on August 23, 2024. On August 27, 2024, Debtors' counsel John Christian spoke with Local 705 Pension Fund's counsel and then corresponded with Ms. Chan and M. Lehavi. [ECF. 5297-10], p.54. Mr. Lehavi then billed time for reviewing Local 705 Pension Fund's motion for summary judgment and for a telephone call with Local 705 Pension

6

Debtors' counsel filed a fee application for the period of August 1, 2024 through October 31, 2024, seeking fees in the amount of $10,230,528 on top of the prior fees in the amount of $39,865,891.80. [ECF. 5297]. Debtors have used approximately 40 associates and approximately 24 partners on this matter. *Id.* at 3-4. There is no excuse that Debtors have for not fully disclosing their bases for objecting to Local 705 Pension Fund's claims and not responding to Local 705 Pension Fund's motion for summary judgment.

    B.    *Debtors' Cases Do Not Support a Uniform Discount Rate Among Different Funds*

Debtors' entire argument hinges on the incorrect assertion that withdrawal liability is a long-term stream of payment obligations stretching out over 20 years as opposed to a single present claim. *See* Debtors' Omnibus Opposition, [ECF No. 5381], at pp.24-5.[6] Local 705 Pension Fund's withdrawal liability claim is not subject to the 20-year cap and is not a long stream of payment obligations. Local 705 Pension Fund present-valued only thirteen years of Debtors' payments for unfunded vested benefits. To be more precise, Local 705 Pension Fund's claim in the amount of

---

Funds' counsel, John Delnero regarding MSJ briefing schedule. *Id.* at 54, 57. Allyson Smith billed time on August 28, 2024 for reading an email from J. Christian related to Local 705 Pension Fund's motion for summary judgment. *Id.* at p.59. Mathew Walker billed time on August 28, 2024 for the same task as Allison Smith. *Id.* at 59. On September 5, 2024, John Christian billed time for "telephone conferences with M. Lehavi re Local 705's motion for summary judgment and expert deposition strategy." *Id.* at 77. At no time did Local 705 Pension Fund agree to delay briefing on its motion for summary judgment.

[6] Debtors argue that the "20-year cap applies only goes to show that the MEPPs' proofs of claims do, in fact, seek a future stream of payments. And far from discounting that stream to present value, the 20-year cap only does what its name implies: it limits the MEPPs' claims to 20 years of annual payments. But that still leaves the Debtors paying 20-years' worth of annual payments all at once, in a single lump sum, rather than over the course of 20 years. Such future streams of payments are, by definition, not worth their face value today and must be discounted to reflect the time value of money."
 However, as set forth in Local 705 Pension Fund's Response, "Local 705 Pension Fund discounted the total future stream of payments of $25,596,814 by 6.75% per annum, reducing it to $17,830,282. (*See* Gitterman Affidavit, Exhibit A), par. 15)." [ECF 5418] at p. 5.

7

$17,830,282 is based on 51 quarterly payments of $493,910 with a final payment of $444,124, based on a 6.75% interest rate assumption. *See* Gitterman Affidavit, [ECF. 5418], Exhibit A thereto, par. 14.

Local 705 Pension Fund did not file a claim seeking a future stream of payments. It filed a present-valued lump sum claim with the option for Debtors to pay over time with interest. Debtors have not availed themselves of the payment over time option.[7]

Nor is there any *legal* basis for asserting that "withdrawal liability is a long-term stream of payment obligations." On the contrary, withdrawal liability is a present claim and not a claim for future damages of the type asserted by the creditor in *B456*. *See In re U.S. Airways Grp., Inc.*, 303 B.R. 784, 793 (Bankr. E.D. Va. 2003) (withdrawal liability "is not simply valuing a contingent future loss. Rather, Congress, by statute, has expressly given [the multiemployer pension fund] a *present* right to recover an amount determined in accordance with the valuation regulation.") (emphasis in original); *In re Mason & Dixon Lines, Inc.,* 63 B.R. 176, 182 (Bankr. M.D. N.C. 1986) (emphasis added) ("Withdrawal claims are statutorily created hypothetical debts; the amount alleged due is not based upon a consideration or value received by the debtor or its employees. **The amount** is based upon (a) what the creditor estimates it needs to pay future benefits for all of its beneficiaries (including employees and retirees from companies competing

---

[7] Debtors argue that "as of the date of the petition, Local 705 Pension Fund had not even calculated the withdrawal liability claims the Debtors' owe." [ECF No. 5381], at p.9, n.6. It is not clear what Debtors are asserting here or why. Local 705 Pension Fund held a liquidated claim on the petition date, not because it actually calculated its claim, but because all facts were ascertainable to calculate the claim. A liquidated claim is a claim "which can be determined with exactness from parties' agreement or by arithmetical process or application of definite rules of law, without reliance on opinion or discretion." *In re Dow Corning*, 215 B.R. 346, 358 (Bankr. E.D. Mich. 1997). Even Debtors acknowledge in their Omnibus Opposition that "[c]ourts interpreting 29 U.S.C. § 1381(b)(1) similarly agree that the statute provides a specific mathematical formula for calculating withdrawal liability" [ECF No. 5381], p.32, n17.

with the debtor), (b) investment practices of the individual pension funds, (c) business failures of other employers who contribute to the pension funds, (d) the number of active employees who participate in each pension fund, and (e) the unilaterally adopted actuarial assumptions of each pension fund…")

*Till v. SCS Credit Corp.*, 541 U.S. 465, 474 (2004) cited by Debtors is a readily distinguishable plurality opinion that addresses future post-bankruptcy payments by a consumer debtor of interest to a secured creditor in a Chapter 13 case. The case hinges on a single word "value" in Section 1325(a)(5)(B)(ii) that "the **value**, as of the effective date of the plan, of property to be distributed under the plan on account of such claim [must be] not less than the allowed amount of such claim." (emphasis added). Section 502 does not provide for the present value of claims and only refers to the value of tax assessments in Section (b)(3) and the value of legal services in Section 502(b)(4). It does not refer to the value of unsecured claims.

Debtors' reliance on *Till* is even more baffling as it undercuts Debtors' assertion that all withdrawal liability claims should be discounted by 13-18%, when *Till* could only be stretched, if applicable (which it is not), to a 9% discount rate.

Debtors' reliance on *In re B456 Sys., Inc.*, 2017 WL 6603817 (Bankr. D. Del. Dec. 22, 2017) is more perplexing as it supports the various pension funds generally, and Local 705 Pension Fund in particular. There, the court was dealing with a rejection claim that included future damages, which the bankruptcy court ruled was "not akin to a claim for principal." *Id. at* 53. The bankruptcy court then ruled that *Oakwood Homes* was not applicable. *Id.* The Court further stated that "*Oakwood Homes* is limited to claims based on interest-bearing debt." *Id.* Withdrawal liability is a present claim and not a claim for future damages, (*U.S. Airways Grp.*) and Local 705 Pension

9

Fund's claim is not an interest-bearing debt. (*See* Gitterman Affidavit, [ECF. 5418], Exhibit A thereto, par. 19).

      C.      *Debtors' Omnibus Opposition Contradicts Their Arguments for Reconsideration*

In this Court's original ruling, the Court stated in *dicta* "the debtors are correct that, *if what the debtors owed* on the petition date was a stream of payments that would be made over time, bankruptcy law would *typically* provide that the allowed claim would be discounted to its present value." *In re Yellow Corp.*, 2024 Bankr. LEXIS 2138*82-83 (Bankr. D. Del. Sept. 13, 2024). (emphasis added). The Court then stated that if there was a default "the obligation to make payments over 20 years is accelerated [and the] entire amount became immediately due and owing. Indeed, the core point of § 1399(c)(5) is that it entitled the plan to "require immediate payment of the outstanding amount of an employer's withdrawal liability. " *Id.*

Debtors fully concede that "a core tenet of bankruptcy law is the fact that a bankruptcy filing serves to accelerate all debts as of the petition date…the Debtors *have never once disputed this legal certainty*, nor have they argued that the fact of the bankruptcy filing itself per se prevented acceleration of the amounts allegedly owed in this case." Debtors' Omnibus Opposition [ECF No. 5381], p.13. (emphasis added). Debtors disputed that there was even an obligation to the funds in their motion for reconsideration when they argued that "the Debtors could not have defaulted on an *obligation* that did not yet exist." [ECF No. 4761, p.2] (emphasis added).

Debtors now reformulate their objections to say that "what the Debtors actually dispute is twofold: (1) the notion that all claims accelerated pursuant to § 502(b) at the time a bankruptcy is filed need not be discounted to present value, and (2) the *type of payment obligation* that was owed as of the date the petition was filed in this case. The MEPP's do not address either of these issues in their briefing." Debtors' Omnibus Opposition [ECF No. 5381], p.13.(emphasis added).

Debtors' alleged unanswered disputes go beyond the Court's original ruling which only held open the possibility that a withdrawal liability claim that was not in default on the petition date would "typically" be subject to present value discounting. 2024 Bankr. LEXIS 2138 at 82. Of course, the Court then received briefing that Debtors defaulted and withdrew pre-petition.[8]

Local 705 Pension Fund did, in fact, address Debtors' twofold dispute but Debtors just did not like the Local 705 Pension Fund's response.

Local 705 Pension Fund answered Debtors' reformulated contentions in its Memorandum Concerning Default and Present Value Issues Raised in Order Dated November 5, 2024 [ECF No. 5163]. With respect to Debtors' first contention that "all accelerated claims need not be discounted," Local 705 Pension Fund (and presumably the other funds) are not required to show that all accelerated claims *of all types* may not be discounted. They only need to show that withdrawal liability claims are not subject to additional present value discounting.

Local 705 Pension Fund demonstrated that claims, such as withdrawal liability claims, that do not include unmatured interest, are not subject to further discounting under *In re Oakwood Homes*, 449 F.3d 588, 601 (3rd Cir. 2006) ("once unmatured interest has been disallowed, discounting the remainder of the claim to present value would inequitably twice penalize the creditor for the time value of money.") *See* Local 705 Pension Fund's Response to Motion for Reconsideration. [ECF. 4358], pp. 3-4.

While Debtors want to now frame their first restated issue as a burden on the funds to show that "all claims accelerated pursuant to § 502(b) at the time a bankruptcy is filed need not be

---

[8] Subsequently on October 11, 2024, Local 705 Pension Fund filed its Response to Debtors' Motion to Reconsider in Part the September 13, 2024 Memorandum Opinion Finding a Withdrawal Liability Default, which the Court allowed as an amicus. ("Local 705 Pension Fund's Response to Motion for Reconsideration") [ECF. 4358].

11

discounted to present value" it is really Debtors' burden of showing that withdrawal liability claims are subject to present value discounting because they are debt instruments that include unmatured interest. That is what *Oakwood Homes* requires and that is not the case here. Without that, Debtors have no argument for present value discounting and have cited no authority for their new argument. As for Local 705 Pension Fund, it documented by way of affidavit that its claim did not include unmatured interest and was present value discounted.

With respect to the second reformulated contention concerning Debtors' dispute over the "type of payment obligation that was owed as of the date the petition," Local 705 Pension Fund answered this point as well. Debtors misread this Court's *dicta* "that, *if what the debtors owed* on the petition date was a stream of payments that would be made over time, bankruptcy law would *typically* provide that the allowed claim would be discounted to its present value." *Yellow Corp.*, 2024 Bankr. LEXIS 2138, at 82-83. An unadulterated reading of this statement makes clear that the Court did not have either a legal or a factual basis at that time for determining whether withdrawal liability claims were lump sum claims, or claims consisting of a stream of payments. On this score, the law is clear that withdrawal liability is a present claim and not a claim consisting of a stream of payments. That is true regardless of whether there was a prepetition default and/or a notice of default.[9]

---

[9] Debtors incorrectly argue without any legal authority that "[i]t simply cannot be that the Debtors defaulted on any withdrawal liability obligation before they ever received notice and demand ERISA requires." [ECF No. 5381], p.27. It can be the case, and it is the case. Indeed, Debtors ignore binding Third Circuit precedent cited by Local 705 Pension Fund. Notice of default and adherence to federal statutory procedures such as those contained in ERISA are not required to assert a present claim in bankruptcy because they do not create substantive rights. They are designed for the non-bankruptcy purpose of facilitating non-judicial resolution. *See In re Remington Rand Corporation*, 836 F.2d 825 (3rd. Cir. 1988) (statutory procedures for allowance of claims under the Federal Contract Disputes Act create "'no substantive contractual rights' [and] such procedures serve non-bankruptcy policy objectives of resolving disputes 'before the resort to the judicial process.'").

As set forth in Local 705 Pension Fund's memorandum, withdrawal liability is a present claim and not a stream of payments, *citing In re U.S. Airways Grp., Inc.*, 303 B.R. 784, 793 (Bankr. E.D. Va. 2003). *See* Memorandum Concerning Default and Present Value Issues Raised in Order Dated November 5, 2024 [ECF No. 5163], p.12. *See also*, *In re Mason & Dixon Lines, Inc.,* 63 B.R. 176, 182 (Bankr. M.D. N.C. 1986) (referring to withdrawal claims as "an amount [based on] what the creditor estimates it needs to pay future benefits.")

Local 705 Pension Fund cited authority showing that even in a Chapter 11 case where the debtor continued operating post-petition and paid its pension obligations (which did not happen

---

Debtors' entire approach in this litigation rests on a serious misunderstanding of basic bankruptcy concepts. In arguing that withdrawal liability is a stream of payment obligations in the absence of a pre-petition default and acceleration notice, Debtors appear to be applying the general rule of executory contracts-- that an executory contract is binding on non-debtors, but not on bankruptcy estates until assumed—where it is not warranted. *See NLRB v. Bildisco v. Bildisco*, 456 U.S. 513, 531-2 (1984); and *Moody v. Amoco Oil*, 734 F.2d 1200, 1212-13 (7th Cir. 1984) (holding that an executory contract, whose termination is either still subject to cure, or in which termination is not immediately effective, could still be assumed in bankruptcy, provided that the bankruptcy petition was filed before the cure date or the effective date of termination).

Debtors seek to import the principles of *Bildisco* and *Moody* to the bankruptcy allowance of withdrawal liability claims by treating: (1) a withdrawal liability claim, coupled with a pre-bankruptcy notice of default, as an accelerated claim; while not accelerating (2) a withdrawal liability claim where no default and notice has occurred (i.e., treating it as a stream of payments).

If we were dealing with an executory contract, Debtors' argument might implicate its ability to reinstate the schedule to pay all pension obligations, but not Debtors' ability to evade liability to its employee pensioners. However, withdrawal liability claims <u>do</u> <u>not</u> arise from executory contracts (certainly Debtors have not treated them as such here) and are allowable as of the petition date, like any other unsecured claim regardless of notice, or non-bankruptcy accrual rules. *In re Grossman's Inc.*, 607 F.3d 114, 118 (3rd Cir. 2010) (overruling the long-discredited case of *In Re M. Frenville*, 744 F.2d 332 (3rd Cir. 1984), which held that a claim arises only when the underlying state law cause of action accrues).

*See also*, *Sexton v. Dreyfus*, 219 U.S. 339, 343-345 (1911) ("We take our bankruptcy system from England….[cessation of interest on unsecured debts in bankruptcy is reasonable because a bankruptcy filing] fixes the moment when the affairs of the bankrupt are supposed to be wound up…If, as…the whole matter could be settled in a day by a pie-powder court…") (internal citations omitted).

13

here), the bankruptcy estate incurred withdrawal liability for which the fund was obligated to file a proof of claim by the bar date for its pre-petition withdrawal liability claim. Local 705 Pension Fund's authority directly contradicts Debtors' entire line of argument raised in their Motion for Reconsideration that "absent a specified default on or before the petition date Debtors could not have defaulted on an *obligation* that did not yet exist." [ECF No. 4761, p.2] (emphasis added).

*In re Crane Rental Co.,* 334 B.R. 73 (Bankr. D. Mass. 2005) cited by Local 705 Pension Fund is also instructive. There, the debtor operated its business, and the pension fund did not file a claim until the debtor filed a liquidating plan. If, as Debtors assert here, that there was no declared default and there was only a stream of payments, the fund in *Crane Rental* could not have been subject to the proof of claim bar date for pre-petition claims. *See also*, *In re CD Realty Partners*, 205 B.R. 651 (Bankr. D. Mass. 1997) (withdrawal liability claim was a contingent claim subject to discharge where withdrawal did not occur until after reorganization).

  D. *Debtors' December 3, 2024 Discount Cases Correctly Apply the Rule of Decision Here and Directly Contradict Debtors' Proposed Uniform Discount Rate*

Debtors' Omnibus Opposition makes the head-scratching argument that "this court should impose a uniform discount rate on all withdrawal liability claims reflecting Debtors' 'cost of debt.'" Debtors' Omnibus Opposition, [ECF No. 5381], at pp. 27-30. After racking up over $50 million in fees, Debtors' counsel does not understand the basics of withdrawal liability and the role of employer sponsors in a multi-employer plan. Nor do they understand the import of their own arguments that they made in their own pleadings.

On December 3, 2024, Debtors filed their Opposition to Non-SFA MEPPS Motion for Partial Summary Judgment arguing that 29 U.S.C. § 1393(a)(1) "requires an actuary to project investment returns on the plan's **actual** assets." [ECF No. 5068, p.9] (emphasis in original) *citing Sofco Erectors, Inc. v. Trs. of Ohio Operating Eng'rs Pension Fund*, 15 F.4th 407, 418 (6th Cir.

14

2021). Section 1393(a)(1) sets forth the method of computing the unfunded vested benefits of a plan for computing withdrawal liability.

According to *Sofco*, and Debtors' other cited cases, each fund is required to estimate its future unfunded vested benefits using expected earnings on actual assets in the fund. That is what Local 705 Pension Fund did in calculating withdrawal liability.

Debtors fundamentally misunderstand the difference between pension funds and other businesses. A supplier of auto parts like the creditor in *B456 Sys., Inc.* can use its bankruptcy distributions in any manner it wants. It can buy lottery tickets if it so chooses. But a pension fund is required to invest its distribution so that it has assets to pay promised pension benefits. So, all of Debtors' general arguments about the time value of money have no application to multi-employer pension funds. Each fund has its own set of investments that vary depending on the age of the participants of each fund, the number of participants, and the benefits promised.

The time value of money is just not same for each fund and using a uniform interest rate is entirely inappropriate.

The argument that the discount rate should not only be uniform but based on Debtors' vantage point is not only incorrect but potentially detrimental to the distribution of non-pension fund claimants. On December 3, 2024, Debtors argued that certain Non-SFA MEPPs used risk free rates based on "annuity purchases" and the "Non-SFA MEPPs have not purchased annuities to settle vested benefits and do not anticipate doing so in the future." [ECF No. 5068], p.2.

Debtors have not taken out debtor-in-possession loans and their return on investments will be the risk-free rate.[10] The reason that the risk-free rate is applicable and the rate in the plurality

---

[10] The Trustee Handbook for Chapter 7 Trustees states that "[w]hen substantial funds (e.g., $50,000) are received by the estate, which will not be distributed for an extended period of time (e.g., six months), the trustee should consider higher yield investments such as Certificates of

15

opinion in *Till* is not appropriate is because *Till* involves post-bankruptcy payments by a consumer debtor who is obtaining a fresh start. Debtors' cases are liquidating cases where Debtors' estates will be holding on to funds to distribute to creditors with no fresh start. To accept Debtors' argument that claims should be discounted at an artificially high rate robs the pension funds of the benefit of their claims and makes more money available to administrative and other unsecured creditors.

      E.   *Debtors' Argument that the Withdrawal Liability Claims are Subject to Subordination under ERISA Section 1405(B) is Incorrect.*

Debtors did not object to Local 705 Pension Fund's claim on the basis of ERISA Section 1405 as part of their Seventh Omnibus (Substantive) Objection to Proofs of Claim for Withdrawal Liability. It is therefore waived as to Local 705 Pension Fund. Debtors apparently have objected on that basis to other pension funds asserting that the legislative history of Section 1405 provides that Section 1405 is "applied to withdrawal liability determined after the application of (1) the de minimis rules, (2) any pro rata reduction of liability on account of a partial withdrawal, and (3) the 20-year payment cap." Debtors' Omnibus Opposition, [ECF No. 5381], p. 31.

Even if Debtors objected to Local 705 Pension Fund based on Section 1405, it would not apply to Local 705 Pension Fund's claim, which is based on 13 years of payments and therefore not subject to the 20-year payment cap. According to Debtors, "[b]y statute, the 20-year cap is the third adjustment under § 1381(b), applied before the § 1405 adjustment." [ECF No. 5381], p.3. There is no application of Section 1405 without first applying the 20-year cap which is not applicable to Local 705 Pension Fund's claim.

---

Deposit or Treasury Bills. 28 U.S.C. § 586. In general, investments are to be as risk free as possible."

16

Local 705 Pension Fund agrees with and adopts the arguments of the other funds in this matter that Section 1405 is inapplicable here.

WHEREFORE, INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 705 PENSION FUND respectfully requests that this Court grant summary judgment in its favor and deny Debtor's Motion to For Partial Summary Judgment and order such other and further relief as this Court deems just and necessary.

Date: January 21, 2025　　　　**SULLIVAN HAZELTINE ALLINSON LLC**
　　　　Wilmington, Delaware

　　　　　　　　　　　　*/s/ William D. Sullivan*
　　　　　　　　　　　　William D. Sullivan (No. 2820)
　　　　　　　　　　　　William A. Hazeltine (No.3294)
　　　　　　　　　　　　919 North Market Street, Suite 420
　　　　　　　　　　　　Wilmington, DE 19801
　　　　　　　　　　　　Tel: (302) 428-8191
　　　　　　　　　　　　Email: bsullivan@sha-llc.com
　　　　　　　　　　　　　　　　whazeltine@sha-llc.com

　　　　　　　　　　　　**BAUM SIGMAN AUERBACH & NEUMAN, LTD.**

　　　　　　　　　　　　*/s/ Stephen J. Rosenblat*
　　　　　　　　　　　　Stephen J. Rosenblat (ARDC No. 6204044)
　　　　　　　　　　　　200 West Adams Street, Suite 1825
　　　　　　　　　　　　Chicago, IL 60606
　　　　　　　　　　　　Tel: (312) 216-2573
　　　　　　　　　　　　Email: srosenblat@baumsigman.com

　　　　　　　　　　　　**PEDERSEN HOUPT**
　　　　　　　　　　　　*/s/ John S. Delnero*
　　　　　　　　　　　　John S. Delnero (ARDC No. 6195914)
　　　　　　　　　　　　161 North Clark Street, Suite 2700
　　　　　　　　　　　　Chicago, Illinois 60601
　　　　　　　　　　　　Tel: 312-261-2185
　　　　　　　　　　　　jdelnero@pedersenhoupt.com

　　　　　　　　　　　　*Counsel for International Brotherhood of Teamsters Local 705 Pension Fund*